

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | CHAPTER 11 |
| | § | |
| BASIC ENERGY SERVICES, INC., *et al.*, | § | Case No. 21-90002 |
| | § | |
| | § | (Jointly Administered) |
| | § | |
| Debtors.[1] | § | |
| | § | |
| PPC ENERGY, LP and PRIEST PETROLEUM CORPORATION, | § | |
| | § | |
| Plaintiffs, | § | Adversary No. 23-03208 |
| | § | |
| vs. | § | |
| | § | |
| SELECT ENERGY SERVICES, LLC, | § | |
| | § | |
| Defendant. | § | |

**DEFENDANT'S REPLY SUPPORTING MOTION TO DISMISS**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Plaintiffs' Petition fails to state any claims and is conclusively negated by the public records and other materials referenced in and central to the Petition which are properly before this Court under Rule 12(b)(6).  Select's Motion to Dismiss (Adv. Dkt. 5) thus should be granted.[2]

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Basic Energy Services, L.P. (1819); Basic Energy Services, Inc. (1194); C&J Well Services, Inc. (5684); KVS Transportation, Inc. (4882); Indigo Injection #3, LLC (7657); Basic Energy Services GP, LLC (1197); Basic Energy Services LP, LLC (1195); Taylor Industries, LLC (7037); SCH Disposal, L.L.C. (8335); Agua Libre Holdco LLC (3092); Agua Libre Asset Co LLC (1409); Agua Libre Midstream LLC (6701); and Basic ESA, Inc. (2279). The Debtors' headquarters and service address for the purposes of these chapter 11 cases is 801 Cherry Street, Suite 2100, Fort Worth, Texas 76102.

[2]     Capitalized terms not defined in this reply have the meanings given to them in the Motion to Dismiss.

First, under the unambiguous language of the APA and Sale Order, Select did not assume liability for common-law negligence claims against Basic, and Select purchased the relevant assets *free and clear* of any such claims with *no successor liability*.  Moreover, Plaintiffs' Negligence Judgment against Basic is on appeal and Plaintiffs waived any right to collect from Basic as part of a stipulated Lift-Stay Order.  Although Plaintiffs cite a 1995 case in support of their argument that the Negligence Judgment is "due" despite the appeal because Basic has not posted a supersedeas bond, Plaintiffs overlook that, in 2003, the Texas legislature capped the supersedeas requirements at "50 percent of the judgment debtor's current net worth" – a negative number for Basic, which is in liquidation.[3]  So even without Plaintiffs' waiver of collection rights against Basic in the Lift-Stay Order, the current Texas supersedeas rules would not have required a bond from Basic, and the absence of a bond is a red herring.  In any event, the plain terms of both the APA and the Assumption Agreements disclaim Plaintiffs as third-party beneficiaries, so Plaintiffs have no recourse against Select for any unpaid Negligence Judgment against Basic.  Plaintiffs' breach of contract and declaratory judgment claims thus fail as a matter of law.

Second, Plaintiffs' post-acquisition negligence and gross negligence claims are conclusory and implausible and fail as a matter of law.  Fundamentally, Plaintiffs admit that Basic irreversibly caused their alleged damages years before Select purchased the assets and do not allege any facts making it plausible that Select increased the amount of Plaintiffs' alleged damages.  Accordingly, Plaintiffs' negligence and gross negligence claims should be dismissed.

---

[3]   *See* TEX. R. APP. P. 24.2(a)(1) ("When the judgment is for money, the amount of the bond, deposit, or security . . . . must not exceed the lesser of:  (A) 50 percent of the judgment debtor's current net worth; or (B) 25 million dollars."); Main Dkt. 296 (Basic Energy Services, L.P.'s Schedules), p. 197 (listing $17,321,264 in assets against $426,683,003 in liabilities); *In re Nalle Plastics Family Ltd. P'ship*, 406 S.W.3d 168, 170 (Tex. 2013) (explaining that "[t]he [2003] amendment . . . capped security at the lesser of fifty percent of the judgment debtor's net worth, or $25 million.").

