IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | CHAPTER 11 |
| | § | |
| BASIC ENERGY SERVICES, INC., *et al.*, | § | Case No. 21-90002 (CML) |
| | § | |
| | § | (Jointly Administered) |
| Debtors. | § | |
| _____ | § | |
| PPC ENERGY, LP and PRIEST | § | |
| PETROLEUM CORPORATION, | § | |
| | § | |
| | § | |
| Plaintiffs, | § | Adversary No. 23-03208 |
| | § | |
| vs. | § | |
| | § | |
| SELECT ENERGY SERVICES, LLC, | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFFS' BRIEF IN RESPONSE TO ORDER (I) DENYING DEFENDANT'S
MOTION TO DISMISS, (II) DENYING PLAINTIFFS' MOTION TO DISMISS, AND
(III) REQUESTING BRIEFING [ADV. DKT. 30]**

## <u>TABLE OF CONTENTS</u>

Issue Presented ............................................................................................................... 1

Short Answer ................................................................................................................... 1

Governing Law ............................................................................................................... 2

Introduction and Summary ............................................................................................. 2

Factual Background ........................................................................................................ 3

   A.   Plaintiffs sue Basic. ............................................................................................ 3

   B.   Basic files for bankruptcy; Day One filings and orders. ................................... 4

   C.   PPC seeks relief from the automatic stay. ........................................................ 4

   D.   The Court approves the sale to Select. .............................................................. 5

   E.   Select and Basic enter into the Assumption Agreement. .................................. 5

   F.   The Court grants relief from the automatic stay; Basic's liability is adjudicated. .............. 6

Exhibits .......................................................................................................................... 6

Argument and Authorities .............................................................................................. 7

   A.   The Final Judgment is an "Assumed Liability" as defined by the APA. ........... 7

      (1)   The definition of "Assumed Liabilities" ...................................................... 8

      (2)   The Final Judgment is a "Liability" associated with the Assets. ................. 9

      (3)   The Final Judgment arises under "Environmental Law." ............................ 9

         (a)   PPC pleaded violation of an "Environmental Law." .............................. 11

         (b)   The Final Judgment adjudicates liability for negligence per se. ............. 12

         (c)   The APA includes common law duties within "Environmental Law." ........ 15

      (4)   The Final Judgment arises with respect to an "Environmental Claim." ........ 16

      (5)   Basic and Select chose to categorize, rather than specifically list, Assumed Liabilities. ........................................................................... 16

   B.   The Final Judgment is an "Assumed Liability" regardless of whether the Reeves County Lawsuit was disclosed as an "Environmental Matter" under Section 3.07 of the APA. ....................................................... 17

   C.   The timing of the bankruptcy orders does not defeat Select's liability for the Final Judgment as an "Assumed Liability." .................................... 19

Prayer for Relief ............................................................................................................ 21

## TABLE OF AUTHORITIES

**Cases**                                                                       **Page(s)**

*In re Applewood Chair Co.*,
  203 F.3d 914 (5th Cir. 2000) ......................................................................21

*Cimarex Energy Co. v. Anadarko Petroleum Corp.*,
  574 S.W.3d 73 (Tex. App.—El Paso 2019, no pet.)............................................11

*Discovery Operating, Inc. v. BP Am. Prod. Co.*,
  311 S.W.3d 140 (Tex. App.—Eastland 2010, pet. denied) ..................................12

*Elliff v. Texon Drilling Co.*,
  210 S.W.2d 558 (Tex. 1948).........................................................................14

*Exxon Corp. v. Emerald Oil & Gas Company, L.C.*,
  331 S.W.3d 419 (Tex. 2010).....................................................................12, 13

*Hay v. First Interstate Bank of Kalispell, N.A.*,
  978 F.2d 555 (9th Cir. 1992) ...................................................................18–19

*Horn v. State Farm Lloyds*,
  703 F.3d 735 (5th Cir. 2012) ........................................................................7

*Hyundai Motor Co. v. Rodriguez ex rel. Rodriguez*,
  995 S.W.2d 661 (Tex. 1999).........................................................................14

*JP Morgan Chase Bank, N.A. v. Datatreasury Corp.*,
  823 F.3d 1006 (5th Cir. 2016) .......................................................................7

*In re Jones*
  Adv. No. 23-03035, 2023 WL 6938266, at *7
  (Bankr. S.D. Tex. Oct. 19, 2023) .................................................................14

*In re JZ L.L.C.*,
  371 B.R. 412 (B.A.P. 9th Cir. 2007).............................................................18

*MEMC Elec. Materials, Inc. v. Albemarle Corp.*,
  241 S.W.3d 67 (Tex. App.—Houston [1st Dist.] 2007, pet. denied)......................16

*Midwest Empls. Cas. Co. v. Harpole*,
  293 S.W.3d 770 (Tex. App.—San Antonio 2009, no pet.)..................................12

*In re Moose Oil & Gas Co.*,
  347 B.R. 868 (Bankr. S.D. Tex. 2006) ..........................................................20

*Noble Energy, Inc. v. ConocoPhillips Co.*,
532 S.W.3d 771 (Tex. 2017) ........................................................17, 18

*Northland Indus. v. Kouba*,
620 S.W.3d 411 (Tex. 2020) ..................................................................2

*Perry v. S.N.*,
973 S.W.2d 301 (Tex. 1998) ................................................................12

