IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| BASIC ENERGY SERVICES, INC., *et al.*, | § § § § | Case No. 21-90002 |
| | § § | (Jointly Administered) |
| Debtors.[1] | § § § | |
| PPC ENERGY, LP and PRIEST PETROLEUM CORPORATION, | § § § § | |
| *Plaintiffs and Counter-Defendants*, | § § | Adversary No. 23-03208 |
| vs. | § § § | |
| SELECT ENERGY SERVICES, LLC, | § § § | |
| *Defendant and Counter-Plaintiff*. | § | |

**DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

> **If you object to the relief requested, you must respond in writing. Unless otherwise directed by the court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days from the date this motion was filed. Otherwise, the court may treat the pleading as unopposed and grant the relief requested.**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Basic Energy Services, L.P. (1819); Basic Energy Services, Inc. (1194); C&J Well Services, Inc. (5684); KVS Transportation, Inc. (4882); Indigo Injection #3, LLC (7657); Basic Energy Services GP, LLC (1197); Basic Energy Services Select, LLC (1195); Taylor Industries, LLC (7037); SCH Disposal, L.L.C. (8335); Agua Libre Holdco LLC (3092); Agua Libre Asset Co LLC (1409); Agua Libre Midstream LLC (6701); and Basic ESA, Inc. (2279). The Debtors' headquarters and service address for the purposes of these chapter 11 cases is 801 Cherry Street, Suite 2100, Fort Worth, Texas 76102.

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT – PAGE 1

**TABLE OF CONTENTS**

Page

LEGAL STANDARD ................................................................................................................5

ARGUMENT .................................................................................................................................7

I. PLAINTIFFS' JUDGMENT AGAINST BASIC IS NOT AN "ASSUMED LIABILITY" OF SELECT AS A MATTER OF LAW UNDER THE UNAMBIGUOUS TEXT OF THE APA. ...........................................................................7

    A. To be an "Assumed Liability," the judgment must have "aris[en] under Environmental Law." ..............................................................................................7

    B. The judgment did not arise under Environmental Law; it arose under a single jury finding of common-law negligence. .......................................................8

        1. Common-law negligence is not an Environmental Law as defined in the APA. ..................................................................................................11

        2. Alternatively, Chapter 85 of the Texas Natural Resources Code is not an Environmental Law within the meaning of the APA. .......................12

II. THE SCHEDULES TO THE APA EXPRESS THE CONTRACTING PARTIES' INTENTION AND UNDERSTANDING THAT THE REEVES COUNTY CASE DID NOT ARISE UNDER ENVIRONMENTAL LAW. .....................14

III. PLAINTIFFS' ACTIONS FOLLOWING THE LIFT-STAY ORDER ARE CONSISTENT WITH THE JUDGMENT NOT BEING AN ASSUMED LIABILITY. ..................................................................................................................16

IV. SELECT IS ENTITLED TO PARTIAL SUMMARY JUDGMENT AS REQUESTED IN THIS MOTION. ...................................................................................19

CONCLUSION ............................................................................................................................20

To The Honorable United States Bankruptcy Judge:

Defendant Select Energy Services, LLC n/k/a Select Water Solutions, LLC ("**Select**") respectfully moves for partial summary judgment on Count I of Select's Counterclaim [Adv. Dkt. 34, pp. 27-28] and the Third and Fourth Causes of Action in Plaintiffs' Original Petition [Adv. Dkt. 1-1, pp. 16-17] because the answer to the following question by the Court is "No:"

> Whether all or any portion of the "Final Judgment" entered by the 143rd District Court of Reeves County, Cause No. 20-01-23355-CVR, in favor of PPC Energy, LP and Priest Petroleum Corporation against Basic Energy Services, LP is an "Assumed Liability" as defined in the executed Asset Purchase Agreement approved by the Court in connection with the Order at Main Case Docket No. 438.[2]

It starts with the text. Plaintiffs rely on a single clause of the APA's definition of "Assumed Liabilities" – clause (e) – which encompasses "all Liabilities associated with the Assets arising under Environmental Law, including with respect to Environmental Claims . . . ."[3] So to be an Assumed Liability, the judgment must have arisen under Environmental Law.[4] But the judgment against Basic did not arise under Environmental Law. It arose from a single, broad-form liability question where the jury found Basic and two other companies liable for common-law negligence. App. p. 759. There is no finding in the judgment that Basic violated an Environmental Law, and the judgment expressly denies all other relief Plaintiffs could have sought – under Environmental Law or otherwise. App. pp. 754 & 759-63. This alone negates any claim that the judgment is an Assumed Liability under the unambiguous text of the APA.

---

[2] *See* Order (I) Denying Defendant's Motion to Dismiss, (II) Denying Plaintiffs' Motion for Remand, and (III) Requesting Briefing (the "**Briefing Order**"), ¶ 3 [Adv. Dkt. 30].

