IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| BASIC ENERGY SERVICES, INC., *et al.*, | § § § § | Case No. 21-90002 |
| | § | (Jointly Administered) |
| Debtors.[1] | § § | |
| PPC ENERGY, LP and PRIEST PETROLEUM CORPORATION, | § § § | |
| *Plaintiffs and Counter-Defendants*, | § § | Adversary No. 23-03208 |
| vs. | § § | |
| SELECT ENERGY SERVICES, LLC, | § § § | |
| *Defendant and Counter-Plaintiff*. | § | |

**DEFENDANT'S RESPONSE TO PLAINTIFFS' BRIEF
ON ASSUMPTION OF LIABILITIES "ARISING UNDER ENVIRONMENTAL LAW"**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

The arguments in *Plaintiffs' Brief in Response to Order (I) Denying Defendant's Motion to Dismiss, (II) Denying Plaintiffs' Motion to Dismiss [sic], and (III) Requesting Briefing* [Adv. Dkt. 39] ("***Plaintiffs' Brief***") are easily refuted, often by nothing more than screenshots from the operative documents. Respectfully, the Court should reject Plaintiffs' Brief in its entirety and grant Select's *Motion for Partial Summary Judgment* [Adv. Dkt. 40] ("***Select's MPSJ***") because

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Basic Energy Services, L.P. (1819); Basic Energy Services, Inc. (1194); C&J Well Services, Inc. (5684); KVS Transportation, Inc. (4882); Indigo Injection #3, LLC (7657); Basic Energy Services GP, LLC (1197); Basic Energy Services Select, LLC (1195); Taylor Industries, LLC (7037); SCH Disposal, L.L.C. (8335); Agua Libre Holdco LLC (3092); Agua Libre Asset Co LLC (1409); Agua Libre Midstream LLC (6701); and Basic ESA, Inc. (2279). The Debtors' headquarters and service address for the purposes of these chapter 11 cases is 801 Cherry Street, Suite 2100, Fort Worth, Texas 76102.

1

Plaintiffs' judgment against Basic ***did not*** "aris[e] under Environmental Law" and thus ***is not*** an "Assumed Liability" of Select under the APA.[2]

I. **THERE IS NO EVIDENCE THAT THE JURY IN THE REEVES COUNTY CASE FOUND "WASTE" OR ANY VIOLATION OF "ENVIRONMENTAL LAW."**

Plaintiffs continue to speculate that the judgment against Basic was based on a finding of waste (*i.e.*, negligence per se) despite the absence of: (a) any jury question on "waste," (b) any jury finding of "waste," or (c) any jury finding of an environmental or Natural Resources Code violation of any kind. The ***only*** liability question submitted to the jury was a "yes or no" question on "negligence," and it didn't require a finding of "waste" to reach a finding of "negligence:"

> **QUESTION 1**
>
> Did the negligence, if any, of those named below proximately cause the injury in question?
>
> "Negligence" means failure to use ordinary care; that is, failing to do that which a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances.
>
> It is negligence to commit "waste." The term "waste" means the drowning with water a stratum or part of a stratum that is capable of producing oil or gas or both in paying quantities or underground loss, however caused.
>
> A government-issued permit does not shield the permit-holder from liability for negligence.
>
> "Ordinary care" means that degree of care that would be used by a person of ordinary prudence under the same or similar circumstances.
>
> "Proximate cause" means a cause that was a substantial factor in bringing about an injury, and without which cause such injury would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the injury, or some similar injury, might reasonably result therefrom. There may be more than one proximate cause of an injury.

Adv. Dkt. 40-1, p. 759 (Final Judgment, Jury Verdict on Question 1) (highlighting added).

Plaintiffs focus on one piece of the jury instructions which defined "waste" and instructed the jury that "[i]t is negligence to commit waste." Plaintiffs' Brief, p. 13. But this is misdirection.

---

[2] Capitalized terms not defined in this response have the meanings given to them in Plaintiffs' Brief and/or Select's MPSJ.

