**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | **CHAPTER 11** |
| | § | |
| **BASIC ENERGY SERVICES, INC.,** *et al.*, | § | **Case No. 21-90002 (DRJ)** |
| | § | |
| | § | **(Jointly Administered)** |
| Debtors. | § | |
| | § | |
| **PPC ENERGY, LP and PRIEST PETROLEUM CORPORATION,** | § | |
| | § | |
| | § | |
| Plaintiffs, | § | **Adversary No. 23-03208** |
| | § | |
| vs. | § | |
| | § | |
| **SELECT ENERGY SERVICES, LLC,** | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFFS' BRIEF ON
ASSUMPTION OF LIABILITIES "ARISING UNDER ENVIRONMENTAL LAW"
[ADV. DKT. 41]**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Plaintiffs PPC Energy, LP and Priest Petroleum Corporation (collectively, "PPC"), hereby file *Plaintiffs' Reply to Defendant's Response to Plaintiffs' Brief on Assumption of Liabilities "Arising Under Environmental Law" [Adv. Dkt. 41]* and as such, respectfully show the Court the following:

**I.      THE REEVES COUNTY JURY FOUND WASTE.**

Select argues it is impossible to tell whether the Reeves County jury found waste.  [Adv. Dkt. 41, at pp. 2-6].  Select's lead argument is demonstrably incorrect.  PPC pleaded Basic's waste-causing conduct was:  (1) a violation of the Texas Natural Resources Code's prohibition on waste (*i.e.*, negligence per se); and (2) a violation of the common law duty to avoid conduct resulting in

waste.  [Adv. Dkt. 39-6, APPX000242-243].  Either way, the jury was required to find waste in order to affirmatively answer Question 1 to the trial court's charge.  Select's argument to the contrary invites the Court to speculate (without any supporting evidence in the record) that the jury found a breach of duty of ordinary care based on a theory neither pleaded nor proven at trial.  TEX. R. CIV. P. 278 (only questions raised by the pleadings and evidence are properly submitted to the jury).

Although Select cites to using the term "ordinary care" by PPC counsel during closing argument and argues that the "only factual findings required for negligence are 'failure to use ordinary care,' proximate cause, and injury," Select's never articulates any breach of duty pleaded and proven by PPC at trial that does not involve the waste of oil and gas natural resources.  In other words:  "Failure to use ordinary care" ***to do or not do what***?  The only answer in PPC's pleading (and the evidence presented during trial) is the failure to use ordinary care to avoid drowning with water the subsurface strata from which PPC's wells produced oil and gas (*i.e.*, waste).  [Adv. Dkt. 39-6, APPX000242].  Furthermore, Select does not contest that the trial court was required to find that PPC's negligence and negligence per se theories called for identical factual findings before submitting the two legal theories to the jury in the same broad-form question.

Rather than cite legal authority, Select highlights that PPC requested separate questions for negligence and negligence per se such that PPC "cannot credibly argue in this Court that a broad-form jury question on common-law negligence is the same thing."  [Adv. Dkt. 41, at p. 4].  Select once more fundamentally misapprehends the law concerning state-law jury charges.  Although trial courts are required to find that multiple legal theories call for the same factual finding before submitting a broad-form question—they need not submit the broad-form question where one party

contends that one of the legal theories is a legally impermissible avenue to recovery. *See Crown Life Ins. v. Casteel*, 22 S.W.3d 378, 389 (Tex. 2000) ("we have previously held that submitting multiple independent liability theories in a single jury question is harmful when one of the theories is invalid and it cannot be determined whether liability was based on the invalid theory.").

Because Basic contested whether PPC's negligence per se theory was a valid legal theory, PPC was well within its rights at the trial court level to request a separate negligence and negligence per se question to give itself the broadest possible protection on appeal. *Casteel*, 22 S.W.3d at 390 ("Similarly, when the trial court is unsure whether it should submit a particular theory of liability, separating liability theories best serves the policy of judicial economy underlying Rule 277 by avoiding the need for a new trial when the basis for liability cannot be determined."). The trial court disagreed with Basic's contention that negligence per se was not a valid legal theory. Rather, the trial court found that negligence per se and ordinary negligence called for the same factual finding ***and*** that no uncertainty existed regarding whether it should submit negligence per se as a theory of liability to the jury.

