IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| BASIC ENERGY SERVICES, INC., *et al*., | § § § § | Case No. 21-90002 |
| | § § | (Jointly Administered) |
| Debtors.[1] | § § § | |
| PPC ENERGY, LP and PRIEST PETROLEUM CORPORATION, | § § § § | |
| *Plaintiffs and Counter-Defendants*, | § § | Adversary No. 23-03208 |
| vs. | § § § | |
| SELECT ENERGY SERVICES, LLC, | § § § | |
| *Defendant and Counter-Plaintiff*. | § | |

## DEFENDANT'S REPLY
## SUPPORTING MOTION FOR PARTIAL SUMMARY JUDGMENT

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Plaintiffs' *Objection to Defendant's Motion for Partial Summary Judgment* [Adv. Dkt. 42] (the "Objection") is replete with mischaracterizations of the record and inappropriate requests for relief not sought by motion and should be overruled for the reasons stated below. Select's *Motion for Partial Summary Judgment* [Adv. Dkt. 40] (the "Motion") thus should be granted.[2]

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Basic Energy Services, L.P. (1819); Basic Energy Services, Inc. (1194); C&J Well Services, Inc. (5684); KVS Transportation, Inc. (4882); Indigo Injection #3, LLC (7657); Basic Energy Services GP, LLC (1197); Basic Energy Services Select, LLC (1195); Taylor Industries, LLC (7037); SCH Disposal, L.L.C. (8335); Agua Libre Holdco LLC (3092); Agua Libre Asset Co LLC (1409); Agua Libre Midstream LLC (6701); and Basic ESA, Inc. (2279). The Debtors' headquarters and service address for the purposes of these chapter 11 cases is 801 Cherry Street, Suite 2100, Fort Worth, Texas 76102.

[2] Capitalized terms not defined in this reply have the meanings given to them in the Motion.

DEFENDANT'S REPLY SUPPORTING MOTION FOR PARTIAL SUMMARY JUDGMENT – PAGE 1

***First***, Plaintiffs mischaracterize Select's argument regarding the absence of any jury findings that Basic committed waste (or violated Environmental Law) as a suggestion that the state court "erred by submitting an ordinary negligence question based on a legal or factual theory not found in the pleadings." Objection, pp. 6-7. Select has never argued that the state court erred. Instead, Select argued that it is speculative for Plaintiffs to assume that a jury asked only to reach a finding of "negligence" actually reached an additional, unwritten finding of "waste" (or violation of an Environmental Law) as the basis for its finding of negligence. *See* Motion, pp. 8-11. Fundamentally, there was only one liability question in the jury charge (negligence), so Plaintiffs have no evidence on the more specific question of "waste."[3] Accordingly, because common-law negligence is not an "Environmental Law," Plaintiffs' claims for breach of contract and declaratory judgment fail for lack of evidence and the Court should enter summary judgment in favor of Select.

***Second***, Plaintiffs' belated attempt to seek partial summary judgment in their Objection[4] is inappropriate and should be rejected. At the October 26, 2023 hearing on Select's Motion to Dismiss [Adv. Dkt. 5] and Plaintiffs' Motion to Remand [Adv. Dkt. 7], this Court indicated that the upcoming briefing should be in the form of cross-motions for partial summary judgment on the discrete issue of whether the judgment against Basic is an Assumed Liability. *See* Oct. 26,

---

[3] Plaintiffs' related argument, that negligence and waste purportedly "required the same factual finding," *see* Objection p. 7, is equally flawed. Negligence and waste had different definitions in the jury charge and thus did not require the same factual findings. Adv Dkt, 40-1, p. 759. And there were ***four*** current and former defendants as to which the jury made a "yes or no" finding on negligence – not just Basic. *Id*. The jury answered with three yesses and one no. *Id*. On those facts, it is especially speculative to assume the jury found that Basic committed waste instead of typical, failure-to-use-ordinary-care negligence. Perhaps the jury never reached the specialized topic of "waste" because Plaintiffs' closing argument gave the jury a much easier path of evaluating "ordinary care" without addressing waste. Adv. Dkt. 40-1, p. 832. Perhaps the jury found that one of the other former defendants committed waste, but found that Basic had committed only common-law negligence. Perhaps the jury found that none of the defendants committed waste, but found that Basic failed to exercise ordinary care and thereby contributed to the injury in question. Because there was only one broad-form liability question and answer, nobody will ever know; thus Plaintiffs' APA claims are speculative and fail as a matter of law.

