IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | CHAPTER 11 |
| | § | |
| BASIC ENERGY SERVICES, INC., *et al.*, | § | Case No. 21-90002 (DRJ) |
| | § | |
| | § | (Jointly Administered) |
| Debtors. | § | |
| | § | |
| _____ | § | |
| PPC ENERGY, LP and PRIEST | § | |
| PETROLEUM CORPORATION, | § | |
| | § | |
| | § | |
| Plaintiffs, | § | Adversary No. 23-03208 |
| | § | |
| vs. | § | |
| | § | |
| SELECT ENERGY SERVICES, LLC, | § | |
| | § | |
| Defendant. | § | |

## NOTICE OF APPEAL AND STATEMENT OF ELECTION

Plaintiffs PPC Energy, LP and Priest Petroleum Corporation (collectively, "PPC"), hereby file this *Notice of Appeal and Statement of Election* seeking to appeal this Court's January 4, 2024, bench ruling.

### Part 1: Identify the appellant(s)

1. Name(s) of appellant(s):
   PPC Energy, LP and Priest Petroleum Corporation.

2. Position of appellant(s) in the adversary proceeding or bankruptcy case that is the subject of this appeal:
   Appellants are Plaintiffs in the above-captioned adversary proceeding.

### Part 2:  Identify the subject of this appeal

1. Describe the judgment—or the appealable order or decree—from which the appeal is

taken:

On January 4, 2024, this Court ruled that none of the "Final Judgment" entered by the 143rd District Court of Reeves County, Texas, Cause No. 02-01-23355-CVR, in favor of PPC Energy, LP and Priest Petroleum Corporation against Basic Energy Services, LP is an "Assumed Liability" as defined in the executed Asset Purchase Agreement approved by the Court in connection with the Order at Main Case Docket No. 438.

2. State the date on which the judgment—or the appealable order or decree—was entered:

   January 4, 2024.

## Part 3: Identify the other parties to the appeal

List the names of all parties to the judgment—or the appealable order or decree—from which the appeal is taken and the names, addresses, and telephone numbers of their attorneys (attach additional pages if necessary):

1. PPC Energy, LP and Priest Petroleum Corporation
   c/o Michael K. Reer
   Harris, Finley & Bogle, P.C.
   777 Main Street, Suite 1800
   Fort Worth, Texas 76102
   (817) 870-8741

2. Select Energy LLC
   c/o Jordan W. Leu and Thomas P Mitsch
   VINSON & ELKINS, LLP
   2001 Ross Avenue, Suite 3900
   Dallas, Texas 75201
   100 Congress Avenue, Suite 1100
   Austin, Texas  78701
   (512) 236-2000

## Part 4: Optional election to have appeal heard by District Court (applicable only in certain districts)

Pursuant to 28 U.S.C. § 158(c)(1), Plaintiffs/Appellants elect to have the appeal heard by the United States District Court.

Respectfully submitted,

*/s/ Jeff P. Prostok*
Jeff P. Prostok
State Bar No. 16352500
jprostok@forsheyprostok.com
Deirdre Brown
State Bar No. 24049116
dbrown@forsheyprostok.com
**FORSHEY & PROSTOK LLP**
777 Main St., Suite 1550
Fort Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151

and

Michael K. Reer
Attorney-in-charge
S.D. Tex. ID. 3272174
State Bar No. 24088281
mreer@hfblaw.com
**HARRIS, FINLEY & BOGLE, P.C.**
777 Main Street, Suite 1800
Fort Worth, Texas 76102
Telephone No.: (817) 870-8700
Facsimile No.: (817) 332-6121

**ATTORNEYS FOR PLAINTIFFS
PPC ENERGY, LP AND PRIEST
PETROLEUM CORPORATION**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing instrument has been served on all parties and counsel of record in compliance with the Federal Rules of Civil Procedure on this 18th day of January 2024.

*/s/ Michael K. Reer*
Michael K. Reer

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| PRIEST PETROLEUM CORPORATION, | § | CASE NO. 23-03208-ADV |
| ET AL | § | HOUSTON, TEXAS |
| | § | |
| v | § | THURSDAY, |
| | § | JANUARY 4, 2024 |
| SELECT ENERGY SERVICES, LLC, | § | |
| ET AL. | § | 10:02 A.M. TO 10:48 A.M. |

**<u>RULING</u>**

BEFORE THE HONORABLE CHRISTOPHER M. LOPEZ
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:                          SEE NEXT PAGE

COURTROOM DEPUTY/ERO:                 ZILDE COMPEAN

<u>TRANSCRIPTION SERVICE BY</u>:

JUDICIAL TRANSCRIBERS OF TEXAS, LLC
935 ELDRIDGE ROAD, #144
SUGAR LAND, TEXAS 77478
(281) 277-5325 (office)
www.judicialtranscribers.com

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

**<u>APPEARANCES</u>:**


FOR PRIEST PETROLEUM                FORSHEY PROSTOK, LLP
CORPORATION, ET AL.:                Dierdre Carey Brown, Esq.
                                    1990 Post Oak Blvd.
                                    Suite 2400
                                    Houston, TX 77056
                                    832-367-5722


FOR SELECT ENERGY                   VINSON & ELKINS, LLP
SERVICES, LLC, ET AL.:              Jordan E. Leu, Esq.
                                    2001 Ross Avenue
                                    Suite 3900
                                    Dallas, TX 75201
                                    214-220-7715

1            **HOUSTON, TEXAS; THURSDAY, JANUARY 4, 2024; 10:02 A.M.**

2            THE CLERK:  All rise.

3            THE COURT:  Happy New Year, everyone.  This is Judge

4    Lopez, I'm calling the 10:00 o'clock docket.  Why don't I take

5    appearances?  I'm going to get myself set up here and we'll

6    get started in a moment.