I.     **THE DOCUMENTS IN SELECT'S APPENDIX ARE PROPERLY BEFORE THE COURT ON A MOTION TO DISMISS.**

Plaintiffs are wrong to argue that Select's Motion to Dismiss should be converted to a motion for summary judgment because it purportedly relies on "exhibits, arguments, and matters outside the pleadings, including Exhibits B–E and Exhibit H." *See* Plaintiffs' Objection to Motion to Dismiss (Adv. Dkt. 19) (the "***Objection***"), pp. 6-7.

Under Fifth Circuit precedent, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.'  In so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (internal citations omitted).  In addition, "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 2004)).  But the fact that a document is not a public record "is of no consequence;" so long as it is "referred to in the . . . complaint and central to [Plaintiff's] claim," the Court may consider it if attached to a motion to dismiss.  *See Sanders v. University of Texas Pan American*, No. 7:17-CV-00446, 2018 WL 11469733, at *2 (S.D. Tex. Jan. 3, 2018) (considering non-public EEOC charge referenced in plaintiff's complaint even though it was not a public record).[4]

Exhibit A to the Motion to Dismiss is the executed APA along with certain of its exhibits. App. [Adv. Dkt. 5], pp. 4-122.  Although the form of APA filed as a public record was unsigned

---

[4]    The general rule requiring conversion to summary judgment if matters outside the pleadings are presented in a motion to dismiss thus does "not [apply] if the material is a matter of public record and [also does] not [apply] if a defendant attaches documents to a motion to dismiss that are referred to in the plaintiff's complaint and are central to her claim." *Juan Antonio Sanchez, PC v. Bank of S. Tex.*, 494 F. Supp.3d 421, 431 (S.D. Tex. 2020) (quotation marks and footnotes omitted).

and did not include all of the APA's exhibits,[5] the Court nevertheless can consider the executed version of the APA together with its exhibits because Plaintiffs extensively rely on, cite, and quote the APA throughout their Petition as a basis for their claims.  *See Sanders*, 2018 WL 11469733, at *2; *see also* Petition ¶¶ 28, 34-44, 63-74 [Adv. Dkt. 1-1, pp. 12-14, 16-17].  Exhibit A is properly before the Court.

Exhibits B, C, and D to the Motion to Dismiss are the Assumption Agreements which implemented Select's assumption of the Assumed Liabilities from Basic under the APA.[6]  They are patterned on the form of Assumption Agreement attached as Exhibit C to the APA,[7] and are expressly integrated with the APA itself.[8]  Because the APA is extensively "referred to in the plaintiff[s'] [petition] and . . . central to [their] claim[s]"[9] Exhibits B, C, and D are properly before the Court.  *See also* Joint Discovery/Case Management Plan (Adv. Dkt. 10), p. 3 (it is undisputed that "[b]y this action, Plaintiffs seek to collect the [Negligence] Judgment from Select on the basis that it constitutes an Assumed Liability under the Sale Order, APA, and Assumption Agreement, along with supporting declaratory judgments.").

Exhibits E (Basic's Notice of Appeal in the Reeves County Case), F (the Negligence Judgment), G (Plaintiffs' Second Amended Petition in the Reeves County Case), and H (Plaintiffs' Counterclaim against Basic's insurers) are all public records from cases in which Plaintiffs are

---

[5]   *See* Main Dkt. 39-1, pp. 359-463.

[6]   *See* App. p. 18, APA § 2.05(b) ("Buyer shall assume all Assumed Liabilities. All Liabilities of Sellers other than the Assumed Liabilities (the 'Excluded Liabilities') shall be retained by Sellers").

[7]   *See* App. pp. 18, APA § 2.05(c)(iii) (requiring the Assumption Agreements to take the form of Exhibit C to the APA) and App. pp. 115-118 (Exhibit C to the APA).

[8]   App. p. 76, APA § 11.09 (noting that the APA "and the other Transaction Documents constitute the entire agreement between the Parties with respect to the subject matter hereof"); App. p. 91, APA p. A-12 (defining "Transaction Documents" to include the Assumption Agreements).