**Statutes**

TEX. NAT. RES. CODE § 85 ...................................................12, 14, 16

TEX. NAT. RES. CODE § 85.045 .................................................12, 14

TEX. NAT. RES. CODE § 85.321 ........................................................12

TEX. NAT. RES. CODE § 89.001 ........................................................11

TEX. R. CIV. P. 277 .............................................................................14

TEX. R. CIV. P. 278 .............................................................................13

**Other**

*Texas Pattern Jury Charges – General Negligence, Intentional Personal
Torts & Workers' Compensation* PJC 5.3 (2018) .................................13

TO THE HONORABLE JUDGE CHRISTOPHER M. LOPEZ:

PPC Energy, LP and Priest Petroleum Corporation (collectively, "PPC") submit this *Brief in Response to Order (i) Denying Defendant's Motion to Dismiss, (ii) Denying Plaintiffs' Motion for Remand, and (iii) Requesting Briefing* [Adv. Dkt. 30] and respectfully represent as follows:

### ISSUE PRESENTED

> Whether all or any portion of the "Final Judgment" entered by the 143rd District Court of Reeves County, Cause No. 20-01-23355-CVR, in favor of PPC Energy, LP and Priest Petroleum Corporation against Basic Energy Services, LP ["Basic"] is an "Assumed Liability" as defined in the executed Asset Purchase Agreement approved by the Court in connection with the Order at Main Case Docket No. 438.

[Adv. Dkt. 30].

### SHORT ANSWER

All of the Final Judgment is an "Assumed Liability" as defined in the Asset Purchase Agreement ("APA"). The APA was filed by Select in the appendix to its *Motion to Dismiss*. [*See* Adv. Dkt. 5-1]. The APA required Select to "assume all Assumed Liabilities." [Exhibit 1, APPX000013 at Section 2.03].

"Assumed Liabilities" is a defined term:

"Assumed Liabilities" means:

    (a)    all Liabilities under or associated with or appurtenant to the Assets to the extent related to periods from and after the Closing Date, including without limitation all such Liabilities arising out of the operation and/or ownership of the Assets from and after the Closing Date;

    (b)    all Assumed Prepetition Accounts Payable;

    (c)    [reserved];

    (d)    all asset retirement obligations related to the Assets;

    (e)    all Liabilities associated with the Assets arising under Environmental Law, including with respect to Environmental Claims whether arising on, before or after the Closing Date, including without limitation those related to the control, storage, handling, transporting and disposing of or discharge of all materials, substances and wastes from the Assets, including produced water, hydrogen sulfide gas, drilling fluids, NORM and other wastes;

[*Id.* at APPX000079].

The Final Judgment awards damages for claims arising under Environmental Law, including with respect to Environmental Claims, and therefore the Final Judgment is an "Assumed Liability."

### GOVERNING LAW

The APA provides that Texas law governs. [*Id.* at APPX000073 at Section 11.05]. The APA is unambiguous and is construed as a matter of law. *Northland Indus. v. Kouba*, 620 S.W.3d 411, 414–15 (Tex. 2020). Texas law recognizes the assumed-liability exception to the majority rule regarding successor liability. *Id.* at 414 n.18.

### INTRODUCTION AND SUMMARY

This case concerns the text of an unambiguous contract between sophisticated parties bargaining at arm's length as part of a court-approved sale process. Assumed Liabilities include, in relevant part: (1) all Liabilities under or associated with or appurtenant to the Assets . . . arising out of the operation and/or ownership of the Assets from and after the Closing Date; and (2) all

Liabilities associated with the Assets arising under Environmental Law irrespective of when the Liabilities arose.  [*Id.* at APPX000079].

In short:  (a) Select, through the APA and the Assumption Agreement, agreed to pay environmental liabilities of Basic if and when they became due and owing; (b) the Court then lifted the automatic stay [Exhibit 5] to allow adjudication of environmental liabilities against Basic with the agreement that PPC only seek recovery of the environmental liabilities from (i) any and all insurance carriers providing coverage for PPC's claims; and/or (ii) funds available under any and all insurance policies providing coverage for the Basic's adjudicated liability; and/or (iii) any other insurance obligations of Basic's insurance carriers in connection with or related to claims asserted by PPC; and/or (iv) other third parties; and (c) Basic's liabilities were duly adjudicated and found due and owing by the Reeves County district court.

Moreover, Select's agreement to pay "Assumed Liabilities" if and when they became due and owing was part of the stalking horse bid approved by the Court and part of the bargained-for consideration Select gave the estate in exchange for Basic's water logistics business (which, at a minimum, represented millions of dollars of value).  The assumption of liabilities is repeated throughout the APA and the Order approving the APA.

Select's belated attempt to evade the Assumed Liabilities, after receiving the benefits of Basic's assets at a reduced cash purchase price because it assumed the liabilities, should be rejected.

## FACTUAL BACKGROUND

### A.    Plaintiffs sue Basic.

Basic was in the business of reinjecting saltwater produced by oil and gas wells (*i.e.*, "produced water") back into the ground from which it came.  Oil wells produce oil and saltwater

simultaneously from the wellbore.  The oil and saltwater are separated at the surface, the oil is sold, and the saltwater is reinjected back into the ground.