[3] *See* Select's contemporaneously-filed and bookmarked Appendix ("***App.***") at p. 83 (APA, p. A-2); *see also* Plaintiffs' Original Petition, ¶¶ 36-44 [Adv. Dkt. 1-1, pp. 13-14].

[4] The APA defines "Environmental Claim" as "any affirmative obligation to affect cleanup or remediation under, or resolve noncompliance with, any Environmental Law and any Liability associated with or arising therefrom." *See* App. p. 85 (APA, p. A-4); *see also* App. p. 86 (defining "Environmental Law" on APA, p. A-5).

The schedules to the APA likewise unambiguously express the contracting parties' understanding and intent that the litigation between Plaintiffs and Basic (the "**Reeves County Case**") did *not* arise under Environmental Law.  Schedule 3.08 is the APA's general litigation schedule.  It lists the Reeves County Case as a pending "General Liability" claim, proving that, at the time of the APA, Basic and Select both were *aware* of the Reeves County Case, and that they *intended* it to be treated as a general liability claim.  App. p. 434.  This was important, because Select did not agree to assume liability for general liability claims.[5]  Schedule 3.07, on the other hand, is the APA's schedule of "Environmental Matters."  App. p. 432.  The APA required Schedule 3.07 to list any "Proceedings (including any Environmental Claims) pending, or to Seller's Knowledge, threatened, alleging or relating to any alleged violation of or liability under Environmental Laws with respect to the Assets."  *See* App. p. 31 (APA, § 3.07(b)).  Again this was important, because "Liabilities associated with the Assets arising under Environmental Law" were Assumed Liabilities.  App. p. 83.  The ***Reeves County Case isn't listed on Schedule 3.07***.  App. p. 432.  The takeaway is clear: the contracting parties knew about the Reeves County Case when entering into the APA, but didn't view it as "arising under Environmental Law," and accordingly didn't intend for it to be an "Assumed Liability."

The Reeves County Case is not new; it had already been pending in state court for more than eighteen months when this Court approved the APA on September 23, 2021 and approved a

---

[5] General liability claims (*i.e.*, those which do not arise under Environmental Law) were not "Assumed Liabilities," and the Sale Transaction occurred free and clear of any such claims.  *See* Order (I) Approving (A) the Sale of the Water Logistics Business of the Debtors Free and Clear of All Liens, Claims, Interests, and Encumbrances and (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (II) Granting Related Relief (the "***Sale Order***"), ¶ 9(g) (providing that, except for Assumed Liabilities, Select purchased the Assets free and clear of "pending litigation claims") [Main Dkt. 438].

stipulation a few weeks later allowing the Reeves County Case to proceed against Basic alone.[6] What is new is Plaintiffs' misguided attempt – almost two years after agreeing to modify the automatic stay so they could keep litigating against Basic and, if successful, seek an insurance recovery – to recharacterize the judgment against Basic as an "Assumed Liability" of Select. In fact, Plaintiffs are currently in active federal litigation against Basic's general liability insurers seeking coverage for the very same judgment they now wish baselessly to foist upon Select.[7] Litigation among Plaintiffs and Basic's insurers was a predictable result of the Lift-Stay Order. But litigation among Plaintiffs and Select was not. Tellingly, nobody sought to add Select to the Reeves County Case before it went to trial, whether in Basic's place or as an additional defendant. Now is not the time for Plaintiffs to seek that result through the back door.

Accordingly, this Court should uphold the contracting parties' unambiguous expression of intent in the APA by granting this motion and declaring that the judgment against Basic is not an "Assumed Liability" as a matter of law and undisputed fact.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (made applicable by Fed. R. Bankr. P. 7056). Summary judgment is appropriate where, as here, the "party seeking summary judgment [has] demonstrate[d] the absence of a genuine dispute of material fact by establishing an absence of evidence supporting an essential

---

[6] Stipulation and Order Granting Limited Relief from the Automatic Stay Regarding PPC Energy, LP and Priest Petroleum Corporation Litigation (the "***Lift-Stay Order***") [Main Dkt. 497; entered October 14, 2021].

[7] *Underwriters of Aspen Syndicate 4711 Subscribing to General Liability Policy B0507AU1900062 and Excess Liability Policy B0507AU1900061 v. Basic Energy Services, LP, PPC Energy, LP, and Priest Petroleum Corporation*, No. 4:22-CV-03215 (S.D. Tex.) (the "***Basic/Priest Insurance Litigation***").

element of the non-movant's case." *QuarterNorth Energy LLC v. Valero Mktg. & Supply Co. (In re Fieldwood Energy LLC)*, 636 B.R. 463, 468 (Bankr. S.D. Tex. 2021) (Isgur, J.). Although a court views the facts and evidence in the light most favorable to the non-moving party, "[s]ummary judgment may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *Wilmington Sav. Fund Soc'y, FSB v. Garza (In re Garza)*, 577 B.R. 258, 261 (Bankr. S.D. Tex. 2017) (Isgur, J.) (quoting *Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535, 538 (5th Cir. 2015)). Instead, to prevent summary judgment, the "non-moving party must cite to specific evidence demonstrating a genuine dispute [of material fact]." *Id*. at 262.