2

The jury instructions do not say that all *negligence* is *waste*. What they say is that *waste* is a type of *negligence*. As a result, a finding of negligence does not require a finding of waste, and nor is it any indication that the jury believed waste had occurred. Plaintiffs' failure to appreciate this distinction leads them to make facially incorrect arguments such as the below:

> Here, the factual findings for statutory waste and common law waste mirror those required for negligence and negligence per se. For example, and as Select admits in its previous briefing, Plaintiffs' claim for statutory waste was premised on the same violation of the Texas Natural Resources Code on which Plaintiffs' claim for negligence per se was based. [Adv. Dkt. 5, p. 7; Exhibit 6, APPX000243 at ¶ 14 (negligence per se allegations), APPX000244 at ¶ 18 (common law and statutory waste allegations)]. Far from "rejecting" Plaintiffs' claims for negligence per se, common law waste, and statutory waste, the trial court simply submitted a single question on multiple legal theories that involved the same factual finding as required by Texas law. *See Hyundai*, 995 S.W.2d at 665–66; *compare Elliff v. Texon Drilling Co.*, 210 S.W.2d 558, 583 (Tex. 1948) (describing common law waste in Texas as "the negligent waste and destruction of" oil and gas) *with* TEX. NAT. RES. CODE § 85.045 (prohibiting "waste").

Plaintiffs' Brief, p. 14 (highlighting added). Nothing could be further from the truth. The only factual findings required for negligence are "failure to use ordinary care," proximate cause, and injury. "Waste," on the other hand, is a specific type of negligence with different required findings the jury did not need to make in order to answer the liability question with the word "yes."³

---

³ One of Plaintiffs' cited cases, *Discovery Operating, Inc. v. BP Am. Prod. Co.*, 311 S.W.3d 140, 163 (Tex. App.—Eastland 2010, pet. denied), makes this same point. In *Discovery*, the jury question asked whether BP's negligence in operating a saltwater well proximately caused the uncontrolled water flow in Discovery's oil and gas well. As the court explained: "Based on the broad-form submission of the question, we cannot determine from the jury's 'no' answer whether the jury believed that BP was not negligent or that BP's negligence was not a proximate cause of the water flow." So too here: we cannot determine from the jury's one-word "yes" answer whether the jury found ordinary negligence or waste.

Plaintiffs also cite Tex. R. Civ. P. 277 and 278[4] in support of their attempt to alchemize the common-law negligence finding they obtained into a finding of "waste" nowhere to be found in the judgment. *See* Plaintiffs' Brief, pp. 13-14. This is baseless; in reality, Plaintiffs *requested* a separate jury question on "waste,"[5] but that request was denied by the Reeves County Court:

```
13              THE COURT:  All right.  The Court has
14  considered the Plaintiffs' submission of both a
15  negligence question and an additional separate waste on
16  negligence per se pursuant to the statute and
17  submission.
18              Did I characterize that correctly,
19  Mr. James?
20              MR. JAMES:  Yes, Your Honor, separate claim
21  for waste under Chapter 85 of the Natural Resources
22  Code.
23              THE COURT:  Okay.  The Court denies that
24  submission.  Note your exception.
```

Adv. Dkt. 40-1, p. 772 (Reeves County Case Trial Tr., Day 5, Sept. 2, 2022 p. 7:13-24) (highlighting added). So Plaintiffs – having requested but failed to obtain a separate jury question on waste in state court – cannot credibly argue in this Court that a broad-form jury question on common-law negligence is the same thing. Words matter. And as a matter of unambiguous text, the only liability question posed to the Reeves County jury didn't require a finding of "waste."

---

[4] Tex. R. Civ. P. 278 states that "[t]he court shall submit the questions, instructions and definitions in the form provided by Rule 277, which are raised by the written pleadings and the evidence." Tex. R. Civ. P. 277 states that "the court shall, whenever feasible, submit the cause upon broad-form questions."

[5] Specifically, Plaintiffs raised "an objection to the commingling of two theories of liability specifically to include the instruction on waste as to commingling Plaintiffs' ordinary negligence claim" and argued that "[t]he jury should be permitted to determine the liability of the Defendants with reference to both negligence and the waste standard." Adv. Dkt. 40-1, pp. 769-70 (Reeves County Case Trial Tr., Day 5, Sept. 2, 2022, pp. 4:25-5:19).