Select's reliance on *Discovery Operating, Inc. v. BP Am. Prod. Co.*, 311 S.W.3d 140, 163 (Tex. App.—Eastland 2010, pet. denied) is misplaced. In *Discovery Operating*, the plaintiff-operator alleged the defendant injected saltwater in a manner that caused waste in violation of the Texas Natural Resources Code. 311 S.W.3d at 148. The trial court improperly granted summary judgment against the plaintiff's negligence per se theory, holding that a violation of the Texas Natural Resources Code does not give rise to a negligence per se claim. *Id.* at 149. The jury then answered "no" to the broad-form negligence question. *Id.* at 163.

The court of appeals reversed, holding that waste of oil and gas gives rise to a negligence per se cause of action. *Id.* Importantly, the court of appeals also held that the trial court's error

was not harmless because, based "on the broad-form submission of the question, we cannot determine from the jury's 'no' answer whether the jury believed that [the defendant] was not negligent or that [the defendants'] negligence was not a proximate cause . . . ." *Id.*  Here, however, the jury was expressly instructed not to answer Question 1 "yes" unless it found **both** negligence and proximate cause, **which it did**.  [Adv. Dkt. 40-1, APPX. 0000759].

Further, rather than undercut PPC's position, *Discovery Operating* supports it because the court of appeals expressly held that the plaintiff's "negligence per se claims [were] inextricably intertwined with its other claims" for negligence, common-law waste, and statutory waste.  *See Discovery Operating*, 311 S.W.3d at 145-46.  This is exactly PPC's position here—that the various legal theories pleaded by PPC in the trial court required the exact same factual finding by the jury (*i.e.*, that Basic's injection of produced water into the Orla Kessler disposal well drowned with water the subsurface strata from which PPC's wells produced oil and gas).

## II.    "ENVIRONMENTAL LAW" INCLUDES COMMON LAW OBLIGATIONS.

Despite the plain language in the APA, Select argues common law negligence is categorically excluded from the definition of "Environmental Law," and that to hold otherwise would result in "unreasonable, oppressive, or absurd results."  [Adv. Dkt. 41, at pp. 6-7].  While Select may now subjectively believe the obligations it assumed from Basic are "unreasonable, oppressive, or absurd," there is no basis in the text of the APA for the proposition that common law negligence cannot be an "Environmental Law."  Indeed, the APA says just the opposite.

The APA defines "Environmental Law" as "any Applicable Law . . . relating to the . . . protection of natural resources . . . ."  [Adv. Dkt. 39-2, APPX000082].  "Applicable Law" expressly includes common law.  [Adv. Dkt. 39-2, APPX000078].  There can be no legitimate dispute that Texas law has long-held that the drowning of a productive stratum, resulting in the loss and waste of oil and gas reserves, constitutes common law negligence.  *See*, *e.g.*, *Elliff v. Texon Drilling Co.*,

210 S.W.2d 558, 583 (Tex. 1948) ("In the like manner, the negligent waste and destruction of petitioners' gas and distillate was neither a legitimate drainage of the minerals from beneath their lands nor a lawful or reasonable appropriate of them."); *Breton Energy, L.L.C. v. Mariner Energy Resources, Inc.*, 764 F.3d 394, 409 (5th Cir. 2014) (quoting *Elliff*).  Indeed, the fact that the trial court submitted PPC's claims to the jury through the broad-form negligence question proves this point.  *See* Texas Pattern Jury Charges – General Negligence, Intentional Personal Torts & Workers' Compensation § 5.1 (2018).

Nevertheless, Select asserts that common law negligence is not an "Environmental Law," as defined in the APA, because common law negligence includes other duties and obligations not pertaining to the environment.  [Adv. Dkt. 41, at p. 7].  However, nothing in the APA requires that the "Applicable Law" exclusively relate to the environment in a general sense.  So long as the duties imposed by the "Applicable Law" are "relating to" the environment, including "subsurface strata" or the "protection of . . . natural resources," the law itself is an "Environmental Law" per the agreed-upon definition in the APA—even if the law also pertains to other subject matter.  Once more, Select's argument is an attempt to add conditions to its assumption of liability that are nowhere to be found in the actual text of the agreements.