[4] *See* Objection, p. 24.

2023 *Hr'g Tr*. 77:14-78:11; *id*. at 79:4-11 & 79:24-80:12.  But Plaintiffs **elected** not to file a cross-motion by the December 1, 2023 deadline, and instead filed a "brief" untethered to any procedural rule.  *See* Plaintiffs' Brief [Adv. Dkt. 39] at p. 21 (containing "Prayer for Relief" requesting remand and abstention, without seeking any merits rulings on "Assumed Liabilities" or otherwise).  After failing to file a **motion**, Plaintiffs cannot now seek summary judgment in a December 23, 2023 **Objection** under Rule 56(f).[5]  *See* Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion."); *Ordos City Hawtai Autobody Co., Ltd. v. Dimond Rigging Co., LLC*, 695 F. App'x 864, 870 (6th Cir. 2017) ("Rule 56(f) empowers a court to grant summary judgment for a nonmoving party; it does not permit a party to move for summary judgment in a responsive pleading."); *Hartford Fire Ins. Co. v. Trynex, Inc.*, No. 11-CV-13360, 2013 WL 12183610, at *1 (E.D. Mich. July 25, 2013) ("Because Rule 56(f)(1) does not authorize a party to seek summary judgment, the Court strikes the request for summary judgment contained in the response brief.").[6]  The Court should grant Select's Motion, but should not grant any relief whatsoever in favor of Plaintiffs who failed to seek a ruling on "Assumed Liabilities" by **motion** as required under Fed R. Civ. P. 7(b)(1) and as expressly contemplated at the October 26 hearing.

**Third**, Plaintiffs' continued efforts to avoid adjudication by this Court are improper. Plaintiffs improperly sued Select in the 157th District Court of Harris County, Texas despite a mandatory Bankruptcy Court forum-selection clause in the very same APA which Plaintiffs

---

[5] *See* Objection, pp. 1 & 23.  The same is true for Plaintiffs' improper inclusion of a broader prayer for relief in their December 26, 2023 reply than in their December 1, 2023 brief.  *See* Adv. Dkt. 43, p. 9.

[6] Plaintiffs' requests for remand and permissive abstention sprinkled throughout the Objection, *e.g.*, at pp. 2 & 24, likewise are not properly before the Court because they were not raised by motion.  And regardless of the foregoing, the Court already denied both remand and abstention.  *See* Oct. 26, 2023 *Hr'g Tr*. 74:24-75:6, 76:17-22; *see also* Briefing Order, ¶ 2.

allegedly sought to enforce.[7]  Select removed the case, and Plaintiffs moved for remand.  Adv. Dkts. 1 & 7.  On the record at the October 26, 2023 hearing, the Court denied both remand and abstention.  *See* Oct. 26, 2023 *Hr'g Tr*. 74:24-75:6, 76:17-22.  But Plaintiffs' filings continue to discuss both remand and abstention, while strangely noting that a law clerk apparently billed a negligible amount of time (less than four hours spread over two days in June 2022) to the Debtors' case while in law school.[8]  All of this prompts Select to wonder:  Why do Plaintiffs have such a problem with the Court that ***approved*** the APA ***construing*** the APA?  And what possible relevance could four hours over two days in a law clerk's prior stint as a summer associate – especially one that occurred ***nine months*** after the APA and Sale Order – have on this dispute?