7            MS. BROWN:  Good morning, Your Honor.

8            THE COURT:  Good morning.

9            MS. BROWN:  Dierdre Brown on behalf of the

10    Plaintiffs, PPC Energy and Priest Petroleum Corporation, and

11    I'm joined today with Mr. Weir and the company's principals

12    who are in the courtroom as well.

13            THE COURT:  Okay.  Good morning.

14            MR. LEU:  Good morning, Your Honor.  Jordan Leu with

15    Vinson & Elkins.  I'm joined by my colleague Tom Mitsch and my

16    co-counsel, Mike Moore of the Brown Pruitt firm.  We represent

17    the Defendant, Select.

18            THE COURT:  Okay.  Good morning.  And I would note

19    that we're in Case Number 23-03208.  It looks like there's a

20    number of parties on the line.

21            Is there anyone who needs to make an appearance

22    here, or can I mute this line?

23        (No audible response.)

24            THE COURT:  Well, I'm muting it anyway.

25        (Conference muted.)

1       THE COURT:  Okay.  Ms. Brown, good morning.

2       MS. BROWN:  Good morning, Your Honor.  Just as a

3  preliminary matter I think there may have been some procedural

4  confusion given the Court's order.

5       THE COURT:  Uh-huh.

6       MS. BROWN:  Which we tried to comply specifically

7  with the Court's order and do a brief, whereas we had had

8  prior discussions about doing a motion practice, et cetera.

9  The Court said, you know, let's just wait and I'll issue an

10  order.  The order came forward so we tried to comply with the

11  order.  If there was any misunderstanding of the order, we're

12  happy to do whatever the Court prefers.

13       THE COURT:  No, it was a question I was going to ask

14  you all.  How do you -- I'm ready to give you the answer to

15  the question today, and I'm ready to rule on it.  Maybe we can

16  take up the summary judgment or I can just issue, and I

17  requested briefing on the dispositive issue in connection with

18  the adversary proceeding and admit evidence.  I think it's all

19  kind of six and one-half dozen of the other.

20       MS. BROWN:  Yeah, the motion for summary judgment

21  itself I don't believe was actually set for hearing today.

22       THE COURT:  That's exactly right.

23       MS. BROWN:  So if the Court wants to take that up

24  separately, we would prefer to go ahead and, you know, go

25  forward with a full evidentiary motion and cure any concerns

1    that they have with us just asking under Rule 26.4 if the

2    Court issues summary judgment in our favor, if that's the

3    decision the Court may have.

4                    THE COURT:  Okay.

5                    MS. BROWN:  I also wanted -- it sounds like the

6    Court doesn't need oral argument today then on the

7    dispositive --

8                    THE COURT:  Well, it's a contract --

9                    MS. BROWN:  Right.

10                    THE COURT:   -- it's a long issue I think.

11                    MS. BROWN:  As a point of personal privilege though,

12    given some of the, I don't want to say ad hominem, but

13    somewhat strong language in the reply.  There was a footnote

14    reference to the fact that a law clerk that's now working for

15    yourself and Judge Isgur had formerly worked for Judge Jones

16    and had worked on several of the complex cases, including this

17    one, on the plan --

18                    THE COURT:  Right.

19                    THE WITNESS:   -- issues.  That was done, as the

20    Court knows, in full disclosure.  Candor to the Court there's

21    judicial canon that apply to law clerks as well as to judges,

22    and under Judicial Canon 3(f)(2)(A) Subpart 2 we wanted to

23    make sure that the Court was aware of that, presumably the

24    Court was, and so especially in this climate --

25                    THE COURT:  No, no, I got it.

6

1          MS. BROWN:  -- and in bankruptcy it's disclose,

2    disclose, disclose.

3          THE COURT:  Yeah.

4          MS. BROWN:  I just wanted to make sure the Court was

5    fully aware.

6          THE COURT:  And I just want you to know that any

7    insinuation that that somehow affected my decision is

8    absolutely ridiculous, and I'll say it for the Record.

9          MS. BROWN:  Thank you, Your Honor.  Again, and

10   any -- and there was never an intent to suggest --

11         THE COURT:  No, no, no --

12         MS. BROWN:  -- that it would.

13         THE COURT:  -- I got it.  I got it.  I'm just --

14         MS. BROWN:  Yeah.

15         THE COURT:  -- I'm just saying, this is -- you can

16   agree or disagree with the decision, but it will, you know, be

17   facts and law and you can take them up and not like them, if

18   you like them, so.

19         MS. BROWN:  Thank you.  I just wanted to make sure

20   because I saw that --

21         THE COURT:  Yeah, and --

22         MS. BROWN:  -- Ms. Morrison was also on the line.

23         THE COURT:  -- and let's see who else is -- I don't

24   even know if it was -- is Jackson Walker involved in this

25   case?

1          MS. BROWN:  It's been monitoring all of these

2     hearings that we've had --

3          THE COURT:  I know that.

4          MS. BROWN:  -- before Judge Jones and yourself.

5          THE COURT:  I know, but --

6          MS. BROWN:  So they're not a direct party, but

7     they're always --

8          THE COURT:  Yeah --

9          MS. BROWN:  -- present.

10          THE COURT:  -- I understand.  This is like -- I

11     don't even understand the connection.  I don't even

12     understand -- I got it, you're raising the issue and it's

13     in -- I got it.  This -- we don't even -- like this is -- we

14     don't even have Jackson Walker here.

15          MS. BROWN:  Well, I'm not sure.

16          THE COURT:  Or even is it involved here.  In terms

17     of this dispute between the two --

18          MS. BROWN:  Right, right.  They --

19          THE COURT:  -- parties, and in my --

20          MS. BROWN:  -- yeah, they've been --

21          THE COURT:  -- thinking and my analysis and what's

22     going to on with me, there's zero, there's zero there.

23          MS. BROWN:  Understood.

24          THE COURT:  I took this case up, I asked for the

25     briefing, I did the work, I'm issuing my ruling.