[9]   *See Collins*, 224 F.3d at 498-99 (allowing consideration of documents referenced in and central to the plaintiff's complaint on a motion to dismiss).

parties.  Moreover, Exhibits F and G are the fundamental bases upon on which Plaintiffs seek to hold Select liable for the Negligence Judgment and are referenced in and central to the Petition. *See* Petition, ¶¶ 18-19, 22, 24, 42-44, 67, 72-73 [Adv. Dkt. 1-1, pp. 11, 14, 16-17].  Accordingly, Exhibits E-H are properly before the Court.

## II.  PLAINTIFFS' NEGLIGENCE JUDGMENT AGAINST BASIC IS NOT AN "ASSUMED LIABILITY" NOR IS IT DUE FROM SELECT TO PLAINTIFFS.

### A.  The Negligence Judgment is not an Assumed Liability.

As explained in the Motion to Dismiss, an unambiguous contract is construed as a matter of law.  *See* Motion to Dismiss, p. 4.  All parties agree that the Sale Order, APA, and Assumption Agreements are unambiguous.  *See* Joint Discovery/Case Management Plan (Adv. Dkt. 10), p. 4, item 10.A.ii.  So this Court can and should determine as a matter of law in resolving Select's Motion to Dismiss that the Negligence Judgment is not an Assumed Liability, and accordingly that Select purchased the relevant assets free and clear, without any successor liability to Plaintiffs.[10]

First, Plaintiffs' assertion that "Basic's liability to Plaintiffs arises from the jury's affirmative finding on the Texas Natural Resources Code negligence per se question and instruction submitted by the court"[11] is completely unfounded and should be rejected because ***there is no such "affirmative finding" and there was no "negligence per se question."***  The only liability question in the jury charge in the Reeves County Case was as follows:

---

[10]  *See id*.  The term "Assumed Liabilities," when used in the Sale Order, has the meaning given to it in the APA.  *See* Sale Order, p.1 & n.2.  The Sale Order repeatedly provides that the sale of the Assets is "free and clear of . . . Liens, Claims, and Interests, except for Assumed Liabilities, Permitted Liens, and as otherwise provided in the APA."  Sale Order, ¶ X; *see also id*. at ¶ 9 ("[T]o the extent provided in the APA, such title to the Assets shall be transferred to Buyer free and clear of . . . Liens, Claims, and Interests (other than Assumed Liabilities, Permitted Liens, and as otherwise provided in the APA) . . . ."); *id*. at ¶ 13 (similar); *id*. at ¶¶ W & 24 ("No Successor Liability" provisions in the Sale Order).

[11]  Objection, p. 15.

==Did the negligence, if any, of those named below proximately cause the injury in question?==

"Negligence" means failure to use ordinary care; that is, failing to do that which a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances.

It is negligence to commit "waste." The term "waste" means the drowning with water a stratum or part of a stratum that is capable of producing oil or gas or both in paying quantities or underground loss, however caused.

A government-issued permit does not shield the permit-holder from liability for negligence.

"Ordinary care" means that degree of care that would be used by a person of ordinary prudence under the same or similar circumstances.

"Proximate cause" means a cause that was a substantial factor in bringing about an injury, and without which cause such injury would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the injury, or some similar injury, might reasonably result therefrom. There may be more than one proximate cause of an injury.

*See* App. 150 (highlighting added).

Plaintiffs speculate at length that, because the jury charge defines "waste" using language from the Texas Natural Resources Code and states that "[i]t is negligence to commit 'waste,'" the jury's finding of negligence should be treated as a finding that Basic committed "waste" under the Texas Natural Resources Code. *See* Objection, § B. This argument fails because it ignores that the jury charge also gave a much broader definition of negligence – "failure to use ordinary care" – and then defined both "negligence" and "ordinary care" without any reference to waste at all. Accordingly, although the jury charge *defined* "waste" as *one form* of negligence, the *question* put to the jury did not *require* a finding of *waste* in order to reach a finding of *negligence*. And because Plaintiffs did not submit a more specific "waste" question to the jury, Plaintiffs cannot survive dismissal by speculating that the jury's one-word "Yes" finding on negligence was based on "waste" as opposed to another form of negligence (*i.e.*, a mere failure to exercise ordinary care). *See* App. 150 ("Yes" finding on Question 1).