On January 9, 2020, PPC sued Basic, alleging Basic's saltwater injection operations into Basic's well, the Orla Kessler #1, displaced the oil and gas in place in the subsurface strata from which PPC's wells produced.  PPC alleged the loss of oil in place caused by Basic's saltwater injections violated the Texas Natural Resources Code's (1) prohibition on waste of oil and gas resources and (2) the provisions protecting underground oil and gas resources and subsurface strata (the "Reeves County Lawsuit"). [Exhibit 6, APPX000244 at ¶¶ 17–18].

**B.      Basic files for bankruptcy; Day One filings and orders.**

On August 17, 2021, while the Reeves County Lawsuit was ongoing, Basic commenced a voluntary case under Chapter 11 of Title 11 of the United States Code in the U.S. Bankruptcy Court for the Southern District of Texas.  [Main Dkt. 1].

The same day, Basic filed its *Emergency Motion of Debtors for Entry of an Order Approving (i) (a) Bidding Procedures, (b) Stalking Horse Bid Protections, and (c) Assumption and Assignment Procedures; (ii) (a) Purchase Agreements and (b) Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances; and (iii) Granting Related Relief* (the "Sale Motion").  [Main Dkt. 39].  Pursuant to the Sale Motion, Basic and Select proposed the APA—with an effective date of August 17, 2021—which served as Select's stalking horse bid for Basic's water logistics assets, including the Orla Kessler.  [Exhibit 1].

**C.      PPC seeks relief from the automatic stay.**

On September 10, 2021, Basic and PPC filed a *Stipulation and Order Granting Limited Relief from the Automatic Stay Regarding PPC Energy, LP and Priest Petroleum Corporation Litigation* (the "Lift Stay Stipulation").  [Main Dkt. 336].  The Lift Stay Stipulation asked the

Court to lift the automatic stay with respect to the Reeves County Lawsuit—to allow the litigation to proceed to final judgment on the express condition that "Movants' collection pursuant to a final judgment is recoverable only from the applicable insurance policies of the Debtors and other third parties and not from the Debtors or their estates directly or indirectly." [*Id.* at ¶ 4].

**D.      The Court approves the sale to Select.**

On September 16, 2021, Basic notified the Court that Select was successful in submitting the most favorable and highest bid for its water logistics business. [Main Dkt. 366]. A week later, the Court entered its *Order (i) Approving (a) the Sale of the Water Logistics Business of the Debtors Free and Clear of All Liens, Claims, Interests, and Encumbrances and (b) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (ii) Granting Related Relief* (the "Sale Order"). [Exhibit 4].

The Sale Order repeatedly provided that the sale was subject to the Assumed Liabilities as defined in the APA. [*Id.*]. In addition, the APA unequivocally identified the Reeves County Lawsuit as pending litigation which could be expected to have an adverse effect on the Assets. [Exhibit 1, APPX000027–28; Exhibit 9]. Select was on notice of the litigation and, as part of its due diligence, would have had an opportunity to review the public filings related to the case, including the live petition, which undeniably pleaded Environmental Claims as defined in the APA. Now, despite the disclosure of the Reeves County Lawsuit and the APA's unambiguous provision that all claims under Environmental Law are Assumed Liabilities, Select attempts to avoid liability for satisfaction of the Final Judgment.

**E.      Select and Basic enter into the Assumption Agreement.**

Effective October 1, 2021, Basic and Select executed the Assumption Agreement required by the APA. [Exhibit 3]. As reflected therein, Select agreed to undertake and assume, and expressly

covenanted not only to pay, but also to "perform, observe the terms of, satisfy and/or discharge" certain liabilities and obligations of Basic "if, as, when and to the extent due . . . [,]" including, but not limited to, the "Assumed Liabilities." [Exhibit 3, APPX000187 at ¶ 2].

In the Assumption Agreement, Basic and Select utilized the phrase "*if, as, when and to the extent due*," memorializing that Select had expressly and unquestionably agreed to undertake and assume all "Assumed Liabilities," regardless of when such liabilities actually became due or owing. [*Id.* at ¶ 2 (emphasis added)]. Moreover, the Assumption Agreement references "Environmental Claims whether arising on, before or after the Closing Date," which further clarifies that both Select and Basic understood and agreed that Select had undertaken and was from that point forward legally responsible for any "Liability" associated with or arising from noncompliance with any "Environmental Law," whether such liability related to activities on, before, or after closing. [*Id.* at APPX000188 at ¶ 2(e)].

## F. The Court grants relief from the automatic stay; Basic's liability is adjudicated.

On October 14, 2021, the Court signed the *Stipulation and Order Granting Limited Relief from the Automatic Stay Regarding PPC Energy, LP and Priest Petroleum Corporation Litigation* (the "Lift Stay Order"), permitting the Reeves County Lawsuit to proceed to final judgment on the express condition that PPC collect the final judgment from Basic's insurance companies and other third parties, and not from property of the estate. [Exhibit 5]. Accordingly, and in reliance on the Court's order, PPC proceeded to trial and was awarded judgment against Basic on May 12, 2023. [Exhibit 7, APPX000252].