Moreover, when parties file cross-motions for summary judgment based on an issue that can be resolved as a matter of law by construing a contract, and one movant (here, Select) shows itself entitled to judgment as a matter of law, the Court should enter judgment in favor of the prevailing party and reject the claims of the unsuccessful party. *See e.g., In re United DC, Inc.*, No. 12-32620, 2013 WL 310311, at *3-4 (Bankr. S.D. Tex. Jan. 25, 2013) (Isgur, J.); *Saratoga Res., Inc. v. Lexington Ins. Co.*, 642 Fed. Appx. 359, 361 (5th Cir. 2016); *Papalote Creek II, L.L.C. v. Lower Colorado River Auth.*, No. 19-50850, 2021 WL 3026857, at *2 (5th Cir. July 16, 2021); *Liberty Ins. Corp. v. Dixie Elec., LLC.*, 101 F. Supp. 3d 575, 584 (N.D. Tex. March 31, 2015), *aff'd* 637 F. App'x 113 (5th Cir. 2015).

Under Texas law, an unambiguous contract is construed as a matter of law. *See Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 479 (Tex. 2019); *Papalote Creek II, L.L.C.*, 2021 WL 3026857, at *3; APA, § 11.05 (Texas law applies.). All parties agree that the Sale Order and APA are unambiguous. Joint Discovery/Case Management Plan (Adv. Dkt. 10), p. 4, item 10.A.ii. Thus, this Court can and should decide the "Assumed Liability" dispute as a matter of law and grant partial summary judgment in Select's favor as requested in this motion.

## ARGUMENT

**I. PLAINTIFFS' JUDGMENT AGAINST BASIC IS NOT AN "ASSUMED LIABILITY" OF SELECT AS A MATTER OF LAW UNDER THE UNAMBIGUOUS TEXT OF THE APA.**

**A. To be an "Assumed Liability," the judgment must have "aris[en] under Environmental Law."**

Page A-2 of the APA defines multiple categories of "Assumed Liabilities." *See* App. p. 83 (APA's definition of "Assumed Liabilities"). Plaintiffs invoke only a single category, clause (e), which reads in full as follows:

> all Liabilities associated with the Assets arising under Environmental Law, including with respect to Environmental Claims whether arising on, before or after the Closing Date, including without limitation those related to the control, storage, handling, transporting and disposing of or discharge of all materials, substances and wastes from the Assets, including produced water, hydrogen sulfide gas, drilling fluids, NORM and other wastes (but, for the avoidance of doubt, excluding any fines or penalties arising under or related to any such matters attaching to the Sellers as the owners or operators of the Assets prior to the Closing).[8]

Thus, Select cannot be liable for Plaintiffs' judgment against Basic unless the judgment is a Liability "associated with the Assets arising under Environmental Law" as defined in the APA.[9] As shown below, the judgment did not arise under Environmental Law and therefore is not an Assumed Liability.

---

[8] *See id.*; *see also* Petition, ¶¶ 37-44.

[9] Courts have recognized that the phrase "arising under" has "a very narrow scope." *See Buell Door Co. v. Architectural Sys., Inc.*, No. 3:02-CV-721-AH, 2002 WL 1968223, at *6 (N.D. Tex. Aug. 20, 2002); *see also Coffman v. Provost Umphrey Law Firm, L.L.P.*, 161 F. Supp. 2d 720, 725 (E.D. Tex. 2001) ("[T]his arbitration clause does not contain the broader terms 'in connection with' or 'relating to', which, according to the Fifth Circuit, distinguish a broad arbitration clause from a narrow clause which uses only the term 'arising out of' or 'arising under' the agreement. Therefore, the arbitration clause is a narrow clause, only requiring the arbitration of Plaintiff's claims which literally arise under the contract"), *aff'd sub nom.* 33 Fed. Appx. 705 (5th Cir. 2002); *cf. Your Town Yellow Pages, L.L.C. v. Liberty Press, L.L.C.*, No. CIV.A. 309-CV-0605-D, 2009 WL 3645094, at *4 (N.D. Tex. Nov. 2, 2009) (recognizing that the word "herefrom" is "akin to 'hereunder' or 'arising under' in the direct relationship it suggests between the contract and the subsequent claim.").

> **B.   The judgment did not arise under Environmental Law; it arose under a single jury finding of common-law negligence.**

The only liability question submitted to the jury in the Reeves County Case was as follows:

==Did the negligence, if any, of those named below proximately cause the injury in question?==

"Negligence" means failure to use ordinary care; that is, failing to do that which a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances.

It is negligence to commit "waste." The term "waste" means the drowning with water a stratum or part of a stratum that is capable of producing oil or gas or both in paying quantities or underground loss, however caused.

A government-issued permit does not shield the permit-holder from liability for negligence.

"Ordinary care" means that degree of care that would be used by a person of ordinary prudence under the same or similar circumstances.