Indeed, Plaintiffs' closing argument in the Reeves County Case took full advantage of the broad "ordinary care" definition of negligence in the jury charge by *specifically encouraging* the jury to evaluate "ordinary care" using its everyday meaning before addressing the specialized topic of "waste":

```
 1            Yes, negligence.  Negligence means the
 2   failure to use ordinary care, ordinary care.  Something
 3   I would ask my kids to use, ordinary care.  Not special
 4   care, not super special care, just ordinary care, what
 5   an ordinary person would do.  You heard Mr. Henkhaut, he
 6   testified at length about this, what a reasonable
 7   prudent operator would do to prevent the harm to
 8   Mr. Priest, what Basic should have done and could have
 9   done to prevent that harm.  In siting the well, they
10   didn't look what the wastewater was doing two miles away
11   or more.  They didn't look.  When Mr. Priest told them
12   wastewater was coming out, they still injected anyway.
13   Ordinary care.
14            Now, the judge in this lawsuit has included
15   in his instruction that it is negligence to commit
16   waste.  You heard Mr. Henkhaut say that Basic has
17   committed waste.  The term "waste" means the drowning
18   with water a stratum -- that means the rock -- or part
19   of a stratum that is capable of producing oil and gas or
20   both in paying quantities.  That's exactly what happened
21   here.  You heard it from Tim Smith.  You heard it from
22   Dr. Wiggins.  Basic drowned Mr. Priest's well and the
23   rock from which they produced with its wastewater.  That
24   is negligence and that's instructed.
```

Adv. Dkt. 40-1, p. 832 (Reeves County Lawsuit Trial Tr., Day 5, Sept. 2, 2022 67:1-24) (highlighting added).

In light of their own argument presented to the jury, Plaintiffs cannot credibly argue to this Court that the jury must have leapt over the simple, "ordinary care" definition of negligence contained in the jury charge and emphasized during closing argument in order to silently make more specific findings of waste or violations of the Texas Natural Resources Code which are nowhere to be found in the written judgment or verdict and which weren't necessary to support a negligence finding. Any such argument is the height of speculation and the Court must reject it.

**II.     COMMON LAW NEGLIGENCE IS NOT AN "ENVIRONMENTAL LAW" UNDER THE APA.**

The APA defines "Environmental Law" as follows:

> "<u>Environmental Law</u>" means any Applicable Law or any binding agreement with any Governmental Authority relating to the protection of occupational or human health and safety (to the extent relating to exposure to Hazardous Substances), the environment (including ambient air, soil, surface water or groundwater, or subsurface strata), protection of natural resources, endangered, threatened or candidate species, biological or cultural resources, the release into the indoor or outdoor environment of pollutants, contaminants, wastes, chemicals, or toxic or other hazardous substances (or the cleanup thereof) or concerning the exposure to, or the generation, storage, transportation, disposal, Release or remediation of any Hazardous Substances. The term "Environmental Laws" does not include good or desirable operating practices or standards that may be employed or adopted by other salt water disposal well operators or recommended, but not required, by a Governmental Authority.

Adv. Dkt. 40-1, p. 86 (APA, p. A-5).

Plaintiffs' attempt to shoehorn common-law negligence into the above definition proves too much. Under Plaintiffs' interpretation, *any* law – regardless of its purpose or type – would qualify as an "Environmental Law" under the APA so long as the plaintiff happens to sue for damage to real property (instead of personal property or personal/business injury), even if ***the law***

*itself* does not relate to the specific categories of environmental protection listed in the APA's definition. The Court should reject any proposed interpretation which results in such an absurdity.[6]