Further, Select's argument that common law negligence is categorically excluded from the definition of "Environmental Law" conflicts with Select's motion for partial summary judgment, in which it argued that common law negligence claims are subject to "a carve-out which excludes common-law negligence." [Adv. Dkt. 40, at p. 11].  Under that carve-out, the term "Environmental Law' does not include "good or desirable operating practices or standards that may be employed or adopted by other salt water disposal well operators or recommended, but not required, by a Governmental Authority." [Adv. Dkt. 39-2, APPX000082].  If, however, common law negligence

claims were already categorically excluded from the definition of "Environmental Law," (*i.e.*, because they are not laws aimed at protecting the environment) there would be no need for the "negligence carve-out" in the first place, and the carve-out would be mere surplusage. *Hawthorne Land Co. v. Equilon Pipeline Co., LLC*, 309 F.3d 888, 893 (5th Cir. 2002) ("A contract should be interpreted so as to avoid neutralizing or ignoring a provision or treating it as surplusage.").

Likewise, Select's argument that the Texas Natural Resources Code is not an "Environmental Law"—even though the Code clearly protects subsurface strata and natural resources—is without merit. Black's Law Dictionary defines "natural resource" as including ***both*** natural materials having economic value and natural materials providing sustenance of life. *Natural Resource*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "natural resource" as "[a]ny material from nature having potential economic value or providing for the sustenance of life, such as timber, minerals, *oil*, water, and wildlife.") (emphasis added). Select's contention that the Texas Natural Resource Code's protection of oil, gas, and subsurface strata are economically motivated is without legal authority and, even if true, the APA does not exclude the Code from the definition of "Environmental Law"—which contains no such intent requirement. Further, Select's argument that laws related to the protection of economically valuable natural resources are not "Environmental Law[s]" is likewise without any support in the text of the definition, which categorically includes all laws related to the protection of natural resources, including natural resources with economic value.

And finally, Select fails to recognize that the Final Judgment is itself an "Environmental Law." The definition of "Applicable Law" expressly includes "judgment adopted or promulgated by a Governmental Authority" which, in turn, includes "any . . . court." [Adv. Dkt. 39-2, APPX000078]. Moreover, the Final Judgment constitutes an "Applicable Law" relating to both

"subsurface strata" and "natural resources" as encapsulated by the APA's definition of "Environmental Law." [Adv. Dkt. 39-2, APPX000082].

## III.     THE DISCLOSURE SCHEDULES DO NOT HELP SELECT.

Select argues "that Basic and Select contemporaneously expressed their understanding and intention that the Reeves County Case was a general liability claim . . . which did not arise under Environmental Law." [Adv. Dkt. 41, p. 10]. Select's argument fails for several reasons.

*First*, no such agreement is reflected in the text of either the APA or Assumption Agreement. *URI, Inc. v. Kleberg Cty.*, 543 S.W.3d 755, 763 (Tex. 2018) ("Objective manifestations of intent control, not what one side or the other alleges they intended to say but did not.").

*Second*, the so-called "understanding"—which is not expressed in the contracts—conflicts with the express language of the APA and Assumption Agreement, which state that Select assumed "all Liabilities" arising under "Environmental Law"—not just liabilities associated with the environmental matters listed on Schedule 3.07. If the parties wanted to limit Select's assumption of liabilities to just the environmental matters listed in Schedule 3.07, they could have stated as much, but they did not. *Id.* at 768 ("Parties cannot rely on extrinsic evidence to give the contract a meaning difference from that which its language imports, add to, alter, or contradict the terms contained with the agreement itself, make the language say what it unambiguously does not say, or show that the parties probably meant, or could have meant, something other than what their agreement stated.") (internal quotations omitted).

*Third*, Select's argument is nothing short of an invitation for the Court to read motives or intentions into the contract that are not expressed therein. Even assuming evidence in the record supported Select's argument—and, there is none—this is flatly prohibited by Texas law. *Id.* at 767 ("Thus, extrinsic evidence may be consulted to give meaning to the phrase 'the green house

on Pecan Street,' but 'cannot be used to show the parties' motives or intentions apart from' the language employed in the contract."). The language in the contract unambiguously states Select assumes "all Liabilities" arising under "Environmental Law"—not just those listed in the disclosure schedules (which, instead, serve as Basic's representation and warranty concerning environmental liabilities known to Basic at the time the APA was executed).

## IV.    THE LIFT-STAY ORDER ALLOWS RECOVERY AGAINST SELECT.

Select accuses PPC of "misleadingly argu[ing]" that the Lift-Stay Order "identified 'other third parties' as one of *four* potential sources of recovery." [Adv. Dkt. 41, p. 12].