***Fourth***, the April 25, 2023 order disallowing Plaintiffs' proof of claim [Main Dkt. 1698] is irrelevant and did not expand the "Assumed Liabilities" defined in the APA.  For background, the Court entered the Lift-Stay Order in October 2021, three weeks after approving the APA.  Main Dkt. 497.  The Lift-Stay Order described three sources of recovery, all of which were insurance.  *See* Adv. Dkt. 41, pp. 12-14.  Seventeen months later, in March 2023, the Liquidation Trustee of the Basic Energy Liquidation Trust objected to Plaintiffs' proof of claim against the Basic estate.  Main Dkt. 1665.  The next month, Plaintiffs and the Liquidation Trustee conferred about the Liquidation Trustee's objection[9] and resolved it with an Agreed Order [Main Dkt. 1698] (the "***Claim Disallowance Order***") disallowing Plaintiffs' claim but expressly providing that such disallowance would not "prejudice, impair, or otherwise operate as an estoppel or bar to"

---

[7]   Adv. Dkt. 40-1, p. 77 (APA, § 11.06) ("Each Party agrees that it shall bring any action or proceeding in respect of any claim arising out of or related to this Agreement or the transactions contained in or contemplated by this Agreement and the Transaction Documents (whether in contract or tort), exclusively in (a) the Bankruptcy Court so long as the Bankruptcy Cases remain open . . . .").

[8]   *See, e.g.*, Objection, n.1; *id*. at p. 24.

[9]   *See* Main Dkt. 1687, ¶¶ 1-2.

Plaintiffs' rights to prosecute the Reeves County Case under the Lift-Stay Order and collect any resulting judgment. *See* Main Dkt. 1698, ¶ 3. But the Claim Disallowance Order did not purport to ***change***, much less ***expand*** Plaintiffs' rights under the Lift-Stay Order. Yet, the language about third parties in the Claim Disallowance Order indisputably is broader than (and very different from) what was actually in the Lift-Stay Order:

***Compare* Lift-Stay Order (Main Dkt. 497), ¶ 4 (highlighting added)**

> 4. For the avoidance of doubt, the Movants may collect upon such settlement or final judgment (i) from any and all insurance carriers providing coverage for the Movants' claims; and/or (ii) by funds available under any and all insurance policies providing coverage for the Debtors' adjudicated liability; and/or (iii) any other insurance obligations of Debtors' insurance carriers in connection with or related to claims asserted by Movants. The Movants' collection pursuant to a final judgment is recoverable only from the applicable insurance policies of the Debtors and other third parties and not from the Debtors or their estates directly or indirectly.

***With* Claim Disallowance Order (Main Dkt. 1698), ¶ 3 (highlighting added).**

> 3. The disallowance and expungement of Proof of Claim No. 1272 filed by PPC Energy, L.P. and Priest Petroleum Corporation shall not prejudice, impair, or otherwise operate as an estoppel or bar to PPC Energy, L.P. and Priest Petroleum Corporation's rights under the Stipulation and Order Granting Limited Relief from the Automatic Stay Regarding PPC Energy, LP and Priest Petroleum Corporation Litigation (the "Stipulation") [Docket No. 336] to (a) prosecute the case pending as *PPC Energy, LP and Priest Petroleum Corporation v. NGL Water Solutions Permian, LLC, et al.*, Cause No. 20-01-23355-CVR in the 143rd Judicial District Court in Reeves County, Texas (the "Lawsuit") to final judgment; (b) collect upon such settlement or final judgment (i) from any and all insurance carriers providing coverage for the claims asserted in the Lawsuit; and/or (ii) by funds available under any and all insurance policies providing coverage for the Debtors' adjudicated liability; and/or (iii) from any other insurance obligations of the Debtors' insurance carriers in connection with or related to claims asserted by or against the Debtors; and/or (iv) from any other parties other than the Debtors or their insurance carriers who may be obligated (by contract or otherwise) to satisfy liabilities or obligations associated with the Orla Kessler #1 disposal well. Accordingly, collection pursuant to settlement or final judgment

As a result, although the Claim Disallowance Order indeed does not "prejudice, impair, or otherwise operate as an estoppel or bar to" Plaintiffs' rights under the Lift-Stay Order, it also did not retroactively change the Lift-Stay Order to make it appear that Select or other non-insurance third parties might be a collection target.[10] In fact, in Plaintiffs' own objection to a different lift-stay stipulation allowing Basic's coverage litigation to proceed, Plaintiffs recognized that there are three (not four) potential sources of recovery in the Lift-Stay Order, all of which are insurance and none of which include non-insurance third parties (like Select). As Plaintiffs wrote on August 2, 2022:

> 7. On October 14, 2021, the Court signed a *Stipulation and Order Granting Limited Relief from the Automatic Stay Regarding PPC Energy, LP and Priest Petroleum Corporation Litigation* [Dkt. 497] (the "PPC Lift Stay Order") modifying the automatic stay to the extent necessary to permit Claimants to prosecute the Lawsuit. The PPC Lift Stay Order further provided:
>
> - that the Debtors and their estates and the reorganized debtors and their estates shall not be obligated to pay any amounts owed or awarded in connection with the Lawsuit, including, but not limited to, any monetary damages, insurance deductible, self-insured retention, or attorneys' fees and expenses. [Dkt. 497, ¶ 3]; and
>
> - that Claimants may collect upon such *settlement or final judgment* (i) *from* any and all insurance carriers providing coverage for Claimants' claims, (ii) *from* funds available under any and all insurance policies providing coverage for the Debtors' adjudicated liability, and (iii) *from* other insurance obligations *of* the Debtors' insurance carriers in connection with or related to claims asserted by Claimants. [Dkt. 497, ¶ 4 (emphasis added)].

See Main Dkt. 1366, ¶ 7 (highlighting added).

---

[10] Indisputably, Select was not at all impacted by the disallowance of Plaintiffs' proofs of claim against the estate in April 2023, which was a matter between the Liquidation Trustee and Plaintiffs alone. Indeed, Select would have no reason to even monitor the bankruptcy docket in April 2023 after having purchased assets from the estate in a sale approved in October 2021. To the extent Plaintiffs surreptitiously were trying to creep toward enforcing the judgment against Select by rewording the Lift-Stay Order in an unrelated order on a claims objection (eighteen months later) without filing a motion to modify the Lift-Stay Order or noticing and conferring with Select, they shouldn't be rewarded for it.

*Finally*, even if the 2023 Claim Disallowance Order somehow could modify or expand the 2021 Lift-Stay Order without a motion to modify or notice to affected parties, it still wouldn't affect the resolution of the matters pending before the Court because the judgment against Basic did not "aris[e] under Environmental Law" and accordingly is not an "Assumed Liabilit[y]" in the first place. *See* Motion, pp. 7-16. In other words, the Lift-Stay Order only becomes relevant if the judgment against Basic is an Assumed Liability under the APA. And because the judgment is not an Assumed Liability for the reasons shown in Select's Motion, there is no need for the Court to reach the Lift-Stay Order, let alone the Claim Disallowance Order.

## CONCLUSION

For the reasons stated above and in the Motion, Select respectfully asks this Court to grant the Motion, enter partial summary judgment for Select on Count I of its Counterclaim and Causes of Action III and IV in Plaintiffs' Original Petition, and order such other and further relief as the Court finds appropriate.

Respectfully submitted,

*/s/ Jordan W. Leu*

Jordan W. Leu
  Texas Bar No. 24070139
  jleu@velaw.com
Thomas P. Mitsch
  Texas Bar No. 24102218
  tmitsch@velaw.com
VINSON & ELKINS LLP
2001 Ross Avenue, Suite 3900
Dallas, Texas 75201
Tel.: (214) 220-7700
Fax.: (214) 999-7715

-and-

Michael J. Moore
  Texas Bar No. 24039068
  mmoore@brownpruitt.com
BROWN PRUITT WAMBSGANSS DEAN
  FORMAN & MOORE, P.C.
201 Main Street, Suite 700
Fort Worth, Texas 76102
Tel.: (817) 338-4888

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I certify that on December 28, 2023, a true and correct copy of the foregoing instrument was filed with the Clerk of the Court using the CM/ECF system, which will send electronic notification of such filing to all counsel of record.

*/s/ Thomas P. Mitsch*
Thomas P. Mitsch

4864-1720-9753