1          MS. BROWN:  Understood.  And because Jackson Walker

2     had been present at all the hearings --

3          THE COURT:  Yeah, I know, I got it.

4          MS. BROWN:  Yeah, there was never any insinuation to

5     the contrary, it was just making sure there was full

6     disclosure.

7          THE COURT:  No, I appreciate it.

8          MS. BROWN:  Thank you, Your Honor.

9          THE COURT:  Anything else?

10        (No audible response.)

11         THE COURT:  So how do want to handle today?  I mean

12    I'm going to give you all an answer today, you know, and tell

13    me what you want.

14         MR. LEU:  Your Honor, Jordan Leu with Vinson &

15    Elkins for the Record.  We understood this was a hearing for

16    Your Honor to deliver a ruling.  We're totally comfortable

17    with that.

18         THE COURT:  Okay.

19         MR. LEU:  We thank you, Your Honor.

20         THE COURT:  So let me ask you this before I rule,

21    are parties comfortable just admitting -- are there any

22    disputes that I can't review, like I can't rely on the jury

23    charge, the APA, the -- I think you all filed a September --

24    what I would call the September 22 Court -- the State Court,

25    where the State Court took up stuff and then issued the jury

1     charge and then attached the jury charge or the final

2     judgment.

3                 MR. LEU:  I don't believe so, Your Honor.

4                 THE COURT:  And then --

5                 MS. BROWN:  We think the Court should take judicial

6     notice of anything that's been filed in State Court or in this

7     Record here.

8                 THE COURT:  So let me -- and the APA, the executed

9     APA.

10                MS. BROWN:  Again, judicial notice.

11                THE COURT:  Well, I don't know, but let's just -- I

12    mean what I'm saying is, let's see, you all admitted -- you

13    all -- I want to get this -- I want to get this right

14    because -- all right, you all -- both of you just filed

15    exhibits and I believe the PPC brief includes just about

16    everything in it.  Your brief contained as exhibits the APA,

17    the stalking horse order, the assumption agreement, the sale

18    order, the lift stay order, the second amended petition, the

19    final judgment.

20                The only thing, I would just take -- I would just

21    add probably -- and the APA disclosures.  The only thing I

22    would want to add to this is just taking judicial notice of

23    the -- that September 22 hearing.  And it's not evident, but

24    it's just that -- but I would -- I didn't consider it.

25                MR. LEU:  Yes, Your Honor.  Yes, I think perhaps as

1    a housekeeping matter we would move for admission of our

2    exhibits filed a couple of days ago at Exhibit -- or at Docket

3    Number 45.

4            THE COURT:  Do you have any objection to the

5    exhibits, of their Exhibit 1 through 9, 1 is the APA, 2 -- I'm

6    talking about Ms. Brown's PPC's, and I should say that

7    Plaintiffs' 1 is the APA, Exhibit 2 is the stalking horse

8    order, 3 was the assumption agreement, 4 was the sale order, 5

9    was the lift stay order, 6 was the second amended petition,

10   Exhibit 7 is the final judgment, the May 12, 2023 judgment,

11   Exhibit 8 is the hearing transcript, Exhibit 9 is the APA

12   disclosures, Section 3.08.

13           MR. LEU:  No objection, Your Honor.

14           THE COURT:  All right.

15        (Plaintiffs' Exhibits 1 through 9 identified and received

16   into evidence.)

17           THE COURT:  Is there anything else you think needs

18   to be supplemented here?

19           MR. LEU:  Your Honor, if I may, Select filed an

20   exhibit --

21           THE COURT:  I'm just trying to avoid -- if I rule

22   one way or the other and someone says that it wasn't evidence

23   or, you know, already.

24           MR. LEU:  Yes, Your Honor.  Select's exhibit list

25   filed at Docket 45 included a complete copy of the APA which

1    also included Disclosure Schedule 3.07.  That would have been

2    within Exhibit 1, 45-1, so we would --

3              THE COURT:  Can we just admit a full -- a full APA

4    with all exhibits?  Where is that?  In other words, it would

5    have all the disclosure schedules in there.  It doesn't answer

6    the question.  And I'll just tell everyone now, the APA

7    doesn't answer the question, which you can look to the APA, I

8    think the APA provides guidance.  But is there something we

9    can admit that gets people comfortable -- both of you

10   comfortable that I have like a -- in other words, if you have

11   the APA, the APA is the -- we can agree on what the APA is

12   with all the exhibits.

13             You filed an executed version of it.  Right?

14             MR. LEU:  Yes, Your Honor.  May I confer with

15   Ms. Brown for a minute about --

16             THE COURT:  Yeah.

17             MR. LEU:   -- what we both need?

18             THE COURT:  Yeah.

19             MR. LEU:  Thank you, Your Honor.

20        (Pause in the proceedings.)

21             MR. LEU:  Your Honor, the parties have conferred and

22   agreed that Select's Exhibit 45-1(a)(1) should be admitted as

23   a fully executed complete copy of the APA with all exhibits

24   and schedules.

25             THE COURT:  Any objection to that, ma'am?

1      MS. BROWN:  No objection, Your Honor.

2      THE COURT:  Okay.  Okay.

3      (Defendant's Exhibit 1A1 identified and received into

4   evidence.)

5      THE COURT:  Anything else?

6      MR. LEU:  No, Your Honor.  I believe everything else

7   is subject to judicial notice.

8      THE COURT:  Okay.  All right.  And by the way, I'm

9   having -- this hearing is being recorded, and at the end of it

10  I will order an official transcript.  No one has to do that,

11  I'm going to order it so that you'll have a record of what I

12  said.  Okay?

13     MR. LEU:  Yes, Your Honor.

14     THE COURT:  I'm about to read about 9 pages so get

15  comfortable.

16     (Laughter.)