Importantly, Plaintiffs pled several other claims in the Reeves County Case against Basic – including a claim for "negligence per se" and a claim expressly seeking a declaratory judgment for "waste" under the Texas Natural Resources Code – but failed to obtain any jury findings on those more specific claims. *Compare* App. pp. 160-62 (Reeves County Petition, pp. 4-6) *with* App. pp. 150-54 (Negligence Judgment, pp. 7-11). As a result, any relief on Plaintiffs' other claims was expressly denied in the Negligence Judgment.[12] Plaintiffs cannot escape this fact merely by citing Basic's motion for summary judgment on the declaratory judgment claim,[13] both because Plaintiffs failed to supply this Court with any order granting Basic's motion and because any such order (which Select does not believe exists) would have been interlocutory and merged into the Negligence Judgment which denied all relief on Plaintiffs' other claims.[14] So regardless of any other theories Plaintiffs advanced in the Reeves County Case against Basic, the Negligence Judgment is not an Assumed Liability because it contains no finding that Basic violated an Environmental Law.

Incredibly, Plaintiffs also argue that even an ordinary negligence finding against Basic would be enough to constitute a "Liabilit[y] associated with the Assets arising under Environmental Law" (and thus an "Assumed Liability" under clause (e) of the APA's definition) because "common law" is a type of "Applicable Law." *See* Objection, p. 15. This misreads the APA and would lead to absurd results if every "Applicable Law" were treated as an

---

[12] App. p. 145, Negligence Judgment, p. 2 ("It is **ORDERED** that any and all other relief not otherwise granted herein, including any other relief that could have been requested by the parties in this case but was not, is hereby **DENIED**.") (emphasis in original).

[13] *See* Objection, pp. 12-13 (noting that Basic sought summary judgment on the declaratory judgment claim as redundant of Plaintiffs' other claims but failing to identify any order granting that motion).

[14] *Dallas Symphony Ass'n, Inc. v. Reyes*, 571 S.W.3d 753, 763 (Tex. 2019) (orders granting summary judgment are interlocutory); *Bonsmara Nat. Beef Co., LLC v. Hart of Texas Cattle Feeders, LLC*, 603 S.W.3d 385, 390 (Tex. 2020) ("When a trial court renders a final judgment, the court's interlocutory orders merge into the judgment . . . .").

"Environmental Law."  As defined in the APA, the term "Environmental Law" "means any

Applicable Law or any binding agreement with any Governmental Authority ***relating to***" a specific

list of protections, none of which includes ordinary common-law negligence:

> the protection of occupational or human health and safety (to the extent relating to exposure to Hazardous Substances), the environment (including ambient air, soil, surface water or groundwater, or subsurface strata), protection of natural resources, endangered, threatened or candidate species, biological or cultural resources, the release into the indoor or outdoor environment of pollutants, contaminants, wastes, chemicals, or toxic or other hazardous substances (or the cleanup thereof) or concerning the exposure to, or the generation, storage, transportation, disposal, Release or remediation of any Hazardous Substances.

App. p. 84, APA, p. A-5 (definition of "Environmental Law").  The APA underscores the

distinction between "Environmental Law" and ordinary negligence in the last sentence of the

definition of "Environmental Laws" by expressly carving out from that definition "good or

desirable operating practices or standards that may be employed or adopted by other salt water

disposal well operators or recommended, but ***not required, by a Governmental Authority***."  *Id*.

(emphasis added).  Avoiding ordinary negligence (*i.e.*, as defined in the jury charge, "the failure

to exercise ordinary care; that is, failing to do that which a person of ordinary prudence would

have done under the same or similar circumstances . . . .") is ***precisely*** the type of "good or desirable

operating practices or standards" which the carve-out excludes, and thus cannot be shoehorned

into the APA's definition of "Environmental Law."[15]

### B.    The Negligence Judgment is not "due."

As noted in the Motion to Dismiss, Plaintiffs waived any ability to collect from Basic in

the Lift-Stay Order, which eliminated any practical reason for Basic to supersede the judgment.