### EXHIBITS

In support of this *Brief*, PPC relies on the pleadings and papers on file with the Court, of which the Court is requested to take judicial notice. PPC also respectfully submits the following

exhibits, which are incorporated herein by reference for all purposes in the Appendix filed herewith:

| | |
|---|---|
| Exhibit 1 | APA (August 17, 2021) [Adv. Dkt. 5-1, pp. 4–122] |
| Exhibit 2 | Stalking Horse Order (August 25, 2021) [Main Dkt. 179] |
| Exhibit 3 | Assumption Agreement (October 1, 2021) [Adv. Dkt. 5-1] |
| Exhibit 4 | Sale Order  (September 23, 2021) [Main Dkt. 438] |
| Exhibit 5 | Lift Stay Order (October 14, 2021) [Main Dkt. 497] |
| Exhibit 6 | Second Amended Petition (March 1, 2021) |
| Exhibit 7 | Final Judgment (May 12, 2023) |
| Exhibit 8 | Hearing Transcript (October 26, 2023) |
| Exhibit 9 | APA Disclosure Schedule 3.08 |

## ARGUMENT AND AUTHORITIES

Where a contract is unambiguous, such as in the case of the APA, courts apply its plain meaning and enforce it as written. *JP Morgan Chase Bank, N.A. v. Datatreasury Corp.*, 823 F.3d 1006, 1011 (5th Cir. 2016); *Horn v. State Farm Lloyds*, 703 F.3d 735, 738 (5th Cir. 2012).  In other words, where the contract is unambiguous "the text will reign supreme." [Exhibit 8, APPX000339 at 75:7–10]. Select unambiguously and plainly agreed to assume, undertake, and pay all liabilities related to Environmental Law and all Environmental Claims made against Basic—whether those claims were related to past, current, or future conduct associated with the Assets.

**A.    The Final Judgment is an "Assumed Liability" as defined by the APA.**

Select purchased Basic's water logistics assets in exchange for:

> (a) $15,000,000 in cash (the "Cash Consideration") and (b) the Stock Consideration (together with the Cash Consideration, the "Purchase Price"), and assume all Assumed Liabilities in accordance with this Agreement

[Exhibit 1, APPX000013 at Section 2.03].

Select's agreement to undertake legal responsibility for "all Assumed Liabilities" was an integral part of the consideration given to the estate in exchange for the water logistics assets which, as reflected in the Sale Order, the Court determined was the "highest or otherwise best value for the Assets."  [Exhibit 4, APPX000200 at ¶ L].  Notwithstanding, Select now seeks to avoid responsibility for paying the Assumed Liabilities, despite the unambiguous language in the APA.

**(1)    The definition of "Assumed Liabilities"**

Basic and Select defined "Assumed Liabilities" broadly through the inclusion of other defined terms, including "Liabilities," "Environmental Claims," and "Environmental Law":

"Assumed Liabilities" means:

> (a)    all Liabilities under or associated with or appurtenant to the Assets to the extent related to periods from and after the Closing Date, including without limitation all such Liabilities arising out of the operation and/or ownership of the Assets from and after the Closing Date;

> (b)    all Assumed Prepetition Accounts Payable;

> (c)    [reserved];

> (d)    all asset retirement obligations related to the Assets;

> (e)    all Liabilities associated with the Assets arising under Environmental Law, including with respect to Environmental Claims whether arising on, before or after the Closing Date, including without limitation those related to the control, storage, handling, transporting and disposing of or discharge of all materials, substances and wastes from the Assets, including produced water, hydrogen sulfide gas, drilling fluids, NORM and other wastes;

[Exhibit 1, APPX000079].

Therefore, the Final Judgment constitutes an "Assumed Liability," if it (a) is a "Liabilit[y] associated with the Assets;" and (b) arises under either "Environmental Law" or "with respect to an Environmental Claim[]."  [Id.].  Both are true.

(2)     **The Final Judgment is a "Liability" associated with the Assets.**

The APA defines "Liability" as follows:

> "Liability" means any direct or indirect liability, indebtedness, obligation, commitment, expense, loss, claim, deficiency, or guaranty of or by any Person of any types, whether known or unknown, and whether accrued, absolute, contingent, matured or unmatured.

[*Id.* at APPX000084].

The Final Judgment is undeniably a "Liability."  It evidences indebtedness owed in the form of a present legal obligation to pay money damages to PPC.  Indeed, Select has already conceded that the Final Judgment is a "Liability" as defined in the APA.  [Adv. Dkt. 34 at p. 13, ¶ 43].  Moreover, it is equally undeniable that the Final Judgment is "associated with the Assets." The Final Judgment is directly related to Basic's ownership and operation of the Orla Kessler disposal well, which was one of the Assets Select admits it purchased from Basic pursuant to the APA.  [*See id.* at pp. 9–10, ¶ 31].  The Final Judgment irrefutably constitutes a "Liability associated with the Assets."

(3)     **The Final Judgment arises under "Environmental Law."**

Select agreed to take on and become legally responsible for environmental matters associated with the Assets, including those associated with the Orla Kesser disposal well.  In that regard, Basic and Select defined "Assumed Liabilities" to expressly include "all Liabilities associated with the Assets arising under Environmental Law . . . ."  [Exhibit 1, APPX000079].  In turn, the parties defined "Environmental Law" as follows:

"Environmental Law" means any Applicable Law or any binding agreement with any Governmental Authority relating to the protection of occupational or human health and safety (to the extent relating to exposure to Hazardous Substances), the environment (including ambient air, soil, surface water or groundwater, or subsurface strata), protection of natural resources, endangered, threatened or candidate species, biological or cultural resources, the release into the indoor or outdoor environment of pollutants, contaminants, wastes, chemicals, or toxic or other hazardous substances (or the cleanup thereof) or concerning the exposure to, or the generation, storage, transportation, disposal, Release or remediation of any Hazardous Substances.  The term "Environmental Laws" does not include good or desirable operating practices or standards that may be employed or adopted by other salt water disposal well operators or recommended, but not required, by a Governmental Authority.