"Proximate cause" means a cause that was a substantial factor in bringing about an injury, and without which cause such injury would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the injury, or some similar injury, might reasonably result therefrom. There may be more than one proximate cause of an injury.

*See* App. p. 759 (Final Judgment, Jury Verdict Question 1) (highlighting added).

The jury answered the highlighted question with one word – "Yes" – as to Basic and two former defendants which had already settled with Plaintiffs, and answered "No" as to a third former defendant which also had settled:

Answer "Yes" or "No" for each of the following:

1. APC Water Holdings 1, LLC          Yes
2. Basic Energy Services, LP          Yes
3. Goodnight Midstream Permian, LLC   NO
4. NGL Water Solutions Permian LLC    YES

*See id.*; *see also* App. p. 753 (Final Judgment, p. 1, n.1).

Although the jury charge defined "waste" using language from the Texas Natural Resources Code and stated that "[i]t is negligence to commit 'waste,'" the jury's one word "Yes" finding on *negligence* did not require a finding of *waste*, and the jury did not find that Basic violated the Texas Natural Resources Code or any Environmental Law. *See* App. p. 759. Importantly, the jury was only questioned on a yes-or-no basis as to a broad definition of negligence – "failure to use ordinary care" – and the charge defined both "negligence" and "ordinary care" without any reference to waste at all. *Id*. Although the jury charge separately described "waste" as *one form* of negligence, Plaintiffs cannot survive summary judgment by speculating that the jury found waste instead of *some other form* of negligence, such as the simple failure to exercise ordinary care.

Indeed, Plaintiffs' closing argument in the Reeves County Case affirmatively encouraged the jury to evaluate the "ordinary care" element of common-law negligence using its ordinary meaning before separately addressing the topic of "waste:"

> Let's talk about the negligence question. Negligence requires three things; negligence, proximate cause, and injury . . . .
>
> ***Negligence means the failure to use ordinary care***, ordinary care. ***Something I would ask my kids to use, ordinary care.*** Not special care, not super special care, just ordinary care, what an ordinary person would do. You heard Mr. Henkhaut, he testified at length about this, what a reasonable prudent operator would do to prevent the harm to Mr. Priest, what Basic should have done and could have done to prevent that harm. ***In siting the well,*** they didn't look what the wastewater was doing two miles away or more. ***They didn't look***. When Mr. Priest told them wastewater was coming out, they still injected anyway. ***Ordinary care***.
>
> ***Now, the judge in this lawsuit has included in his instruction that it is negligence to commit waste***. You heard Mr. Henkhaut say that Basic has committed waste. The term "waste" means the drowning with water a stratum -- that means the rock -- or part of a stratum that is capable of producing oil and gas or both in paying quantities. That's exactly what happened here. You heard it from Tim Smith. You heard it from Dr. Wiggins. Basic drowned Mr. Priest's well and the rock from which they produced with its wastewater. ***That is negligence and that's instructed***.

*See* App. pp. 831-32 (Reeves County Case Trial Tr., Day 5, Sept. 2, 2022 66:17-20; 67:1-24) (emphasis added). So it is utter speculation for Plaintiffs to argue that the jury found waste instead of a mere "failure to use ordinary care" because Basic allegedly "didn't look" before siting its well.

Moreover, because the jury gave identical "Yes" answers as to negligence by *three* companies – APC Water Holdings 1, LLC, Basic, and NGL Water Solutions Permian LLC – it is even more speculative to guess: (a) whether the jury might have believed all, some, or none of those companies engaged in the specific form of negligence defined as "waste," or (b) that the jury believed Basic had engaged in the specific form of negligence defined as "waste." The conclusive evidence before this Court is that the jury found Basic liable for common-law negligence under an "ordinary care" definition. App. p. 759. There is no evidence of a finding that Basic committed "waste." Any other position is mere speculation which cannot survive summary judgment.

Importantly, Plaintiffs pleaded other claims in the Reeves County Case, some of which could have produced more specific findings against Basic, including as to waste and as to alleged violations of the Texas Natural Resources Code:

- "*Negligence Per Se*" (based on Basic's alleged violations of Railroad Commission permits, Texas Administrative Code rules, and Tex. Nat. Res. Code §§ 85.045 and 85.046);

- "*Common Law and Statutory Waste*" (based on common-law theories of waste and Tex. Nat. Res. Code §§ 85.045 and 85.046); and

- "*Declaratory Judgment*" (seeking specific findings that Basic had violated Tex. Nat. Res. Code §§ 85.045 and 85.046 and violated wastewater injection permits issued by the Railroad Commission).

App. pp. 883-85 (Plaintiffs' Second Amended Petition in the Reeves County Case, pp. 4-6). But none of these claims reached the jury for a vote. And the absence of any jury findings on Plaintiffs' more specific claims, particularly the declaratory judgment claims, leaves Plaintiffs completely without evidence to support their current argument that the judgment against Basic is a "Liabilit[y]

associated with the Assets arising under Environmental Law" as would be required for any finding that it is an "Assumed Liabilit[y]" under the APA.