Under any reasonable interpretation, for a law to be an "Environmental Law" under the APA, ***the law itself*** must be "related to" one of the forms of environmental protections listed in that definition. It is not enough to make a law "environmental" that the relief sought by the plaintiff is related to real estate; instead, ***the law itself*** must be related to environmental protection in order to be an "Environmental Law. Common-law "failure to exercise ordinary care" negligence is one of the broadest and most basic torts known to American law, and it defies any reasonable understanding to characterize it as an "environmental law." Moreover, as shown in Select's MPSJ, even Chapter 85 of the Texas Natural Resources Code, under which Plaintiffs brought certain claims for "waste" in the Reeves County Case (albeit without obtaining any jury findings thereon) is not an Environmental Law, because it prohibits "waste" in the production, storage, or transportation of oil and gas for *economic* reasons, not *environmental* ones. *See* Select's MPSJ, pp. 12-14. As a result, the discussion in Plaintiffs' Brief about Chapter ***89*** of the Texas Natural Resources Code and its reference to protections against pollution misses the mark, because Chapter 89 was ***not at issue*** in the Reeves County Case, only Chapter 85.[7] *See* Plaintiffs' Brief, p. 11; *see also* Adv. Dkt. 40-1, pp. 883-85.

Accordingly, the judgment against Basic did not arise under "Environmental Law" and is not an "Assumed Liability."

---

[6] *See In re Bigler LP*, 458 B.R. 345, 384 (Bankr. S.D. Tex. 2011) ("Under Texas law, contracts 'should be interpreted so as to avoid meanings that produce unreasonable, oppressive, or absurd results in favor of meanings that render the operation of the contract fair and reasonable.'") (quoting *Cont'l Sav. Ass'n v. U.S. Fid. & Guar. Co.*, 762 F.2d 1239, 1245 (5th Cir. 1985)).

[7] Chapter 85 is titled "Conservation of Oil and Gas" and addresses economic "waste" of oil and gas. Chapter 89 is titled "Abandoned Wells" and was not at issue in the Reeves County Case.

7

### III. PLAINTIFFS MISCHARACTERIZE THE DISCLOSURE SCHEDULES AND BASIC'S REPRESENTATIONS AND WARRANTIES.

Plaintiffs' Brief also mischaracterizes Basic's representations and warranties contained in Sections 3.07 and 3.08 of the APA, the related disclosure schedules, and Select's arguments.

First, Plaintiffs erroneously argue that scheduling the Reeves County Lawsuit as a general litigation matter on Schedule 3.08 necessarily meant that Basic expected the Reeves County Case to have a material adverse effect on Select's operation of the Orla Kessler. *See* the following screenshot from p. 17 of Plaintiff's Brief:

> *First*, Select has acknowledged that Basic properly disclosed the Reeves County Lawsuit in Disclosure Schedule 3.08 (Litigation) to the APA. [*Id.*]. Pursuant to Section 3.08, Basic represented and warranted that other than as disclosed in Disclosure Schedule 3.08, there was no litigation pending against it that, if determined or resolved adversely to Basic, would reasonably be expected to "materially adversely affect [Select's] ownership and operation of the Assets following the Closing . . . ." [Exhibit 1, APPX000027 at Section 3.08].
>
> Thus, ==when Select accepted the APA, it had actual notice== that Basic reasonably believed that the ==Reeves County Lawsuit,== to the extent PPC prevailed, ==would materially and adversely affect Select's ownership and operation of the Orla Kessler disposal well.== Further, Select had full

Plaintiff's Brief, p. 17 (highlighting added).

In reality, Disclosure Schedule 3.08 was not restricted to matters expected to have a materially adverse effect on *Select's* ownership and operation of the Assets, because APA § 3.08 also required Basic to list any matters that could affect or impair *Basic's* ability to consummate

8

the transaction through a "Seller Material Adverse Effect" (*e.g.*, Plaintiffs' multi-million dollar litigation which, at times, sought to enjoin further operation of the Orla Kessler well):[8]

> Section 3.08  *Litigation*. Except as set forth in Disclosure Schedule 3.08, as of the Execution Date, there is no Proceeding pending against any Seller or, to Sellers Knowledge, which have been threatened against any Seller that (a) if determined or resolved adversely in accordance with the plaintiff's demands would reasonably be expected to have, individually or in the aggregate, a Seller Material Adverse Effect or otherwise materially adversely affect Buyer's ownership and operations of the Assets following the Closing, (b) in any manner challenges or seeks to prevent, enjoin, alter or materially delay the Transactions or (c) affects the execution,

*See* Adv. Dkt. 40-1, pp. 31-32 (APA, pp. 20-21) (highlighting added); *see also* Adv. Dkt. 40-1, p. 91 (definition of "Seller Material Adverse Effect"). Plaintiff's argument thus focuses exclusively on the second clause of § 3.08(a) while completely failing to acknowledge the first.