PPC's argument is not misleading. The Lift-Stay Order expressly allows collection of the Final Judgment "from the applicable insurance policies of the Debtor's *and other third parties* and not from the Debtors or their estates directly or indirectly." [Main Dkt. 497 ¶ 4 (emphasis added)]. Select argues the Court's order refers only to insurance policies of "other third parties" and not from "other third parties" directly. But, this interpretation vitiates Texas' direct action rule, *see Aviles v. Aguirre*, 292 S.W.3d 648, 649 (Tex. 2009), and otherwise directly contradicts other orders from this Court that expressly allow PPC to collect against "any other parties other than the Debtors or their insurance carriers:"

> The disallowance and expungement of Proof of Claim No. 1272 filed by PPC Energy, L.P. and Priest Petroleum Corporation shall not prejudice, impair, or otherwise operate as an estoppel or bar to PPC Energy, L.P. and Priest Petroleum Corporation's rights under the Stipulation and Order Granting Limited Relief from the Automatic Stay Regarding PPC Energy, LP and Priest Petroleum Corporation Litigation (the "Stipulation") [Docket No. 336] to (a) prosecute the case pending as *PPC Energy, LP and Priest Petroleum Corporation v. NGL Water Solutions Permian, LLC, et al.*, Cause No. 20-01-23355-CVR in the 143rd Judicial District Court in Reeves County, Texas (the "Lawsuit") to final judgment; (b) collect upon such settlement or final judgment (i) from any and all insurance carriers providing coverage for the claims asserted in the Lawsuit; and/or (ii) by funds available under any and all insurance policies providing coverage for the Debtors' adjudicated

liability; and/or (iii) from any other insurance obligations of the Debtors' insurance carriers in connection with or related to claims asserted by or against the Debtors; and/or (iv) *from any other parties other than the Debtors or their insurance carriers who may be obligated (by contract or otherwise) to satisfy liabilities or obligations associated with the Orla Kessler #1 disposal well*.

[Main Dkt. 1698, ¶ 3 (emphasis added)].

The Court's previous orders allow PPC to collect amounts adjudicated against Basic from **both** the applicable insurance carriers and those contractually obligated to satisfy the liabilities or obligations associated with the Orla Kessler disposal well—Select.

Moreover, it is well settled that a plaintiff may collect a debt against a third-party contractually obligated to pay it—even when the original debtor has filed for bankruptcy and even when the collecting party filed a proof of claim. *Matter of Edgeworth*, 993 F.2d 51, 54-55 (5th Cir. 1993) ("a plaintiff's failure to file in the bankruptcy proceeding should not impair the right to file suit against another party who may be liable on the debt."). In other words, once Basic's liability was adjudicated, PPC did not require permission to collect directly against Select because Select was not a debtor in bankruptcy and Select's property is not property of the Estate.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request that the Court: (a) deny Defendant's Motion for Partial Summary Judgment; (b) grant PPC summary judgment on Select's counterclaim for declaratory relief, (c) grant PPC summary judgment on its third cause of action for breach of contract and on its fourth cause of action for declaratory relief; and (d) remand the case to the state court. In the alternative, PPC asks that the Court permissively abstain from deciding any issues in this case and remand the case to the state court. In either event, PPC asks that the Court award PPC all such other and further relief, whether general or special, at law or in equity, to which PPC may show itself to be justly entitled.

Respectfully submitted,

*/s/Michael Reer*
Jeff P. Prostok
State Bar No. 16352500
jprostok@forsheyprostok.com
Deirdre Brown
State Bar No. 24049116
dbrown@forsheyprostok.com
FORSHEY & PROSTOK LLP
777 Main St., Suite 1290
Fort Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151

and

Michael K. Reer
Attorney-in-charge
S.D. Tex. ID. 3272174
State Bar No. 24088281
mreer@hfblaw.com
**HARRIS, FINLEY & BOGLE, P.C.**
777 Main Street, Suite 1800
Fort Worth, Texas 76102
Telephone No.: (817) 870-8700
Facsimile No.: (817) 332-6121

**ATTORNEYS FOR PLAINTIFFS
PPC ENERGY, LP AND PRIEST
PETROLEUM CORPORATION**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing instrument has been served on all parties and counsel of record in compliance with the Federal Rules of Civil Procedure on this 26th day of December 2023.

/s/Deirdre Carey Brown

Deirdre Carey Brown