17     THE COURT:  The issue the Court answers today is

18  whether all or any portion of the final judgment entered by

19  the 143rd District Court of Reeves County, Cause Number 20-

20  0123355, in favor of PPC Energy, LP and Priest Petroleum

21  Corporation against Basic Energy Services, LP is a "assumed

22  liability" as defined in the executed asset purchase agreement

23  approved by the Court in connection with the order at Main

24  Case Docket Number 438.

25     Here's some background that you all know.  In

1    January 2020, before this Chapter 11 case started, Priest

2    Petroleum sued Basic and other defendants in Texas State Court

3    for negligence, negligence per se based on a violation of the

4    Texas Natural Resources Code, gross negligence, common law

5    waste and statutory waste, then declaratory judgment that

6    Basic committed certain acts like waste, trespass, private

7    nuisance and sought injunctive relief.  In August of 2021

8    Basic filed, along with a number of other debtors but we'll

9    focus on Basic, filed for bankruptcy and the Reeves County

10   litigation was stayed.

11        In September of 2021 Basic and Plaintiffs filed a

12   joint stipulation to lift the stay as to the Reeves County

13   suit to allow the suit to proceed to judgment against the

14   insurance.  That same month the Court approved a sale of the

15   Orsa Kesler Well, among other assets, to Select Energy

16   Services, LLC.  The sale order approved the sale of the assets

17   to Select free and clear of liens, claims and interest rather

18   than assumed liabilities, assumed liabilities in the APA.

19        I'll take a moment to note that the Court, pre-me,

20   and I will delineate when it's pre-me and it is me, the Court

21   was David Jones.  I would note for the Record since it's been

22   implied in October, early October, on October 3 my mother died

23   so I was in New York when all this stuff broke out.  I

24   attended my mother's funeral and I came back to Houston when

25   everything had already kind of broken out with respect to

1    Judge Jones.

2           I saw him when he left the building, I have not had

3    a conversation with Judge Jones since.  This analysis is

4    entirely based upon me and the work that I have done and my

5    analysis of the statutes.  That's what I asked the parties to

6    do, and it's based on my briefing.

7           I shared a little bit of my personal life just so

8    you know how important judicial integrity is.  I'm not saying

9    anyone questioned it, I'm just stating it for the Record, this

10   dispute involves to my knowledge two law firms that do not

11   include Jackson Walker, I don't pay attention to who monitors

12   courts or why they monitor them, it's a free courtroom and

13   people can dial in freely.  I don't know why people do it, but

14   I haven't talked to anyone from Jackson Walker about this

15   case.  Quite frankly I didn't know they were involved.

16          I've got two parties in front of me, would note that

17   in late October/November I've been busy dealing with other

18   cases, two trials in December.  This analysis is based

19   entirely -- well, I'll say that's enough.  That same -- the

20   APA required Select to assume all assumed liabilities as

21   defined, and all liabilities of Basic, other than assumed

22   liabilities which are defined as the excluded liabilities,

23   were retained by Basic.

24          Section 3.07 of the APA states, "Except as set forth

25   on Disclosure Schedule 3.07, there are no proceedings, which

1    is a defined term, and includes any environmental claims

2    pending or to seller's knowledge, threatened, alleging or

3    relating to any alleged violation or liability under

4    environmental laws with respect to the assets.  Section 3.08

5    requires disclosure in Disclosure Schedule 3.08 of any

6    proceedings pending against any seller or to any seller's

7    knowledge which have been threatened against seller, any, if

8    determined, are resolved adversely in accordance with

9    Plaintiffs' demands would reasonably expect it to have

10   individually or in the aggregate a seller adverse -- seller

11   material adverse affect or otherwise materially affecting

12   buyer's ownership and operations of the assets following the

13   closing."

14        Basic did not list the Reeves County suit, the State

15   Court suit which I'll refer to as the Reeves County suit, as

16   an environmental matter under Disclosure Schedule 3.07.

17   Instead it was listed as a general liability on its Disclosure

18   Schedule 3.08.  The APA appears to have been amended but no

19   amendment has changed that -- the schedule -- those schedules.

20        In October 2021, several weeks after the approval of

21   the sale, the Court, Judge Jones, approved a joint stipulation

22   and order granting limited relief from the automatic stay.

23   The relief order allowed Plaintiffs to collect any final

24   judgment or settlement, 1, from any and all insurance carriers

25   providing coverage for movants' claims, and/or 2, by funds

1      available under any and all insurance policies providing

2      coverage for the Debtor's adjudicated liability, and/or 3, any

3      other insurance obligations of the Debtor's insurance carriers

4      in connection with or related to claims asserted by movants.

5      It also says that collection pursuant to a final judgment is

6      recoverable only from the applicable insurance policies of the

7      Debtors and any -- and other third parties and not from the

8      Debtors or their estates directly or indirectly.

9              In August of 2022 the Reeves County suit was called

10     for a final trial.  In September 2022 the Reeves County Judge

11     charged the jury in the Reeves County suit and in May 2023 a

12     final judgment was entered in the Reeves County suit.  In

13     August of 2023 the Plaintiffs sued Select in Texas State Court

14     to enforce the Reeves County judgment against Select.

15             Plaintiffs sought money damages awarded in the final

16     judgment and costs of P&A its wells that Basic allegedly

17     damaged, a declaration that -- well, they didn't say allegedly

18     damaged, they said that Basic damaged; 2, the declaration of

19     the final judgment is assumed liability under the APA; 3, a

20     declaration that Select must pay the judgment; and 4, other

21     costs related to the interests, litigation costs and attorneys

22     fees, punitive or exemplary damages, and costs of suit.

23     Select removed the case to this Court in September of 2023.

24             In October of 2023, specifically on October 17, I

25     believe, this case was reassigned to Judge Christopher M.