*See* Main Dkt. 497, ¶ 3.  Although Plaintiff's Objection relies on the Texas supersedes rules and a

---

[15]    *See* App. p. 150 (jury charge in the Negligence Judgment); App. p. 84, APA, p. A-5 (definition of "Environmental Law").  In other words, just because all common law is "Applicable Law" and some "Applicable Law" is "Environmental Law" does not mean all common law is "Environmental Law."

1995 case, *Gulf Insurance Co. v. Clarke*, 902 S.W.2d 156 (Tex. App.—Houston [1st Dist.] 1995,

writ denied), to argue that the absence of a supersedeas bond from Basic means that Plaintiff can

collect from insurers or third parties despite Basic's pending appeal, Plaintiffs' argument overlooks

that the Texas supersedeas rules were changed in 2003 such that an entity with a negative net worth

(like Basic) need not post a bond in order to supersede a judgment.[16]  Unlike in 1995, the post-

2003 rules now allow a Texas judgment debtor with a negative net worth to rely on a net-worth

affidavit in lieu of a bond to prevent execution during the pendency of an appeal.[17]  It would elevate

form over substance to require technical compliance with the net-worth affidavit procedures in

light of Plaintiffs' waiver of collection rights against Basic in the Lift-Stay Order and the negative

net worth already reflected on Basic's schedules.  Thus, the Negligence Judgment did not have to

be superseded, is not due from Basic while on appeal, and therefore is not due from Select, even

if it somehow were found to be an "Assumed Liability."

    **C.**    **Plaintiffs are not Third-Party Beneficiaries under the APA or Assumption Agreements.**

Plaintiffs attempt to evade the clear disclaimer of third-party beneficiaries in section 11.08

of the APA by distinguishing the APA from the Assumption Agreements.  Objection, p. 18.  But

each Assumption Agreement incorporates by reference all of the terms of the APA – necessarily

including its disclaimer of third-party beneficiaries:

---

[16]  *See* n.3, above.  In 1995, when *Clarke* was decided, TEX. CIV. PRAC. & REM. CODE § 52.002 provided that a supersedeas bond could not be set at less than the full amount of the judgment in a personal injury action.  *See* 902 S.W.2d at 158 n.1.  But that statute was repealed in 2003, and under current Texas law a judgment debtor with a negative net worth need not post a supersedeas bond to prevent execution.

[17]  *See, e.g., EnviroPower, L.L.C. v. Bear, Stearns & Co., Inc.*, 265 S.W.3d 1, 5 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (noting that a negative net-worth finding "would relieve EnviroPower of having to post a supersedeas bond"); *G.M. Houser, Inc. v. Rodgers*, 204 S.W.3d 836, 846 (Tex. App.—Dallas 2006, no pet.) (ordering $0 supersedeas for a judgment debtor with a negative net worth); Tex. R. App. P. 24.2(c)(1) (outlining requirements for a net-worth affidavit); *In re Nalle Plastics Family Ltd. P'ship*, 406 S.W.3d at 169-70 (discussing the changes to the Texas supersedeas rules in 2003).

> 7.    Agreement Subject to Purchase Agreement.  This Agreement is expressly subject to the terms and conditions of the Purchase Agreement, which terms are hereby incorporated into this Agreement by reference for all purposes.  In the event of a conflict between the terms of this Agreement and the terms of the Purchase Agreement, the terms of the Purchase Agreement shall control.

*See* App. pp. 125, 130, 136 (Assumption Agreements, ¶ 7) (highlighting added).[18]  Moreover, the Assumption Agreements provide that they "inure to the benefit of [Basic] and [Select]" – not Basic's creditors such as Plaintiffs.  *See* App. pp. 124, 129, 135 (Assumption Agreements, ¶ 4).  Accordingly, Plaintiffs' misguided attempt to deem themselves third-party beneficiaries fares no better under the Assumption Agreements than it does under the APA.

Plaintiffs also are wrong to argue, on Objection p. 19, that enforcing the disclaimer of third-party beneficiaries would make the assumption of liability provisions in the APA "wholly meaningless" because Basic is ultimately set to liquidate under its confirmed plan.  The impact of Basic's planned liquidation will not be a "meaningless" assumption of liability, but instead one which might be time-limited by the duration of Basic and its Liquidation Trust's continued existence.  The APA's disclaimer of third-party beneficiaries thus can be harmonized with Select's assumption of the Assumed Liabilities and bars Plaintiffs from asserting any rights thereunder.