[*Id.* at APPX000082].

Basic and Select defined "Environmental Law" broadly. Their definition is not tied to, nor does it reference, any particular environmental rule or law.  [*See id.*].  Instead, to ensure that their definition encompassed all matters related to the environment, they included additional references within their definition of "Environmental Law," including words and phrases like "subsurface strata" and the "protection of natural resources."  [*Id.*].

They also included another defined term, "Applicable Law," which, in turn, was defined broadly without any meaningful limit:

"Applicable Law" means, with respect to any Person, any federal, state or local law (statutory, common or otherwise), constitution, ordinance, code, rule, regulation, order, injunction or judgment adopted or promulgated by a Governmental Authority (or under the authority of the New York Stock Exchange) that is binding upon or applicable to such Person, as amended unless expressly specified otherwise.

[*Id.* at APPX000078].

Thus, the APA is unambiguous that any law related to the environment—whether statutory or common law—falls within the scope of "Environmental Law."

### (a)    PPC pleaded violation of an "Environmental Law."

In the Reeves County Lawsuit, PPC pleaded that Basic's injection of produced water damaged PPC's oil and gas reserves by "drowning" (*i.e.*, pressurizing the producing formation with saltwater such that the oil and gas in place was forced out of the pore space and irrevocably lost).  [Exhibit 6, APPX000242–43 at ¶¶ 11–14].  PPC alleged Basic's actions violated the Texas Natural Resources Code's prohibition on the "waste" of oil and gas resources, which gives rise to a negligence per se claim.  [*Id*. at APPX000243 at ¶ 14].

The purpose of the Texas Natural Resources Code is to protect underground resources, including oil and gas. *See* TEX. NAT. RES. CODE § 89.001 ("The conservation and development of all the natural resources of this state are declared to be a public right and duty. It is also declared that the protection of water and land on the state against pollution or the escape of oil or gas is in the public interest."); *see also Cimarex Energy Co. v. Anadarko Petroleum Corp.*, 574 S.W.3d 73, 89 n.9 (Tex. App.—El Paso 2019, no pet.) ("In general, the Texas Natural Resources Code regulates oil and gas operators with regard to the production, storage and transportation of oil and gas to ensure that their operations are conducted in a manner, in an amount, or under conditions to avoid waste.").

The Texas Natural Resources Code prohibits the "waste" of oil and gas resources, including the injury that occurred to PPC's wells from Basic's injection of produced saltwater into the sub-surface environment:  "[t]he production, storage, or transportation of oil or gas in a manner, in an amount, or under conditions that constitute waste is unlawful and is prohibited." *Id.* at § 85.045. The term "waste" is defined as, among other things, "drowning with water a stratum or part of a stratum that is capable of producing oil or gas or both in paying quantities" and "underground waste or loss, however caused." *Id.* at § 85.046.

Although PPC's claims included both "negligence" and "negligence per se," the **only** breach of duty pleaded in the Reeves County Lawsuit was that Basic caused "injected water to enter, drown, and pressurize the producing stratum or formations from which Plaintiffs' wells produce" (*i.e.*, a breach of the standard of conduct required by the Texas Natural Resources Code). [Exhibit 6, APPX000242–43 at ¶ 12].

It is axiomatic that the legislature can create a legal duty in both statute and common law, as it did through the Texas Natural Resources Code.  A legal duty is an obligation that requires a defendant to conform to a certain standard of conduct to protect others from unreasonable risks of harm. *Midwest Empls. Cas. Co. v. Harpole*, 293 S.W.3d 770, 776 (Tex. App.—San Antonio 2009, no pet.).  And there is no question that civil statutes and administrative rules can be the basis for imposing a duty recognized in tort.  *Perry v. S.N.*, 973 S.W.2d 301, 306–07 (Tex. 1998).  Indeed, section 85.321 of the Texas Natural Resources Code expressly provides for a private cause of action for aggrieved parties, such as PPC, who have suffered an injury resulting from a violation of Chapter 85, including section 85.045. *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 331 S.W.3d 419, 422 (Tex. 2010) (holding that the clear language of section 85.321 creates a private cause of action for damages resulting from violations of Chapter 85, other laws of Texas prohibiting waste, and valid rules and orders of the Railroad Commission); *Discovery Operating, Inc. v. BP Am. Prod. Co.*, 311 S.W.3d 140, 161 (Tex. App.—Eastland 2010, pet. denied).

*(b)   The Final Judgment adjudicates liability for negligence per se.*

The Final Judgment, which adjudicated Basic's liability for breach of the Texas Natural Resources Code, is a Liability arising under Environmental Law.  Critically, Select does not argue (and cannot credibly argue) that the Texas Natural Resources Code is not an "Environmental Law" as defined by the APA.  Rather, Select's argument is premised on the incorrect factual assertion

that the jury only found common law negligence, and not negligence per se, statutory waste, or common law waste.  Select's assertion is incorrect.