Equally fatal to Plaintiffs' "Assumed Liability" argument is the fact that the Reeves County District Court expressly held that "any and all other relief not otherwise granted herein, including any other relief that could have been requested by the parties in this case but was not, is hereby **DENIED**." App. p. 754 (Final Judgment, p. 2) (emphasis in original). So regardless of any other claims Plaintiffs alleged in the Reeves County Case, and regardless of any findings Plaintiffs speculate the evidence against Basic might have supported, the judgment in the Reeves County Case is not an Assumed Liability because, as shown below, common-law negligence is not an Environmental Law and the Reeves County District Court expressly denied relief on all of Plaintiffs' declaratory-judgment and other claims.

       1.    <u>Common-law negligence is not an Environmental Law as defined in the APA.</u>

Common-law negligence falls outside the definition of an Environmental Law under the unambiguous text of the APA. As a result, the judgment against Basic did not arise under Environmental Law and is not an Environmental Claim.

As defined in the APA, "Environmental Law" "means any Applicable Law or any binding agreement with any Governmental Authority relating to" a list of specific types of environmental protections, none of which is broad enough to encompass common-law negligence, and all of which are subject to a carve-out which excludes common-law negligence:

> the protection of occupational or human health and safety (to the extent relating to exposure to Hazardous Substances), the environment (including ambient air, soil, surface water or groundwater, or subsurface strata), protection of natural resources, endangered, threatened or candidate species, biological or cultural resources, the release into the indoor or outdoor environment of pollutants, contaminants, wastes, chemicals, or toxic or other hazardous substances (or the cleanup thereof) or concerning the exposure to, or the generation, storage, transportation, disposal, Release or remediation of any Hazardous Substances. **The term "Environmental**

**Laws" does not include good or desirable operating practices or standards that may be employed or adopted by other salt water disposal well operators or recommended, but not required, by a Governmental Authority**.

*See* App. p. 86 (APA, p. A-5 (definition of "Environmental Law") (emphasis added).

Avoiding common-law negligence (as broadly defined in the jury charge, "the failure to exercise ordinary care; that is, failing to do that which a person of ordinary prudence would have done under the same or similar circumstances . . . .") does not fit into any of the specific categories of environmental protections set forth in the APA's definition of Environmental Law. But avoiding common-law negligence is ***precisely*** the type of "good or desirable operating practices or standards" which is ***excluded*** by the last sentence in the definition of "Environmental Law."[10] Therefore, the judgment against Basic is not an "Assumed Liability" because it did not "aris[e] under Environmental Law." *See* App. p. 86.

> 2. Alternatively, Chapter 85 of the Texas Natural Resources Code is not an Environmental Law within the meaning of the APA.

Even if the judgment had included a finding that Basic committed waste under the Texas Natural Resources Code (which it indisputably did not), it still would not be an Assumed Liability under the APA. As shown above, the APA defined "Environmental Law" by reference to a specific list of protections, all of which are focused on the natural environment or human health and safety. Any law that does not meet this requirement is not an "Environmental Law" under the APA.

Chapter 85 of the Texas Natural Resources Code ("***Chapter 85***") prohibits "waste" in the production, storage, or transportation of oil and gas. *See* Tex. Nat. Res. Code § 85.045. Chapter 85 is titled "Conservation of Oil and Gas," and, although other chapters of the Texas Natural Resources Code may address environmental issues, Chapter 85 focuses on the ***economic***

---

[10] *See also Desirable*, Merriam-Webster.com Thesaurus, https://www.merriam-webster.com/thesaurus/desirable (listing "prudent" as one of the most accurate synonyms for "desirable").

conservation and prevention of waste of mineral resources to encourage full *economic* recovery. *See* Tex. Nat. Res. Code §§ 85.045-.046; *Cf. Key Operating & Equip., Inc. v. Hegar*, 435 S.W.3d 794, 798 (Tex. 2014) ("The policy of Texas is to encourage the recovery of minerals, and the Legislature has made waste in the production of oil and gas unlawful." (citing Tex. Nat. Res. Code § 85.045)).

Put differently, Chapter 85 prohibits waste to protect mineral resources as sources of *economic* value for development, not to protect such resources for *environmental* reasons against pollution or similar harms. In fact, the legislature expressly stated this narrower focus when defining the scope of the Texas Railroad Commission's rulemaking authority under Chapter 85 to be the "conservation of oil and gas and prevention of waste of oil and gas." *See* Tex. Nat. Res. Code § 85.201 (emphasis added). Chapter 85 is about economics, not the environment. If the legislature intended for Chapter 85 to be an environmental law, it would not have deliberately limited the Commission's rulemaking to protect oil and gas.