Second, Plaintiffs wrongly suggest that Schedule 3.07 was only supposed to list "pending environmental matters asserted by governmental authorities:"

> Yet now, after all of the dust has settled and the Final Judgment has been entered and become due, Select claims that it is somehow absolved from liability because Basic failed to list the Reeves County Lawsuit in Disclosure Schedule 3.07—a listing of pending environmental matters asserted by governmental authorities. The Texas Supreme Court disapproved of this bait-

*See* Plaintiff's Brief, p. 18 (highlighting added). Again, Plaintiffs are incorrect. Section 3.07(b) required Basic to list on Disclosure Schedule 3.07 *all* "Proceedings (including Environmental Claims) pending, or to Seller's Knowledge, threatened, alleging or relating to any alleged violation of or liability under Environmental Laws with respect to the Assets" – not just those asserted by governmental authorities. *See* the following screenshot from APA § 3.07(b):

---

[8] *See* Adv. Dkt. 40-1, pp. 886-87 (seeking "Temporary and Permanent Injunction" to "enjoin Basic from injecting into the Orla Kessler until Plaintiffs production wells are plugged and the leasehold is fully abandoned").

> (b)   Except as set forth on Disclosure Schedule 3.07, the Assets are in compliance with all Environmental Laws in all material respects, and such compliance includes obtaining, maintaining, renewing, and complying in all material respects with the terms and conditions of all material Environmental Permits necessary for the operation of the Assets as presently conducted, and no such Environmental Permits are currently subject to any adverse modification, to Seller's Knowledge or challenge from any Person. Except as set forth on Disclosure Schedule 3.07, no Seller has received any written notice from any Governmental Authority alleging any material violation of or material liability under Environmental Laws with respect to the Assets that remains unresolved as of the Execution Date, and ==there are no Proceedings (including any Environmental Claims) pending, or to Seller's Knowledge, threatened, alleging or relating to any alleged violation of or liability under Environmental Laws with respect to the Assets.==

*See* Adv. Dkt. 40-1, p. 31 (APA, pp. 20) (highlighting added).

Third, Plaintiffs argue that Basic's failure to list the Reeves County Lawsuit on Disclosure Schedule 3.07 is a red herring because Basic cannot be held liable for its representations and warranties post-closing:

> *Second*, ==whether Basic breached its representation and warranty in Section 3.07 of the APA is a red-herring== and immaterial to the core issue of whether the Final Judgment falls within Basic's and Select's agreed upon definition of Assumed Liabilities. Indeed, Select not only expressly agreed that Basic's representations and warranties terminated upon closing, ==Select agreed that there would be no liability after the closing for Basic's breach of any representation== or warranty, including a breach of Section 3.07:

Plaintiff's Brief, p. 18 (emphasis added). Plaintiffs' argument is itself a red herring. It is irrelevant whether Basic can still be liable to Select for a breach of its representations and warranties. What matters is that Basic's decision not to list the Reeves County Lawsuit on Disclosure Schedule 3.07 while affirmatively choosing to list it on Schedule 3.08 supports summary judgment in favor of Select on the grounds that that Basic and Select contemporaneously expressed their understanding and intention that the Reeves County Case was a general liability claim (to be scheduled on Schedule 3.08) which did not arise under Environmental Law (so it didn't need to be scheduled on Schedule 3.07), and thus did not intend for any resulting judgment to be an "Assumed Liability."