1    Lopez.  I am Judge Christopher M. Lopez.  I held a hearing on

2    two pending matters.  There was a pending motion by Plaintiffs

3    to remand the Select lawsuit back to the State Court, and

4    Defendants had also moved to dismiss the lawsuit.

5        I denied both, but I requested briefing to resolve a

6    dispute whether the final judgment is an assumed liability

7    under the APA, as defined by the APA.  The parties filed

8    briefing, and it's reflected on the docket and I thank them

9    very much for their briefing, it was excellent.

10       So let me just move right into the parties -- the

11   APA is governed by Texas law, both Select and the Plaintiff

12   agree that the APA, the sale order, are unambiguous, and when

13   a contract is unambiguous a Court may interpret the contract

14   as a matter of law.  I'm citing *Northland Industry, Inc. v*

15   *K-O-U-B-A*, 620 S.W.3d 411, 415 pinpoint cite, Texas 2020 case.

16   I'm going to cite the case also to say the Court should "give

17   affect to the parties as intent as expressed in the

18   contractual language".  The Court should "ascertain" and it

19   also says intent, "by giving words the meaning a reasonable

20   person would afford them under the circumstances, and by

21   construing them with the contractual context as a whole and

22   not an isolation".

23       Here's a new case, *Reilly v Rangers Management,*

24   *Inc.*, 727 S.W.2d 527, pinpoint cite 530, Texas Supreme Court

25   1987.  It says, The Court, however, should not construe a

1    contract provision in a manner that's unreasonable or absurd.

2    That Court stated that Courts should avoid when possible

3    construction which is unreasonable, inequitable or oppressive.

4    *Pavecon, Inc. v R-Com, Inc.*, 159 S.W.3d 219, 222, Tex. App.

5    Fort Worth 2005.  No pet -- no petition history for those who

6    are listening who are not lawyers -- stating that when

7    interpreting a contract the Court should avoid if possible

8    construction that is unreasonable, oppressive, inequitable or

9    absurd.

10         Let's jump into the analysis.  Under Section 2.05 of

11   the APA, Select agreed to assume all "assumed liabilities",

12   liabilities that are not "assumed liabilities" are "excluded

13   liabilities", and excluded liabilities are retained by Basic

14   under the APA.  The parties to the APA also entered into a

15   separate assumption agreement which provided for the same

16   assumption of the assumed liabilities.  I would note that the

17   sale order approved the sale of the assets to Select as

18   purchaser free and clear of all liens, claims and interests

19   other than "assumed liabilities as defined in the APA".

20         The question the Court must decide today is whether

21   the final judgment in the State Court action is an assumed

22   liability or an excluded liability.

23         Now let's turn to the analysis.  The definition of

24   assumed liabilities has several prongs, and it includes "all

25   liabilities associated with the assets arising under

1     environmental law, including with respect to environmental

2     claims whether arising on, before or after the closing date,

3     including without limitation those related to the control,

4     storage, handling, transportation and disposing of, discharge

5     of all materials, substances and waste from the -- from the

6     defined term assets, including produce water.

7          Plaintiffs argue the final judgment is an assumed

8     liability under this prong.  Let's analyze it.  For the final

9     judgment to be an assumed liability it must be, 1, a

10    liability, 2, associated with the assets, and 3, arising under

11    environmental law.  The final judgment clears the first two

12    hurdles, but it fails on the last one.  It is a liability

13    which is defined as an obligation to a Person, capital P

14    Person, and Capital P Person is defined broadly to include a

15    company like Select.  The liability against Basic in the final

16    judgment also relates to an asset sold under the APA.

17         The real dispute, however, is whether it's a

18    liability, whether the liability "arises under environmental

19    law".  Environmental law as defined under the APA includes,

20    and I quote, "any defined term applicable law relating to the

21    protection of occupational or health and human -- human health

22    and safety".  So it also says, "To the extent relating to the

23    exposure to hazardous substances, to the environment including

24    ambient air, soil, surface water or ground water or subsurface

25    strata."

1         It also includes the release into the indoor and

2        outdoor environment of pollutants, contaminate waste,

3        chemicals and other toxic or hazardous substances or to clean

4        up thereof.  The term environmental law as defined does not

5        include good or desirable operating practices or standards

6        that may be employed or adopted by other salt water disposal

7        well operators or recommended but not required by a

8        governmental authority.

9         And here you see what I think is vintage me.

10       Applicable law is defined broadly, but what does "arising

11       under" mean?  Recall that an assumed liability is a liability

12       relating to the assets arising under environmental law.

13       "Arising under" is not defined in the APA, so the Court

14       applies its plain meaning.

15        Just give me a second.

16       (Pause in the proceedings.)

17        THE COURT:  So what does it mean?  Webster defines

18       it as to originate from a source -- to originate from a

19       source.  Black's Law Dictionary defines arise as originating

20       from or stemming from.  We can also see how courts have

21       defined arising under when it's undefined in a statute.  A

22       good example is from a bankruptcy case, it gives the

23       definition of a core proceeding arising under the Bankruptcy

24       Code found in Title 28.  Arising under, if jurisdiction has

25       been defined by the 5th Circuit in *Wood v Wood*, 825 F.2d 9096,

1    5th Circuit 1987, as a cause -- covering a cause of action

2    created or determined by a statutory provision of the

3    Bankruptcy Code.

4         So dictionaries and courts define it consistently.

5    So here, there must be a liability originating from, stemming

6    from or created by or determined by a law relating to the

7    protection of the environmental or occupational health or

8    safety or relating to the environment, et cetera.

9         I note that the definition of environmental law

10   under the APA does not break out subparts cleanly.  Right?  It

11   says -- it has that kind of hard comma, the environment.  But

12   I agree, as Plaintiffs have, I think the best reading is to

13   include the word -- the phrase relating to as continuing

14   through every comma.  So it's relating to the protection of

15   the environment, of occupational health and human safety, and

16   relating to the environment.  Arising under is a limiting

17   factor defined by dictionary, defined by case law, it's not an

18   expanding one.  Right?  It's got to arise under this thing.