Accordingly, full weight must be given to the parties' unambiguous expression of intent in the APA and incorporated in the Assumption Agreements not to create third-party beneficiaries, and Plaintiffs cannot enforce any assumption of liabilities by Select.  *Wal-Mart Stores, Inc. v. Xerox State & Local Solutions, Inc*., 663 S.W.3d 569, 584 (Tex. 2023); *see also Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011) ("All doubts must be resolved against conferring third-party beneficiary status.").

---

[18]   As explained in footnote 8 above, the APA and Assumption Agreements are an integrated contract so the disclaimer of third-party beneficiaries applies across both instruments without any conflict.  But even in the event of a conflict, the Assumption Agreements provide that the APA controls.  *See* Assumption Agreements, ¶ 7.

### III.     PLAINTIFFS' POST-SALE NEGLIGENCE CLAIMS FAIL.

Plaintiffs negligence and gross negligence claims rely on conclusory and implausible pleading and must be dismissed.  Plaintiffs admit that all of their wells were permanently damaged, irrevocably lost, and flowing wastewater at the surface on December 2, 2019, nearly two years before Select's purchase of the Orla Kessler from Basic.  *See* Objection, pp. 20-21; App. pp. 158-59 (Reeves County Petition, ¶ 8); App. p. 178 (Insurance Counterclaim, ¶ 18).  Plaintiffs further admit that "there was no evidence at trial [in the Reeves County Case against Basic] that the permanent harm to the PPC leasehold interest and wells could have been avoided *or limited* had Basic stopped injecting on September 12, 2019."  *See* App. p. 179 (Insurance Counterclaim, ¶ 22) (emphasis added).  The Court can and should consider Plaintiffs' admissions in other public filings in resolving a motion to dismiss in this case.  *See Sanders*, 2018 WL 11469733, at *2 & n.22 (taking judicial notice of plaintiff's admissions in Case 1 in order to find plaintiff's claims in Case 2 time-barred), *aff'd*, 776 Fed. Appx. 835 (5th Cir. 2019).

Plaintiffs now attempt to distinguish the above admissions by focusing on their conclusory allegations that Select's post-sale injections "caused uncontrolled flow of wastewater to the surface" and "made the cost of plugging and abandoning the wells even more expensive." Objection, p. 21.  But, Plaintiffs have not pled any *facts* demonstrating how Select's alleged post-sale saltwater injections increased the cost of plugging and abandoning their wells – all of which Plaintiffs admit were already flowing wastewater at the surface prior to any acquisition or alleged injections by Select.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (only plausible claims may survive a motion to dismiss and conclusory allegations are not entitled to an assumption of truth). Therefore, Plaintiffs' claims for negligence and gross-negligence must be dismissed.

## CONCLUSION

For the reasons stated above and in the Motion to Dismiss, Select respectfully asks this Court to grant its Motion to Dismiss, dismiss all claims against Select, and order such other and further relief as the Court finds appropriate.

Respectfully submitted,

*/s/ Jordan W. Leu*
Jordan W. Leu
  Texas Bar No. 24070139
  jleu@velaw.com
Thomas P. Mitsch
  Texas Bar No. 24102218
  tmitsch@velaw.com
VINSON & ELKINS LLP
2001 Ross Avenue, Suite 3900
Dallas, Texas 75201
Tel.: (214) 220-7700
Fax.: (214) 999-7715

-and-

Michael J. Moore
  Texas Bar No. 24039068
  mmoore@brownpruitt.com
BROWN PRUITT WAMBSGANSS DEAN
    FORMAN & MOORE, P.C.
201 Main Street, Suite 700
Fort Worth, Texas 76102
Tel.: (817) 338-4888

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I certify that on October 23, 2023, a true and correct copy of the foregoing instrument was filed with the Clerk of the Court using the CM/ECF system, which will send electronic notification of such filing to all counsel of record.

*/s/ Thomas P. Mitsch*
Thomas P. Mitsch

4858-1958-5928