The Reeves County district court instructed the jury on negligence per se based on the evidence presented at trial. The *Texas Pattern Jury Charges* instructs courts to submit negligence per se claims in the form of an instruction to the jury that an unexcused violation of a legislative standard of care causing injury constitutes negligence per se, or "negligence as a matter of law." *Texas Pattern Jury Charges – General Negligence, Intentional Personal Torts & Workers' Compensation* PJC 5.3 (2018); *see Emerald Oil & Gas Co.*, 331 S.W.3d at 422 (holding that a cause of action for waste created by Texas Natural Resources Code was properly brought through negligence per se claim).  That is exactly what the trial court did in the Reeves County Lawsuit, instructing the jury that a violation of the standard of care prescribed by the Texas Natural Resources Code constitutes negligence:

> It is negligence to commit "waste."  The term "waste" means the drowning with water a stratum or part of a stratum that is capable of producing oil or gas or both in paying quantities or underground loss, however caused.

[Exhibit 7, APPX000257]. Indeed, the Texas Rules of Civil Procedure ***prohibit*** the trial court from instructing the jury on negligence per se absent a pleading (*i.e.*, request for the instruction) and sufficient evidence at trial. TEX. R. CIV. P. 278 (providing that a trial court may only submit questions, instructions, and definitions that are raised by the written pleadings and evidence received at trial).

As instructed on negligence per se, the jury answered "yes" to whether the negligence of Basic "proximately caused the injury in question." [*Id.*].

Select's arguments that the Reeves County district court rejected Plaintiffs' claims for statutory waste, common law waste, and declaratory relief are also meritless. Texas Rule of Civil Procedure 277 requires that in "all jury cases the court shall, whenever feasible, submit the cause upon broad-form questions." Texas courts are discouraged from submitting "differently worded questions that call for the same factual finding." *Hyundai Motor Co. v. Rodriguez ex rel. Rodriguez*, 995 S.W.2d 661, 665–66 (Tex. 1999) ("While trial courts should obtain fact findings on all theories pleaded and supported by evidence, a trial court is not required to, and should not, confuse the jury by submitting differently worded questions that call for the same factual finding.").

Here, the factual findings for statutory waste and common law waste mirror those required for negligence and negligence per se.  For example, and as Select admits in its previous briefing, Plaintiffs' claim for statutory waste was premised on the same violation of the Texas Natural Resources Code on which Plaintiffs' claim for negligence per se was based. [Adv. Dkt. 5, p. 7; <u>Exhibit 6</u>, APPX000243 at ¶ 14 (negligence per se allegations), APPX000244 at ¶ 18 (common law and statutory waste allegations)].  Far from "rejecting" Plaintiffs' claims for negligence per se, common law waste, and statutory waste, the trial court simply submitted a single question on multiple legal theories that involved the same factual finding as required by Texas law. *See Hyundai*, 995 S.W.2d at 665–66; *compare Elliff v. Texon Drilling Co.*, 210 S.W.2d 558, 583 (Tex. 1948) (describing common law waste in Texas as "the negligent waste and destruction of" oil and gas) *with* TEX. NAT. RES. CODE § 85.045 (prohibiting "waste").

As noted in the *In re Jones* case, this Court may not "ignore the plain language" of the Final Judgment, including the questions and instructions given in the trial court's charge attached thereto. Adv. No. 23-03035, 2023 WL 6938266, at *7 (Bankr. S.D. Tex. Oct. 19, 2023).  The text of the jury instruction, including the instruction on statutory waste under Chapter 85 of the Texas

Natural Resources Code, confirms that the damages awarded to PPC by the jury are directly related to "Liabilities" arising under "Environmental Law." *Id*. at *9.

### (c)  The APA includes common law duties within "Environmental Law."

Even if the jury found only "ordinary negligence" as opposed to "negligence per se"—a construction of the jury charge that directly conflicts with the instructions submitted by the trial court—the *Final Judgment* is nonetheless an "Assumed Liability."  The definition of "Environmental Law" encompasses "any Applicable Law," which expressly includes any "common" law duty pertaining to the environment.  [Exhibit 1, APPX000082].  Insofar as the **_only_** breach of duty giving rise to ordinary negligence pleaded in the Reeves County Lawsuit concerned waste and the drowning of the underground strata containing oil and gas (*i.e.*, "natural resources"), even ordinary negligence principles give rise to an "Environmental Claim" and "Assumed Liability" per the terms of the APA and Assumption Agreements.  [Exhibit 6, APPX000242–43 at ¶ 12 ("Basic has a duty to Plaintiffs to exercise reasonable care to prevent its injected fluids from causing waste.  Basic breached that duty by causing injected water to enter, drown, and pressurize the producing stratum or formations from which Plaintiffs' wells produce.")].  In other words, there was no way for the jury to find "ordinary negligence" without a finding that Basic violated the standard of care in the Texas Natural Resources Code because that was the only breach alleged by PPC and evidenced at trial.

Moreover, the allegations in PPC's live trial pleading—which formed the basis for introducing evidence for the jury's consideration in regard to Question 1—are not simply "good or desirable operating practices or standards that may be employed or adopted by other salt water disposal well operators."  They are required by law.  Question 1 and its instruction on "waste" are directly tied to a standard of conduct promulgated by the Railroad Commission of Texas—a

standard of conduct aimed at protecting persons like PPC from unreasonable risks of harm and injury to the environment, including the subsurface strata from which oil and gas is produced. It is not possible to separate PPC's common law claims from PPC's negligence per se claim because both of those claims allege a breach of the same legal duty.

### (4)   *The Final Judgment arises with respect to an "Environmental Claim."*

Basic and Select defined "Environmental Claim" as follows:

> "Environmental Claim" means any affirmative obligation to affect cleanup or remediation under, or resolve noncompliance with, any Environmental Law and any Liability associated with or arising therefrom.