Tellingly, in the pending federal district court litigation where Plaintiffs are actively seeking to recover the same judgment from Basic's own insurers, Plaintiffs filed a summary-judgment motion *just last week* in which they vehemently argue that Basic's saltwater injections were not "pollution" and did not make the relevant mineral formations "impure or unclean." In Plaintiffs' own words:

> Underwriters chose not to define "pollution." Because "pollution" is not defined, it should be given its generally prevailing meaning. *Certain Underwriters at Lloyd's London v. C.A. Turner Const. Co.*, 112 F.3d 184, 188 (5th Cir. 1997). **Merriam-Webster's Online Dictionary ("MWO") defines "pollution" as "the action of polluting," "especially the action of making an environment unsuitable or unsafe** for use by introducing man-made waste." http://www.merriamwebster. com/dictionary/pollution. **And MWO defines "pollute" as "to make physically impure or unclean," or "to contaminate (an environment)** especially with man-made waste." http://www.merriam-webster.com/dictionary/pollute.

> **Underwriters cannot prove that Basic made the "environment unsuitable or unsafe** for use by introducing man-made waste." Basic reinjected saltwater that had been in the ground back into the ground—as it was permitted to do by the Texas Railroad Commission.  **The act of replacing saltwater that had always been in the ground did not make the formation "impure or unclean."**

App. pp. 905-06 (Plaintiffs' Motion for Partial Summary Judgment in the Basic/Priest Insurance Litigation, pp. 7-8) (emphasis added).  Plaintiffs thus have acknowledged in a different case that their alleged losses are not environmental losses, which negates their attempt in this case to misconstrue Chapter 85 as an Environmental Law.

Ultimately, the prohibitions on waste in Sections 85.045-046 of the Texas Natural Resources Code do not address environmental protection, and therefore they are not Environmental Law under the APA.  And even Plaintiffs concede that Basic's saltwater injections are not pollution and did not contaminate the environment.  Thus, even if Plaintiffs' had obtained specific jury findings that Basic had committed waste under Chapter 85, Basic's resulting liability would not "aris[e] under Environmental Law" and the judgment still would not be an Assumed Liability under the APA.  *See* App. p. 83 (definition of Assumed Liabilities, clause (e)).

**II.     THE SCHEDULES TO THE APA EXPRESS THE CONTRACTING PARTIES' INTENTION AND UNDERSTANDING THAT THE REEVES COUNTY CASE DID NOT ARISE UNDER ENVIRONMENTAL LAW.**

In Section 3.07(b) of the APA, Basic "represent[ed] and warrant[ed]" to Select that "[e]xcept as set forth on Disclosure Schedule 3.07, . . . there are no Proceedings (including any Environmental Claims) pending, or to Seller's Knowledge, threatened, alleging or relating to any alleged violation of or liability under Environmental Laws with respect to the Assets."  App. p. 31. Basic ***did not*** list the Reeves County Case on Disclosure Schedule 3.07. *See* App. p. 432 (Disclosure Schedule 3.07).  But Basic ***did*** list the Reeves County Case on Disclosure Schedule 3.08 as a "general liability" litigation matter.  *See* App. p. 434 (Disclosure Schedule 3.08).

So the contracting parties indisputably knew about the Reeves County Case at the time of the Sale Transaction. And by scheduling it on Schedule 3.08 but not Schedule 3.07, the contracting parties unambiguously treated the Reeves County Case as a general litigation matter – not one which arises under Environmental Law and thus could be an Assumed Liability. *See* Sale Order, ¶ 9(g) (providing that, except for Assumed Liabilities, Select purchased the Assets free and clear of "pending litigation claims").

Plaintiffs are bound by the foregoing treatment, because litigants (like Plaintiffs) who seek to enforce a contract (like the APA) as third-party beneficiaries "'step[] into the shoes' of the contracting parties and [are] subject to and bound by all provisions of the contract." *W. Loop Hosp., LLC v. Houston Galleria Lodging Assocs., LLC*, 649 S.W.3d 461, 482 (Tex. App.–Houston [1st Dist.] 2022, pet. denied) (third-party beneficiary was bound by merger clause contained in the contract); *see also Harland Clarke Holdings Corp. v. Milken*, 997 F. Supp. 2d 561, 586 (W.D. Tex. 2014) ("[W]hen a party is 'bound by' a contract, it is subject to the terms of the contract that resulted from the bargained-for exchange, regardless of whether it itself bargained for those terms."). Plaintiffs thus are bound by Basic's representations regarding the Reeves County Case and, like Basic, are estopped from arguing in late 2023 that the Reeves County Case arose under Environmental Law because Basic represented to Select in 2021 when the APA was signed that the Reeves County Case did ***not*** constitute "any alleged violation of or liability under Environmental Law" and did not contain "any Environmental Claims." *See* App. p. 31; *see also In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 739 (Tex. 2005) ("[A] nonsignatory plaintiff seeking the benefits of a contract is estopped from simultaneously attempting to avoid the contract's burdens[.]") (citing *Washington Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 268 (5th Cir. 2004)).

In other words, Basic could not change course and argue – more than two years after the APA was signed, more than one year after the jury's verdict in the Reeves County Case, and more than six months after the resulting judgment – that the Reeves County Case actually ***did*** arise under an Environmental Law and therefore actually ***is*** an Assumed Liability.  So neither can Plaintiffs.