10

IV. **SELECT ONLY ASSUMED THE "ASSUMED LIABILITIES," NOT ALL OF BASIC'S LIABILITIES.**

Plaintiffs' misleadingly suggest that Select assumed all of Basic's liabilities relating to the Assets rather than solely the defined Assumed Liabilities:

> The Assumption Agreement is clear—Select assumed the obligation to "pay, perform, observe the terms of, satisfy and/or discharge if, as, when and to the extent due in accordance with the terms thereof, the . . . liabilities and obligations of Sellers[:]"
>
> Thus, PPC's position regarding the assumption of liabilities is consistent with the timing of the orders issued by the Court:
>
> - October 1, 2021 - Assumption Agreement: Select agrees to satisfy Basic's obligations and liabilities "if, as, when and to the extent" due from Basic;
> - October 14, 2021 - Lift Stay Order: Court permits PPC to proceed with adjudicating liability against Basic for collection against Basic's insurers and "other third parties"; and
> - May 12, 2023 - Final Judgment: PPC's claims against Basic are liquidated and judicially determined to be due and owing in accordance with Texas law.

Plaintiff's Brief, pp. 19, 21 (highlighting added). This oversimplification is directly contradicted by the Assumption Agreements themselves, which only contain an agreement to pay Liabilities associated with the Assets that were expressly assumed (*i.e.*, the Assumed Liabilities):

> 2. Assumption. Buyer hereby undertakes, assumes, covenants to pay, perform, observe the terms of, satisfy and/or discharge if, as, when and to the extent due in accordance with the terms thereof, the following liabilities and obligations of Sellers (individually an "Assumed Liability" and collectively, the "Assumed Liabilities"):
>
> (e) all Liabilities associated with the Assets arising under Environmental Law, including with respect to Environmental Claims whether arising on, before or after the Closing Date, including without limitation those related to the control, storage, handling, transporting and disposing of or discharge of all materials, substances and wastes from the Assets, including produced water, hydrogen sulfide gas, drilling fluids, NORM and other wastes (but, for the avoidance of doubt, excluding any fines or penalties arising under or related to any such matters attaching to the Sellers as the owners or operators of the Assets prior to the Closing);

*See* Adv. Dkt. 40-1, pp. 117-18 (Exhibit C to APA, Form of Assumption Agreement, pp. 1-2) (highlighting added).

Thus, merely establishing liability against Basic is insufficient to establish liability against Select. Select only agreed to assume "Assumed Liabilities." And Plaintiff cannot show that the judgment in the Reeves County Case was an "Assumed Liabilit[y]" because it did not "aris[e] under Environmental Law." *Id*. So the Assumption Agreements are not in any way triggered – and Select is not liable for the judgment against Basic.

V.  **THE LIFT-STAY ORDER DOES NOT IDENTIFY SELECT AS A POTENTIAL SOURCE OF RECOVERY FOR THE JUDGMENT AGAINST BASIC.**

In the following screenshot from p. 3 of Plaintiff's Brief, Plaintiffs misleadingly argue that the Lift-Stay Order identified "other third parties" as one of *four* potential sources of recovery – enumerated items (i) through (iv) – for a judgment against Basic:

> In short: (a) Select, through the APA and the Assumption Agreement, agreed to pay environmental liabilities of Basic if and when they became due and owing; (b) the Court then lifted the automatic stay [Exhibit 5] to allow adjudication of environmental liabilities against Basic with the agreement that PPC only seek recovery of the environmental liabilities from (i) any and all insurance carriers providing coverage for PPC's claims; and/or (ii) funds available under any and all insurance policies providing coverage for the Basic's adjudicated liability; and/or (iii) any other insurance obligations of Basic's insurance carriers in connection with or related to claims asserted by PPC; and/or (iv) other third parties; and (c) Basic's liabilities were duly adjudicated and found due and owing by the Reeves County district court.

Plaintiff's Brief, p. 3 (highlighting added).