19        The Plaintiffs argue that the final judgment arises

20   under environmental law because it -- or it arises under an

21   applicable law relating to the environment.  Right?  The

22   applicable law Plaintiffs claim applies is the Texas Natural

23   Resources Code.  Plaintiffs plead in State Court lawsuit, and

24   it's true, in the second amended complaint that Basic's

25   injection produced water, damaged PPC's oil and gas reserves

1    by "drowning", which in oil and gas terms refers to

2    pressurizing and producing formation with salt water such that

3    the oil and gas in place was forced out.  Right?  You drowned

4    it, you put so much in there it forced it out and it was

5    irrevocably lost.

6         They also pled that Basic's actions violated TNRC's

7    prohibition on "waste" which they say gives rise to an

8    negligence per se claim.  That's what was alleged.  And it is

9    true, the TNRC prohibits waste.  Right?  You look at Section

10   85.045, it's labeled, Waste, Illegal and Prohibited.  The

11   production, storage or transportation of oil or gas in a

12   manner, in an amount, and under conditions that constitute

13   waste is unlawful and prohibited.  Section 85.046 says the

14   term waste includes drowning with a water stratum, or part of

15   a stratum that's capable of producing oil or gas, both in

16   paying quantities.

17        We next analyze what the jury ruled on that

18   producing -- that produced the final judgment.  For that we

19   review the amended complaint and the jury charge.  We start

20   with the amended complaint.  Count 5 is for negligence.  It

21   says that the Plaintiffs seek judgment against Basic for

22   negligence, it says Basic had a duty to the Plaintiffs to

23   exercise reasonable care to prevent its injected fluids from

24   causing waste.  Basic breached that duty by causing injected

25   waters to enter, drown and pressurize the producing stratum on

1    formations from which Plaintiffs' well produced.

2          Count 6 is for negligence per se.  It says, "In the

3    alternative if necessary, Plaintiffs seek judgment against

4    Basic for negligence per se."  By allowing injected water to

5    drown the producing stratum or formations from which the

6    Plaintiffs' wells produced, Basic violated the term --

7    permits, excuse me, issued by the Railroad Commission of Texas

8    and it violated statewide Rule 7N46, which cites to 16 Texas

9    Admin Code Sections 3.07 and 3.46, and violated Texas Natural

10   Resources Code 85.045 and 85.046, the alleged actions of Basic

11   they say constituted negligence per se, and they even sought

12   damages under Texas Nature Resources Code 85.321 and 85.322.

13         And as a mineral lease holder and owner of an

14   operator accorded the rights, they believe that they were the

15   class of persons entitled to be protected by the statutory

16   prohibition against the waste.  So Count 5 is a general

17   negligence claim only and doesn't reference expressly the

18   TNRC, Count 6, whoever alleges a violation of the TNRC for

19   which Plaintiffs seek damages under the TNRC, too.

20         Let's turn to the jury instructions.  The relevant

21   jury charge for me is Question 1, and it says, "Did the

22   negligence, if any, of those named below, which included

23   Basic, proximately cause the injury in question.  Define

24   negligence as the failure to use ordinary care, that is

25   failing to do which a person of ordinary prudence would have

done under the same or similar circumstances, or doing that which a person of ordinary prudence would not have done under the same or similar circumstances."

It also says that a -- but it is negligence to commit waste, and that the term waste means the drowning with water or stratum or part of a stratum that is capable of producing oil or gas in paying quantities or under a loss, however caused.  Plaintiffs claim this judgment arises under environmental law fails for two reasons.  First, the jury charge is based on a negligence cause of action.  Call it negligence, negligence per se, it's a negligence cause of action, and the negligence is not a law relating to the environment.  Right?  This judgment does not arise under a law relating to the environment.

Negligence is a general area of tort law, and for that vintage me, Ann B. Dobbs, et al, Dobbs' Tort -- Law of Torts, and Dobbs apparently replaced Prosser and Keeton which I have to come find now.  Paragraph 11, Chapter 11, Section 1122, and I'm looking at the second edition 2023.  According to Dobbs', which is a treatise on tort law, it involves harm caused by failing to act as a form of carelessness, possibly with extenuating circumstances.

Chapter 13, Sections 141, 142, and you can also see Chapter 35, Section 406, the core concept of negligence is that people should exercise reasonable care in their actions

1    by taking account of the potential harm that they might

2    foreseeably cause to other people or property at Section 141.

3         Here's the point, you can be used for all types of

4    harms humans and companies cause each other, assuming there's

5    a duty, a recognized duty under law.  Right?  I think

6    Plaintiffs incorrectly equate a law relating to the

7    environment the same as a negligence case involving facts

8    about the environment.  The two are not the same.  In this

9    case the liability does not arise under or originate or stem

10   from a law relating to the environment.  It arises from a

11   general tort law that involves facts involving damage to the

12   environment.  That's not a liability arising under

13   environmental law.  General common law claims, tort law claims

14   don't fit here.

15        The definition of environmental law must also not be

16   read not in isolation but as a whole.  So you look at the

17   entire definition.  Again, you just don't look at one section,

18   you look at the entire definition to see the definition limits

19   the type of assumed liability.

20        Reading it as the Plaintiffs, this Court's opinion

21   leads to an absurd result that virtually any tort or breach of

22   contract claim involving Basic, a company involved in the oil

23   and gas business, would qualify as arising under environmental

24   law.  Let's say an employee gets in an accident and spills gas

25   on the street.  A finding of negligence in that case could

1    theoretically meet Plaintiffs' definition arising under

2    environmental law.  Right?  It's a great negligence claim, you

3    spilled gasoline on the street, you have -- that's the

4    negligence claim, you're liable for it, you have violated

5    environmental law under the APA.  It's just -- right.