[Exhibit 1, APPX000081].

The Final Judgment is a "Liability" resulting from PPC's efforts to hold Basic legally responsible for its noncompliance with Environmental Laws, including Chapter 85 of the Texas Natural Resources Code, which prohibits the commission of waste and the unlawful injection of produced water into the subsurface strata from which oil and gas is produced.

### (5)   *Basic and Select chose to categorize, rather than specifically list, Assumed Liabilities.*

Select could have listed out and scheduled the liabilities and obligations of Basic that would ultimately become "Assumed Liabilities" under the APA; however, it did not. Instead, Select agreed to define "Assumed Liabilities" broadly and in turn, simply defined "Excluded Liabilities" as any liability that was not an Assumed Liability. *Cf. MEMC Elec. Materials, Inc. v. Albemarle Corp.*, 241 S.W.3d 67, 72 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) ("The only obligations that are assumed by MEMC are those that are listed in Schedule 3.4(a)(i), the 'Assumed Contracts[.]'").

**B.     The Final Judgment is an "Assumed Liability" regardless of whether the Reeves County Lawsuit was disclosed as an "Environmental Matter" under Section 3.07 of the APA.**

Select has asserted PPC is estopped from asserting the Final Judgment is an "Assumed Liability" due to Basic's alleged failure to properly characterize and disclose the Reeves County Lawsuit as an environmental matter under Section 3.07 of the APA.  [*See* Adv. Dkt. 34 at p. 21, ¶ 11].  This argument is fatally flawed for several reasons.

*First*, Select has acknowledged that Basic properly disclosed the Reeves County Lawsuit in Disclosure Schedule 3.08 (Litigation) to the APA.  [*Id*.].  Pursuant to Section 3.08, Basic represented and warranted that other than as disclosed in Disclosure Schedule 3.08, there was no litigation pending against it that, if determined or resolved adversely to Basic, would reasonably be expected to "materially adversely affect [Select's] ownership and operation of the Assets following the Closing . . . ."  [Exhibit 1, APPX000027 at Section 3.08].

Thus, when Select accepted the APA, it had actual notice that Basic reasonably believed that the Reeves County Lawsuit, to the extent PPC prevailed, would materially and adversely affect Select's ownership and operation of the Orla Kessler disposal well.  Further, Select had full disclosure of the pending case, including the case number, court, and opposing counsel information.  [Exhibit 9].  And at that time, Select could have easily used the information provided by Basic to review PPC's pleadings, to conduct due diligence, and to further investigate and determine the nature and impact of PPC's claims.  *See Noble Energy, Inc. v. ConocoPhillips Co.*, 532 S.W.3d 771, 772–74, 783 (Tex. 2017) (holding that purchaser assumed debtor's obligation not disclosed in the Asset Purchase Agreement nor otherwise mentioned "in any way" in the bankruptcy proceeding where purchaser had constructive knowledge of the obligation through other references).

Yet now, after all of the dust has settled and the Final Judgment has been entered and become due, Select claims that it is somehow absolved from liability because Basic failed to list the Reeves County Lawsuit in Disclosure Schedule 3.07—a listing of pending environmental matters asserted by governmental authorities.  The Texas Supreme Court disapproved of this bait-and-switch tactic in *Noble Energy, Inc.*, and this Court should likewise reject Select's attempt to plead ignorance here.  *See* 532 S.W.3d at 783.

**Second**, whether Basic breached its representation and warranty in Section 3.07 of the APA is a red-herring and immaterial to the core issue of whether the Final Judgment falls within Basic's and Select's agreed upon definition of Assumed Liabilities.  Indeed, Select not only expressly agreed that Basic's representations and warranties terminated upon closing, Select agreed that there would be no liability after the closing for Basic's breach of any representation or warranty, including a breach of Section 3.07:

**ARTICLE X**
**SURVIVAL AND INDEMNIFICATION**

Section 10.01  *Survival*.

(a)   The representations and warranties of Sellers contained herein and in any certificate or other writing delivered by Sellers pursuant hereto shall terminate upon and not survive the Closing and there shall be no liability (whether arising in contract, tort or otherwise, or whether at law or in equity, and regardless of the legal theory under which any entitlement, remedy or recourse may be sought or imposed (including all rights afforded by any statute which limits the effects of a release with respect to unknown claims)) thereafter in respect thereof.  Each

[Exhibit 1, APPX000067].

Moreover, any alleged breach by Basic of the APA through nondisclosure does not impact PPC's claim to recover the Final Judgment from Select, as "[i]t is settled that the *debtor* . . . bears the risk of nondisclosure" with respect to "bankruptcy schedules and statements." *In re JZ L.L.C.*, 371 B.R. 412 (B.A.P. 9th Cir. 2007) (emphasis added) (citing *Hay v. First Interstate Bank of*

*Kalispell, N.A.*, 978 F.2d 555, 557 (9th Cir. 1992) for the proposition that chapter 11 debtor, but not creditors, are estopped from prosecuting an omitted cause of action).

      ***Third***, the APA makes clear that the information in the Disclosure Schedules is not required to be disclosed.  [Exhibit 1, APPX000075].  To that end, Select agreed that the disclosure of information in the APA's schedules would not be construed as an admission that the information is material or even required to be disclosed.  [*Id.*].  The APA further provides that the information in each of the Disclosure Schedules not only corresponds to the sections of the APA to which it refers, but also to each other provision in the APA to which the applicability of a statement or disclosure in a particular schedule is reasonably apparent on its face.