### III.  PLAINTIFFS' ACTIONS FOLLOWING THE LIFT-STAY ORDER ARE CONSISTENT WITH THE JUDGMENT NOT BEING AN ASSUMED LIABILITY.

Plaintiffs' own actions in Basic's bankruptcy and the Reeves County Case likewise are consistent with finding that the judgment in the Reeves County Case is not an Assumed Liability.

For background, Basic filed its motion seeking entry of the Sale Order on August 17, 2021, the same day it filed for bankruptcy.  *See* Main Dkt. 39 (the "***363 Sale Motion***").[11]  On September 10, 2021 – roughly three weeks after Basic filed the 363 Sale Motion putting the world on notice of the proposed Sale Transaction – Plaintiffs agreed to a stipulation which would modify the automatic stay by allowing Plaintiffs to continue litigating the Reeves County Case against Basic in state court.  *See* Main Dkt. 336, ¶¶ 3-4.  A few days later, on September 16, 2021, Basic filed a notice that Select was the "Successful Bidder" for the relevant assets.  *See* Main Dkt. 366, ¶ 7(c).  But Plaintiffs neither sought to change the proposed lift-stay stipulation nor sought to add Select as a defendant in state court, even as the Sale Transaction grew more likely.

On September 23, 2021, just over a week after Basic notified the world that Select was the successful bidder, this Court approved the Sale Transaction by entering the Sale Order.  As before, Plaintiffs did not seek to modify the proposed lift-stay stipulation or seek to add Select as a defendant in state court.  And roughly three weeks later, on October 14, 2021, this Court entered

---

[11]  A form of the APA was attached as <u>Exhibit 6</u> to the 363 Sale Motion, and the 363 Sale Motion identified Select as the Stalking Horse Bidder.  *See* Main Dkt. 39-1, pp. 315-410; Main Dkt. 39, ¶ 2.

its Lift-Stay Order on the original form Plaintiffs and Basic had filed after the Sale Transaction was *proposed* but before it was *approved*. See Main Dkt. 497 (Lift-Stay Order).

Under that unmodified Lift-Stay Order, the Reeves County Case proceeded to jury verdict against Basic alone in September 2022, and then proceeded to judgment against Basic alone in May 2023. Through all of that time, Plaintiffs never sought to litigate against Select in the Reeves County Case (*e.g.*, by adding Select as a defendant, moving to substitute Select in place of Basic, etc.). See App. pp. 753-63 (judgment against Basic); App. pp. 890-92 (Basic's Notice of Appeal). These actions were fully consistent with the relief Plaintiffs requested in the main bankruptcy case: lifting the stay to allow continued litigation against Basic in order to recover from insurance carriers.[12] But these actions are fully *in*consistent with the relief Plaintiffs seek today: urging this Court to deem Plaintiffs third-party beneficiaries under the APA (despite clear disclaimers in § 11.08 thereof) so that Plaintiffs can argue that the judgment in the Reeves County Case is actually an Assumed Liability of Select (despite the total absence of any findings that Basic violated any Environmental Law and the Reeves County Case being scheduled as a "general liability" claim on APA Schedule 3.08, not an Environmental Claim on APA Schedule 3.07).

Plaintiffs' active litigation with Basic's insurers also underscores that the judgment in the Reeves County Case is Basic's liability for *negligence*, not an Environmental Claim or violation

---

[12] At the October 26, 2023 hearing on Select's motion to dismiss, Plaintiffs erroneously argued that the Lift-Stay Order contemplated Plaintiffs collecting a judgment in the Reeves County Case from Select. *See* Oct. 26, 2023 Hr'g Tr. 8:20-23. This argument grossly misconstrues the Lift-Stay Order, which lists three potential sources of recovery, all of which are insurance. *See* Dkt. 497, ¶ 4(i)-4(iii) (listing three types of insurance recoveries). The last sentence of ¶ 4 of the Lift-Stay Order, which permits recovery "only from the applicable insurance policies of the Debtors and other third parties" must be read in that same context: it means that the Debtors' *insurance policies* and third parties' *insurance policies* (*e.g.*, reinsurance held in the name of the Debtors' carriers) might be called upon to pay a judgment in the Reeves County Case. It cannot mean that Select, a free-and-clear buyer which is not named anywhere in the Lift-Stay Order, might find itself liable two years later on an $13+ million negligence judgment which Plaintiffs obtained after voluntarily choosing to litigate against Basic alone.

of Environmental Law, and thus not an Assumed Liability. Promptly after the jury in the Reeves County Case rendered its verdict against Basic in September 2022, Basic's general liability insurers sued Plaintiffs in the U.S. District Court for the Southern District of Texas seeking a declaration that the damages awarded are not covered by Basic's insurance policies.[13] Soon thereafter, Plaintiff counterclaimed seeking an opposite declaration that the damages awarded against Basic are covered by Basic's insurance.[14] And to this day, Plaintiffs are seeking to recover from Basic's general liability insurers the same purported damages (*i.e.*, the judgment against Basic) which Plaintiffs now ask this Court to treat as an Assumed Liability of Select.