The problem with Plaintiff's argument is that *there is no item (iv) in the Lift-Stay Order*. Plaintiffs invented it. The Lift-Stay Order lists *three* potential sources of recovery – (i) through (iii). And as shown in the following screenshot, all of them are insurance:

12

> 4. For the avoidance of doubt, the Movants may collect upon such settlement or final judgment (i) from any and all insurance carriers providing coverage for the Movants' claims; and/or (ii) by funds available under any and all insurance policies providing coverage for the Debtors' adjudicated liability; and/or (iii) any other insurance obligations of Debtors' insurance carriers in connection with or related to claims asserted by Movants. The Movants' collection pursuant to a final judgment is recoverable only from the applicable insurance policies of the Debtors and other third parties and not from the Debtors or their estates directly or indirectly.

Lift-Stay Order (Main Dkt. 497), ¶ 4 (highlighting added).

Although the second sentence of paragraph 4 of the Lift-Stay Order references "the *applicable insurance policies of* the Debtors and other third parties" (emphasis added), Plaintiffs' attempt to rip the words "other third parties" out of the phrase in which they are used – and into a non-existent new clause "(iv)" – ignores the context of the preceding sentence and the Lift-Stay Order itself and thus should be rejected as contrary to fundamental rules of contract interpretation. When construing a contract, courts construe words in the context in which they are used. *URI, Inc. v. Kleberg Cnty.*, 543 S.W.3d 755, 764 (Tex. 2018). When read in the context of the preceding list of three *insurance* sources of recovery, it is clear that the Lift-Stay Order's reference to recovery "from the applicable insurance policies of the Debtors and other third parties" was intended to clarify that, in addition to the Debtors' insurance policies, Plaintiffs could also recover from other sources of *insurance* that may otherwise provide coverage for Plaintiffs' claims against Basic, such as reinsurance held in the name of the Debtors' carriers.[9]

---

[9] This is underscored by the timing of the Lift-Stay Order in relation to the Sale Order. As Plaintiffs admit, Basic filed the Sale Motion attaching a form of the APA and identifying Select as the stalking horse bidder for Basic's water logistics assets, including the Orla Kessler, on August 17, 2021. Plaintiffs' Brief, p. 4. The Lift-Stay Order was entered almost two months later, on October 14, 2021. As a result, Plaintiffs and Basic were under lengthy notice that Select would be acquiring the Assets and Assumed Liabilities when they drafted and filed the stipulated form of the Lift-Stay Order. If Basic

13

Plaintiffs' effort to pluck language out of context from a Lift-Stay Order and create a non-existent item (iv) cannot broaden the definition of "Assumed Liabilities" and "Environmental Law" in the APA. But it does reveal Plaintiffs' inability to stick to the text of the operative documents when arguing to the Court, and the desperation of Plaintiffs' efforts to impose a liability upon Select which Select never agreed to assume.

## CONCLUSION

Select respectfully asks this Court to reject the arguments in Plaintiffs' Brief, grant Select's MPSJ (which Select incorporates fully by reference into this response), and order such other and further relief as the Court finds appropriate.

---

and Plaintiffs thought the Reeves County Case was an Assumed Liability, they would have expressly listed Select as one of the potential sources against which Plaintiffs could recover any final judgment against Basic in order to put Select on notice.

Respectfully submitted,

*/s/ Jordan W. Leu*
Jordan W. Leu
  Texas Bar No. 24070139
  jleu@velaw.com
Thomas P. Mitsch
  Texas Bar No. 24102218
  tmitsch@velaw.com
VINSON & ELKINS LLP
2001 Ross Avenue, Suite 3900
Dallas, Texas 75201
Tel.: (214) 220-7700
Fax.: (214) 999-7715

-and-

Michael J. Moore
  Texas Bar No. 24039068
  mmoore@brownpruitt.com
BROWN PRUITT WAMBSGANSS DEAN
  FORMAN & MOORE, P.C.
201 Main Street, Suite 700
Fort Worth, Texas 76102
Tel.: (817) 338-4888

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I certify that on December 18, 2023, a true and correct copy of the foregoing instrument was filed with the Clerk of the Court using the CM/ECF system, which will send electronic notification of such filing to all counsel of record.

*/s/ Thomas P. Mitsch*
Thomas P. Mitsch

4889-9573-3910