6         I'm also going to note Plaintiffs claim that the

7    jury charge includes a violation of the TNRC, and I think

8    that's also wrong.  Plaintiffs claim that there's no way for

9    the jury to find ordinary negligence without a finding that

10   Basic violated the standard of care in the Texas Natural

11   Resources Code.  That's the only breach alleged by PPC and

12   evidenced at trial.

13        What I have is the jury charge and the Record.  And

14   the jury charge I take seriously, and it lays out the elements

15   of a negligence claim.  And if that includes that waste

16   constitutes negligence, and it is true that the definition of

17   waste in the jury charge comes from part of the defined term

18   waste and the TNRC.  But look at -- you've got to look at the

19   entire text of the jury charge.  It does not include any

20   reference to allegations in Count 6 about violations of the

21   TNRC or the damages sections under the TNRC referenced in

22   Count 6 doesn't mention the Railroad Commission or even a

23   standard of care under the TNRC.  It doesn't mention damages

24   under the TNRC either.

25        Calling it negligence per se, or referencing that

1    waste equals negligence per se doesn't change the answer here.

2    The Court's answer here is based on a strict reading of the

3    text of the jury charge.  Does borrowing a part of the

4    definition from a statute mean that the statute itself is

5    incorporated therein and violated without clear statements in

6    the charge itself?  The answer is no.  A proper and reasonable

7    reading of the jury charge is that it concludes that the one

8    definition of waste constitutes negligence.  Again, not

9    arising under environmental law as defined under the APA.

10   It's also not about alleged -- express any alleged expressed

11   TNRC violations.

12        A contrary finding, which is requested by the

13   Plaintiffs here, I believe would run contrary to bedrock

14   contractual interpretation and conservative contractual

15   interpretation principles.  It would allow a narrow definition

16   of environmental claims to swallow the broader principles of

17   claims in contract and tort law and other liabilities that may

18   not be "assumed liabilities".

19        The facts aren't exactly the same, but I agree with

20   the reasoning in the *Motors Liquidation Company* case at 585 BR

21   708, a bankruptcy, Southern District of New York 2018 case, it

22   was the old *GM* case.  The other debtors sold assets to a buyer

23   in a Section 363 sale, and the sale order and the asset

24   purchase agreement stated that the buyer, right, New GM

25   assumed all "assumed liabilities", and there was a defined

1     term there.

2          And there were -- certain personal injury claimants

3     asserted tort claims based on environmental contamination and

4     alleged that the personal injury claims were "assumed

5     liabilities".  The allegations there were -- involved

6     contaminated ground water that migrated from property

7     previously owned before the sale by Old GM and then were now

8     owned by New GM into the water wells of nearby properties that

9     were used by homeowners for drinking water and normal

10    household uses.  Like serious stuff.

11         The Court heard arguments that, you know, common

12    tort law claims were assumed liabilities, but the Court noted

13    that such an interpretation would greatly expand the scope of

14    New GM's liability and would in essence cause the exception to

15    swallow the rule in the sale agreement that GM retains

16    liabilities to third parties for claims defined therein.  The

17    Court found that the more reasonable interpretation that New

18    GM assumed certain liabilities but not for the common law

19    tort.

20         And again, you've got to look at, that in and of

21    itself, you don't cite the GM case for -- because it's not --

22    right, you've got to look at every definition and you've got

23    to study the APA.  The APA is what determines here in the

24    statutory analysis and the contractual term, the contractual

25    analysis is what determines what the answer is here today.

1    But the reasoning about the exception, right, swallowing the

2    rule, then everything can come in.

3         And I knew that trying to fit the final judgment as

4    a "environmental claim" doesn't work either.  Environmental

5    claims as defined under the APA are defined as a subset,

6    right, and including environmental law, including

7    environmental claims.  An environment claim is defined as any

8    affirmative obligation to effect clean up or remediation under

9    or in non-compliance with any environment law or any liability

10   associated with or arising therefrom.

11        Expanding the definition of environmental claim to

12   cover the final judgment goes beyond environmental law and

13   would allow the parties to swallow the whole.  And again,

14   there must be a liability arising under environmental law.

15   Based on the analysis the final judgment does not arise under

16   one.  The final judgment is therefore by definition under the

17   APA an excluded liability.

18        The analysis there would stand, but I take comfort

19   by looking at the September '22 jury charge in my analysis.

20   Again, you could stop on everything I just said, I just take

21   comfort.  All right.  Plaintiffs' counsel in that hearing

22   specifically asked the State Court to include a separate claim

23   for TNRC violations, and that commingling part of it with the

24   general negligence would create confusion.

25        Plaintiffs' counsel asked the Court -- told the

1    Court that, you know, the jury should be permitted to

2    determine the liability of the Defendants with reference to

3    both negligence and the waste.  But the Court denied that

4    request.  Plaintiffs' in their papers allege, you know, that

5    the Texas State Court made the right decision based on the

6    Texas jury charge.  But that's not what they said when they

7    were in front of the State Court.  Regardless, that issue is

8    not dispositive.  Right?  What we look to is what the jury

9    made a decision on and based on what.

10        I also looked to the APA, you've got to look at --

11   when you look at contract issues you don't look at a provision

12   in isolation, you look at other sections as well to make sure

13   they harmonize, see if there are any discrepancies.  All

14   right.  And the parties to that agreement listed the Reeves

15   County litigation in the general claims section and not the

16   assumed liabilities section.

17        Again, it's not a dispositive point but it just

18   shows that it harmonizes.  Right?  It's consistent with the

19   parties' understanding.  It's indicative I should say that you

20   don't have a reading under environmental law one way that

21   expressly conflicts with what a schedule says.  Right?  The

22   two harmonize, and I looked to that as well.