**C.**    **The timing of the bankruptcy orders does not defeat Select's liability for the Final Judgment as an "Assumed Liability."**

      The fact that the Lift Stay Order (October 14, 2021) postdates the effective date of the Assumption Agreement (October 1, 2021) does not relieve Select from its agreement to assume liability for the Final Judgment.  Rather, harmony exists between the bankruptcy orders, Select's liability for the Final Judgment, the APA, and the Assumption Agreement.

      The Assumption Agreement is clear—Select assumed the obligation to "pay, perform, observe the terms of, satisfy and/or discharge if, as, when and to the extent due in accordance with the terms thereof, the . . . liabilities and obligations of Sellers[:]"

      2.    Assumption.  Select hereby undertakes, assumes, covenants to pay, perform, observe the terms of, satisfy and/or discharge if, as, when and to the extent due in accordance with the terms thereof, the following liabilities and obligations of Sellers (individually an "Assumed Liability" and collectively, the "Assumed Liabilities"):

[Exhibit 3, APPX000187].

      Select covenanted to pay the obligations of Basic "if, as, when and to the extent due by Basic," which, when given its plain meaning, supports PPC's position that Basic retained

independent liability for PPC's claims despite Select's agreement to undertake and assume Basic's liability as its own.  [*Id.*].  Indeed, it is elementary that two parties may be liable to a third party for the same debt, even under different legal theories. *In re Moose Oil & Gas Co.*, 347 B.R. 868, 871 (Bankr. S.D. Tex. 2006).

Select's previous briefing is clear that PPC's adjudication against Basic was necessary:

6    The automatic stay remains in effect, except to the extent modified by the Lift-Stay Order, because the chapter 11 cases have not been closed or dismissed and, although the Debtors confirmed a plan, it was a liquidating plan without a discharge.  *See* 11 U.S.C. § 362(c)(2); *see also Order Confirming the Debtors' Combined Plan of Liquidation and Approving on a Final Basis the Disclosure Statement of Basic Energy Services, Inc. and its Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [Dkt. 1436], p. 13 ¶ 28.

And:

Each Assumption Agreement unambiguously provides that Select (or the applicable affiliate) "undertakes, assumes, covenants to pay, perform, observe the terms of, satisfy and/or discharge ***if, as, when and to the extent due*** in accordance with the terms thereof, ***the following liabilities and obligations of Sellers*** [*i.e.*, the Assumed Liabilities] . . . ."  *See* App. pp. 115, 123, 128, 134 [Assumption Agreements, § 2 (emphasis added)]; *see also* App. p. 81 [APA, p. A-2 (definition of "***Assumed Liabilities***")].  Thus, under the APA and Assumption Agreements, Select could – at most – be responsible to pay a liability of Basic "if, as, when and to the extent" it is "due" from Basic.

[Adv. Dkt. 5-1, p. 4].

Select's own briefing admits that a finding of liability against Basic (*i.e.*, the Final Judgment) was a necessary condition to trigger Select's obligation to pay and satisfy the Final Judgment as an Assumed Liability not only under the Assumption Agreement, but also the Sale Order. Therefore, PPC was required to seek the entry of the Lift Stay Order, even after the entry of the Sale Order and the execution of the Assumption Agreement, in order to adjudicate Basic's

liability to avoid violating the automatic stay under Section 362 of the Bankruptcy Code.  Nothing in the Sale Order or the Assumption Agreement released Basic for "Liabilities" associated with the Assets, including those that Select agreed to take on as "Assumed Liabilities."  *Cf. In re Applewood Chair Co.*, 203 F.3d 914, 919 (5th Cir. 2000) (sale order discharged only those claims expressly addressed in order).

Thus, PPC's position regarding the assumption of liabilities is consistent with the timing of the orders issued by the Court:

- October 1, 2021 - Assumption Agreement:  Select agrees to satisfy Basic's obligations and liabilities "if, as, when and to the extent" due from Basic;

- October 14, 2021 - Lift Stay Order:  Court permits PPC to proceed with adjudicating liability against Basic for collection against Basic's insurers and "other third parties"; and

- May 12, 2023 - Final Judgment: PPC's claims against Basic are liquidated and judicially determined to be due and owing in accordance with Texas law.

### PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, PPC respectfully requests that the Court abstain from hearing this case and remand the case to Harris County to proceed to a trial on the merits.

Respectfully submitted,

Jeff P. Prostok
State Bar No. 16352500
FORSHEY & PROSTOK LLP
777 Main St., Suite 1290
Fort Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
jprostok@forsheyprostok.com

Michael K. Reer
S.D. Tex. ID. 3272174
State Bar No. 24088281
mreer@hfblaw.com
**HARRIS, FINLEY & BOGLE, P.C.**
777 Main Street, Suite 1800
Fort Worth, Texas 76102
Telephone No.: (817) 870-8700
Facsimile No.: (817) 332-6121

**ATTORNEYS FOR PLAINTIFFS**
**PPC ENERGY, LP AND PRIEST PETROLEUM**
**CORPORATION**

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Brief was served via CM-ECF to all attorneys registered to receive ECF notice in this case on December 1, 2023 and that a courtesy copy was e-mailed to Defendant's counsel Jordan Leu.

Michael K. Reer