But in their counterclaim against Basic's insurers, unlike here, Plaintiffs admit that the judgment against Basic occurred because "[t]he evidence at the August 2022 trial established that Basic committed ***negligence*** . . . [which] damaged PPC's underground property." *See* App. p. 950, ¶ 26 (emphasis added). And as noted above, Plaintiffs recently moved for partial summary judgment asking the District Court to overrule one of Basic's insurers' coverage defenses because the alleged harm to Plaintiffs ***didn't*** come from pollution. *See* App. pp. 905-06. Plaintiffs' own actions and contentions – other than suing Select – thus are consistent with the other conclusive evidence before the Court which should lead this Court to rule that the judgment against Basic is an Excluded Liability which remained with Basic, not an Assumed Liability of Select.[15]

---

[13] *See* App. Ex. G, pp. 918-37 [*Basic/Priest Insurance Litigation*, No. 4:22-CV-03215 (S.D. Tex.), Dkt. 1 (September 20, 2022 Original Complaint, without exhibits)].

[14] *See App.* Ex. H, pp. 938-57 [*Basic/Priest Insurance Litigation*, No. 4:22-CV-03215 (S.D. Tex.), Dkt. 8 (November 2, 2022 Original Counterclaim, without exhibits)].

[15] "All Liabilities of Sellers other than the Assumed Liabilities . . . shall be retained by Sellers" and were defined as the "Excluded Liabilities." *See* App. p. 20 (APA, § 2.05(b)).

**IV.	SELECT IS ENTITLED TO PARTIAL SUMMARY JUDGMENT AS REQUESTED IN THIS MOTION.**

If the Court finds, under its Briefing Order and in response to this motion, that the judgment against Basic is not an "Assumed Liability" of Select, then Select is entitled to the following relief:

1. <u>Partial Summary Judgment on Count I of Select's Counterclaim</u> by granting the following two declarations:

   - <u>Select's Declaration 1</u>:  The Negligence Judgment is not an Assumed Liability under the APA (including any associated Assumption Agreement) or the Sale Order; and[16]

   - <u>Select's Declaration 3</u>:  Select is not liable to Plaintiffs for the Negligence Judgment.[17]

2. <u>Summary Judgment on Plaintiffs' Third Cause of Action for Breach of Contract</u>, because a finding that the judgment against Basic is not an Assumed Liability of Select means that Select ***has not breached*** the APA by failing to pay that judgment.[18]

3. <u>Summary Judgment on Plaintiffs' Fourth Cause of Action for Declaratory Relief</u>, because a finding that the judgment against Basic is not an Assumed Liability of Select means that the two declarations sought by Plaintiffs must be ***rejected*** as a matter of law:

   - <u>Plaintiffs' Declaration 1</u>: The Judgment is an Assumed Liability pursuant to the terms of the APA; and

   - <u>Plaintiffs' Declaration 2</u>:  Select is responsible for paying the Judgment pursuant to the terms of the APA.

---

[16]   The Assumption Agreements use the same definition of "Assumed Liabilities" as the APA.  *See* App. pp. 117-18 (form of Assumption Agreement attached as Exhibit C to the APA); App. pp. 467, 472, and 478 (same clause for each specific buyer in the Assumption Agreements).

[17]   *See* Adv. Dkt. 34, p. 28, ¶ 34.  Declaration 2 requested by Select would not be resolved by this motion because it seeks a finding that Plaintiffs are not third-party beneficiaries entitled to enforce the APA.

[18]   *See* Petition, ¶ 67 [Adv. Dkt. 1-1, p. 17].

## CONCLUSION

Select respectfully asks this Court to grant this motion, enter partial summary judgment for Select on Count I of its Counterclaim and Causes of Action III and IV in Plaintiffs' Original Petition, and order such other and further relief as the court finds appropriate.

Respectfully submitted,

*/s/ Jordan W. Leu*
Jordan W. Leu
  Texas Bar No. 24070139
  jleu@velaw.com
Thomas P. Mitsch
  Texas Bar No. 24102218
  tmitsch@velaw.com
VINSON & ELKINS LLP
2001 Ross Avenue, Suite 3900
Dallas, Texas 75201
Tel.: (214) 220-7700
Fax.: (214) 999-7715

-and-

Michael J. Moore
  Texas Bar No. 24039068
  mmoore@brownpruitt.com
BROWN PRUITT WAMBSGANSS DEAN
  FORMAN & MOORE, P.C.
201 Main Street, Suite 700
Fort Worth, Texas 76102
Tel.: (817) 338-4888

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I certify that on December 1, 2023, a true and correct copy of the foregoing instrument was filed with the Clerk of the Court using the CM/ECF system, which will send electronic notification of such filing to all counsel of record.

*/s/ Thomas P. Mitsch*
Thomas P. Mitsch

4860-6211-5217