23        I'm sure that there were -- I know Plaintiffs made

24   additional arguments that I'm not expressly addressing now.  I

25   will let you know that I did consider them and I believe that

1        for the reasons I stated those arguments would be expressly

2        rejected for the -- based on the textual analysis that the

3        Court performed here.  And again, the only answer I don't --

4        I'm only answering a legal question, and that's what I -- we

5        talked about doing, and that's what I've done.  That's the

6        answer as I'm sure there are other issues, there's fishery.

7        None of that is before me today.

8                So that's my analysis.  Because the Reeves County

9        suit is not an assumed liability it remains with Basic.

10       That's my analysis.  Now tell me what you want to do, I'm

11       done.  I will get a copy of the transcript.  And again, I

12       tried to give you an answer, I tried to give you cases, case

13       law, textual analysis as to kind of where things go.  I stayed

14       within the four corners of what I was asked to do.

15               I didn't -- I haven't had -- I'm giving an example,

16       my analysis is done.  Okay.  I'm just -- now I'm just talking.

17       I did not delve into, you know, whether Select was included in

18       the litigation, none of that.  Look at the final judgment,

19       look at the analysis, what does the law say.  That's what I've

20       done.  Rightly, wrong, what the -- did the joint order

21       allow -- the order allow parties to like to be -- none of

22       that.  None of that, none of that was analyzed by me.

23               I stayed within the four corners, I asked people to

24       brief, and I stayed within there and none of that came into

25       the analysis.  I sat back and I read documents and I read and

1    I looked at cases.  But really the cases just guide contract

2    interpretation to make sure that under Texas law what you're

3    supposed to do really is just the four corners analysis.

4         There's one case that I cited, it's just exception

5    swallowing the rule, but really this is just looking at

6    documents and looking at the jury charge, and looking at what

7    was alleged in the second amended complaint and what the jury

8    made a determination on, and whether that judgment qualifies

9    as an environmental law.  And you've got to look at the

10   definitions and what defined terms and what arising under

11   means.

12        People can agree to disagree with it, but you all

13   tell me what you want me to do now.

14        MR. LEU:  Thank you, Your Honor.  Jordan Leu for

15   Select for the Record.

16        I think this is what we needed for today and that

17   was what was set for today.  What I would propose is that

18   Plaintiffs' counsel and we get together and talk about what we

19   need to do as far as a go-forward schedule and go from there.

20   But I think that's all we needed for today, Your Honor.

21        Thank you.

22        THE COURT:  Okay.  And again, I want to stress, and

23   not to cut Ms. Brown off, I'll give her an opportunity to

24   speak, I just answered questions.  It has become very obvious

25   to me in my 4-plus years on the bench that I just answer -- my

1    job is to answer questions of law based on the facts, based on

2    the documents in front of me.  I don't resolve disputes.

3    Right?  Not really.  I answer questions of law that somehow

4    sometimes bring finality to a question, at least at this

5    stage.

6           So I always like when parties talk, but I don't

7    encourage it.  I don't force people in a room so I should say.

8    Right?  I just think people have questions and ask the judge

9    for an answer, and then, right, my answer shouldn't be, you

10   all go in a room.  You asked for -- I asked for briefing to

11   try to answer the questions based on the stuff, and I give it,

12   but I'm saying this probably not for the lawyers but for other

13   people who may be listening.

14          MS. BROWN:  Your Honor, we appreciate the time and

15   commitment you put into this as obviously there was a lot of

16   work involved.  And I also want to offer our condolences for

17   the loss of your mother.

18          THE COURT:  I appreciate it.

19          MS. BROWN:  With respect to the issues that were

20   decided today, the one issue that's decided, because we had a

21   hybrid complaint --

22          THE COURT:  Uh-huh.

23          MS. BROWN:   -- that dealt with the final judgment

24   as well as ongoing issues.  So we'll have to confer with the

25   client based on the client's -- the Court's ruling.  I would

1    anticipate, depending on how things track, that we would

2    probably have to do an amended complaint at some point as well

3    as tee up the motion for summary judgments, or competing

4    motions for summary judgments as well as the rest of the

5    scheduling order.  And we're happy to work with the

6    Defendants.

7            THE COURT:  Why don't you all -- and maybe what I

8    would ask Ms. Saldaña to do is maybe check with you all in

9    about two weeks or so.  If you reach out to her before then,

10   but if not she'll just send an email to both of you just kind

11   of confirming where we are and just see if we need to schedule

12   something, and if something needs to go to -- just so we don't

13   miss a date and dates start to pop up on my calendar a lot and

14   I just want to make sure that, you know, we don't drag into

15   March or something about that, so it would --

16           MS. BROWN:  Yeah, we'll be sure to keep her --

17           THE COURT:   -- don't read too much into

18   Ms. Saldaña, other than I'm asking her to reach out in two

19   weeks to see if there's anything I need to do so it doesn't

20   fall off my radar either.

21           MS. BROWN:  Okay.  Thank you very much.

22           THE COURT:  All right, folks?  All righty.  Again,

23   this is going to be recorded and I'm ordering a copy of the

24   transcript.  I don't know how long that stuff takes, I haven't

25   figured all that stuff out, but, you know, it'll be on the

1    docket as soon as possible.  Thank you.

2              MR. LEU:  Thank you, Your Honor.

3              MS. BROWN:  Thank you, Your Honor.

4              THE CLERK:  All rise.

5         (Hearing adjourned 10:48 a.m.)

6                        *  *  *  *  *

7         *I certify that the foregoing is a correct transcript*

8    *to the best of my ability produced from the electronic sound*

9    *recording of the proceedings in the above-entitled matter.*

10      */S./  MARY D. HENRY*

11   *CERTIFIED BY THE AMERICAN ASSOCIATION OF*

12   *ELECTRONIC REPORTERS AND TRANSCRIBERS, CET**337*

13   *JUDICIAL TRANSCRIBERS OF TEXAS, LLC*

14   *JTT TRANSCRIPT #68002*

15   *DATE FILED:  JANUARY 11, 2024*

16

17

18

19

20

21

22

23

24

25